1

2

3

4

5

6

7

8

9                          **UNITED STATES DISTRICT COURT**

10                              **DISTRICT OF NEVADA**

11

12   SHIGE TAKIGUCHI, FUMI NONAKA,     )      2:13-cv-01183-JAD-VCF
     MITSUAKI TAKITA, KAORUKO KOIZUMI,)
13   TATSURO SAKAI, SHIZUKO ISHIMORI, )
     YOKO HATANO, YUKO NAKAMURA,       )      ORDER
14   HIDEHITO MIURA, YOSHIKO TAZAKI,   )
     MASAAKI MORIYA, HATSUNE HATANO,   )
15   SATORU MORIYA, HIDENAO TAKAMA,    )
     SHIGERU KURISU, SAKA ONO,         )
16   KAZUHIRO MATSUMOTO, KAYA          )
     HATANAKA, HIROKA YAMAJIRI,        )
17   KIYOHARU YAMAMOTO, JUNKO          )
     YAMAMOTO, KOICHI INOUE, AKIKO     )
18   NARUSE, TOSHIMASA NOMURA, and     )
     RITSU YURIKUSA, Individually and )
19   on Behalf of All Others Similarly)
     Situated,                         )
20                                     )
                     Plaintiffs,       )
21                                     )
     vs.                               )
22                                     )
     MRI INTERNATIONAL, INC., EDWIN J )
23   FUJINAGA, JUNZO SUZUKI, PAUL      )
     MUSASHI SUZUKI, LVT, INC., dba    )
24   STERLING ESCROW, and DOES 1-500, )
                                       )
25                   Defendants.       )
     _____)
26

27        On July 5, 2013, plaintiffs filed this putative class action

28   against defendants in connection with the alleged operation of a

                                        1

Ponzi scheme.  Defendant MRI is alleged to be a Nevada corporation headquartered in Las Vegas with a branch in Tokyo, Japan, operated by its president and CEO, Edwin Fujinaga.[1]  Defendant Sterling Escrow, now defunct, is alleged to be an escrow company that handled funds invested with MRI.

On behalf of the proposed class, plaintiffs have moved for a preliminary injunction restraining and enjoining MRI and its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation or privity from destroying documents or other evidence, and an order for an appointment of a monitoring receiver to ensure that MRI does not take such actions and allowing expedited discovery (#8, #70).

MRI purports to deal in the purchase and collection of "Medical Accounts Receivable" ("MARs").  Since the late 1990s, MRI has recruited more than 8,000 Japanese investors paying in more than a billion dollars, promising a solid and safe rate of return on their investment.  In promotional materials, the company promised that investor funds would be protected by being: (1) maintained in a separate lockbox managed by an independent escrow company; (2) used only to transact in MARs; and (3) guaranteed by the states.  Plaintiffs argue none of this was true, and that in fact MRI used investor funds to pay off earlier investors, run its business, and finance the lavish lifestyles of its principals, resulting in an inability to repay its investors.

---

[1] MRI's Tokyo operations are allegedly supervised by defendants Junzo Suzuki and Paul Musashi Suzuki.  On August 16, 2013, plaintiffs stipulated to withdraw their preliminary injunction motion against the Suzuki defendants only, including the request for expedited discovery. The court granted the stipulation on September 3, 2013.

1    In 2012, customers began complaining to authorities in Japan
2  that MRI was not paying back their matured investments.  Japan's
3  Financial Services Agency ("FSA") began an investigation.
4    On March 7, 2013, after learning that the FSA was conducting
5  an investigation, the United States Securities and Exchange
6  Commission ("SEC") sent a letter to Fujinaga asking that "all
7  documents created, received or maintained by MRI be preserved
8  pending further notice from the SEC staff" and that "any procedures
9  for the disposal, removal or purging of MRI documents be
10  suspended."  (#40 (Def. Opp'n Ex. A)).
11    On April 26, 2013, the FSA (Kanto Local Finance Bureau)
12  revoked MRI's license.  The FSA adopted the recommendation of the
13  Japanese Securities and Exchange Surveillance Commission ("SESC"),
14  which found that MRI had failed to separately hold investor monies
15  and since at least 2011 had commingled those assets with MRI's own,
16  that investor monies had been used to pay dividends to other
17  investors, that MRI had made false statements to FSA during the
18  investigation, and that MRI had planned to continue soliciting new
19  investors in 2013, even after it became clear it could no longer
20  repay the ones it already had.  In revoking MRI's license, the FSA
21  directed MRI to do a number of things:
22      1.   Give proper explanations to customers about the
23           administrative action;
24      2.   Immediately assess the customers' status and the status
25           concerning the use and management of assets invested by
26           the customers and regarding other necessary matters;
27      3.   Formulate a plan to repay the investors and implement the
28           plan *immediately*;

3

4.     Take every step to protect customers;

5.     Do not improperly spend the company assets; and

6.     Report in writing the status of the above responses and
        implementations until completed.

(#8 Ex. 5 (Igarishi Decl. Ex. C) (emphasis added).

On May 2, 2013, several Japanese attorneys formed the MRI Victims Attorney Group.  To date, 4,044 of the 8,000-plus investors have retained the group.  (#75 (Igarishi Decl. 4)).

On May 31, 2013, seven individual investors represented by the MRI Attorney group filed suit in Japan, alleging breach of contract for their already matured investments.[2]  (#75 (Igarishi Decl. 4)). On July 16, 2013, MRI filed an answer to the Japanese complaint, arguing that the proper venue for the investors' claims is Nevada, in part because the investment contracts contained a Nevada forum selection clause.  (#75 (Igarishi Decl. 5 & Exs. B & C)).

Plaintiffs argue that MRI has not complied with the SESC and SEC orders.  MRI asserts it is fully complying.

First, plaintiffs argue that no repayment plan has been implemented and that MRI has not explained to investors what is going on.  They say the only communication has been a July 23, 2013, email from Fujinaga vowing to fight the FSA's findings. (*See* #75 (Igarishi Decl. Ex. D); #73 (Sakai Decl.)).  While Fujinaga's email promised that MRI was working on a repayment plan (#75 (Igarishi Decl. Ex. D)), MRI does not deny that no such plan has yet been developed.  Plaintiffs further argue that a call center

_____

[2] MRI asserts that 4,044 investors have joined this lawsuit but it provides no authority for this assertion.  Plaintiffs confirm that only seven individuals are part of this suit.

MRI had established to answer investor queries was useless. MRI responds that by September 1, 2013, a new call center will have opened.  (#81 (Morikawa Decl.)).  Plaintiffs respond that the call center is irrelevant because it was not ordered by either agency.

Second, plaintiffs argue that MRI has destroyed documents in contravention of the SEC's order.  Their evidence of such is hearsay from Fujinaga's former executive assistant, who told plaintiffs' counsel that she learned that MRI had destroyed several documents after receiving the SEC letter. (#74 (Gibbons Decl.)).[3] MRI does not explicitly deny shredding but argues that all relevant documentation has been electronically preserved and that all relevant documents have been photocopied and provided to the SESC. (#81 (Fujinaga Decl.)).

Third, plaintiffs argue that MRI has been uncooperative with SESC's investigation.  MRI denies this.

It is unclear whether MRI continues to solicit investors, although it is clear that MRI continues to buy and collect upon MARS.

"An injunction is a matter of equitable discretion and is an extraordinary remedy that may only be awarded upon a clear showing that the [plaintiffs are] entitled to such relief." *Earth Island Inst. v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010).

---

[3] Although hearsay, this evidence may be considered by the court. In deciding motions for preliminary injunctions, courts often accept and consider evidence that does not satisfy strict evidentiary requirements. *See* Wright & Miller, 11A Fed. Prac. & Proc. Civ. § 2949.  "The trial court may give ... inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial." *Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984).  "It [is] within the discretion of the district court to accept ... hearsay for purposes of deciding whether to issue [a] preliminary injunction." *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1363 (9th Cir. 1988).

1    To obtain a preliminary injunction, plaintiffs must show: (1)
2  they will probably prevail on the merits; (2) they will likely
3  suffer irreparable injury if relief is denied; (3) the balance of
4  equities tips in their favor; and (4) an injunction is in the
5  public interest.  *Winter v. Natural Res. Defense Council, Inc.*, 555
6  U.S. 7, 129 S. Ct. 365, 374 (2008).

7    Alternatively, an injunction may issue under the "sliding
8  scale" approach if there are serious questions going to the merits
9  and the balance of hardships tips sharply in the plaintiffs' favor,
10  so long as plaintiffs still show a likelihood of irreparable injury
11  and that an injunction is in the public interest.  *Alliance for*
12  *Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).
13  "Serious questions are those which cannot be resolved one way or
14  the other at the hearing on the injunction."  *Bernhardt v. Los*
15  *Angeles County*, 339 F.3d 920, 926-27 (9th Cir. 2003).  They "need
16  not promise a certainty of success, nor even present a probability
17  of success, but must involve a 'fair chance of success on the
18  merits.'"  *Republic of the Philippines v. Marcos*, 862 F.2d 1355,
19  1362 (9th Cir. 1988).

20    1. Likelihood of Success on the Merits

21    Plaintiffs are likely to succeed on their breach of contract
22  claim.  Breach of contract requires the plaintiffs to show: (1) the
23  existence of a valid contract; (2) breach of the contract; and
24  (3) damages caused by the breach.  *See Saini v. Int'l Game Tech.*,
25  434 F. Supp. 2d 913, 919-20 (D. Nev. 2006).  Plaintiffs have shown
26  that each has several investment contracts with MRI.  While MRI
27  argues that most of the investment contracts of the named
28  plaintiffs have not matured and thus are not ripe for adjudication,

the court need not decide this question now.  If this action is certified as a class as to the breach of contract claim, there is evidence that investment contracts totaling $122.5 million are already owed to the putative plaintiffs (#75 (Igarishi Decl. 7 & Ex. F)).  It appears uncontested that MRI has not repaid most of those investments.  Given the substantial similarity of the class of plaintiffs' claims both legally and factually, there is a very strong probability that a class action will be certified in this case, at least as to the contract claim.

Plaintiffs are also likely to succeed on their fraud claim. Fraud requires the plaintiffs to show:

(1) a false representation made by the defendant;

(2) the defendant's knowledge or belief that the representation was false (or an insufficient basis for making the representation);

(3) the defendant's intention to induce the plaintiff to act or to refrain from acting in reliance upon the misrepresentation;

(4) the plaintiff's justifiable reliance upon the misrepresentation; and

(5) damage to the plaintiff resulting from such reliance. *Bulbman, Inc. v. Nev. Bell*, 825 P.2d 588, 592 (Nev. 1992).

The evidence submitted by plaintiffs demonstrates that plaintiffs invested large sums of money with defendants after defendants promised the investments would be subject to strict safeguards, including the use of an "independent" escrow to handle investor funds, strict requirements on how investor funds would be used, and state regulation.  (Pl. Mot. #8 Exs. 1-6).  It further

shows that Japanese authorities have found defendants did not adhere to the safeguards and misused investor funds. In sum, plaintiffs have made a substantial showing that MRI made false representations about the manner in which plaintiffs' investments would be handled, it knew the representations were false, it intended for the representations to induce the plaintiffs into making investments, the plaintiffs justifiably relied on the representations in deciding to enter into contracts with MRI, and plaintiffs will suffer the damage of losing most, if not all, of the money they invested.

Finally, based on the facts described above, plaintiffs are also likely to succeed on at least some of their securities claims, including claims asserted pursuant to Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j and Rule 10b-5, 17 C.F.R. § 240.10b-5, fraud in connection with the purchase or sale of securities. MRI and Fujinaga, as officer of MRI, made numerous misrepresentations to the plaintiffs in connection with the sale of securities.

2. Irreparable Harm

While, in general, harm that can be compensated with monetary damages is insufficient to establish a right to injunctive relief, irreparable harm may be demonstrated by showing a likelihood of dissipation of the claimed assets, or other inability to recover monetary damages, if relief is not granted. *Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009); *see also Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 881 (9th Cir. 2003). Simple allegations of past fraud are insufficient, but allegations of past fraud coupled with a present ability to

1    dissipate funds may satisfy this standard.  *See Courturier*, 572

2    F.3d 1067.

3          Plaintiffs assert there is a danger MRI will improperly

4    dissipate its assets.  MRI argues that there is no direct evidence

5    of dissipation.  There is, however, strong circumstantial evidence

6    of dissipation.

7          Ten named and several putative plaintiffs have submitted

8    declarations or statements that detail how they have invested

9    substantial sums of money in MRI – in some cases their life

10   savings.  (Pl. Mot. TRO Exs. 1-4, 6; Pl. Reply (#83) Exs. 1-2).

11   The named and some putative plaintiffs have also provided

12   declarations indicating they wired their investment money to

13   Sterling Escrow.  However, when Sterling Escrow closed a few months

14   ago, it had less than $4,000 in MRI assets.  MRI has not

15   sufficiently explained what happened to the investment monies.

16   While MRI argues that no assets have been dissipated, it has not

17   satisfactorily identified what assets remain or whose control they

18   are in.  MRI's conclusory and self-serving statements are thus of

19   limited probative value.  This, coupled with: (1) the findings of

20   Japanese regulators that defendants have engaged in fraudulent

21   practices, including misuse of investor funds and lying to the

22   SESC; (2) the fact that Sterling Escrow has closed, MRI's Las Vegas

23   office may be abandoned, and MRI's Tokyo office has completely shut

24   down; (3) some evidence that MRI is not complying with government

25   orders, including destroying documents that may be relevant in this

26   case; and (4) the fact MRI has made inconsistent arguments in this

27   litigation and the Japanese litigation, seeking effectively to

28   dismiss it in both places; all supports an inference that MRI and

Fujinaga are likely to dissipate or squander what remains of MRI's assets.

In addition, the relief available in Japan is not as broad as the relief available in the United States, particularly where there is the possibility that MRI's remaining assets – and certainly documentary evidence – are here in the United States.

Taken together, the court is persuaded that there is a real danger that MRI and Fujinaga, as officer of MRI, will dissipate what remains of MRI's assets.  It is likely that the defendants may destroy all relevant documents and dissipate MRI's assets before this case may be heard on its merits.  A dissipation of MRI's remaining assets would make it impossible to provide any effective relief to the thousands of investors in this case.  Plaintiffs face the immediate and irreparable harm of not being able to recover their investments unless MRI is barred from dissipating its assets and destroying evidence.

3. <u>Balance of Equities</u>

MRI argues that the balance tilts in its favor because Nevada is not a convenient forum and this action should be dismissed under the *forum non conveniens* doctrine.  MRI's *forum non conveniens* argument is without merit, and its assertion that all relevant documentation and plaintiffs are outside the United States is unavailing.  The plaintiffs' location is irrelevant to the burden placed on defendants if an injunction issues.  And MRI's claim that all documentation is in Japan is disingenuous given that: (1) all documentation is supposedly electronic; and (2) MRI has an office and is headquartered in Nevada.  The consequences to MRI if an injunction is granted is that it could not improperly transfer or

10

dissipate the assets it is holding on behalf of the thousands of investors in MRI and could not destroy documents.  These are obligations MRI already has under the contracts.

The harm to plaintiffs would be the loss of significant investments, including in some cases their life savings, and difficulty or inability to trace and recover assets.

Weighing the harms, the balance of equities tilts substantially in plaintiffs' favor.

4. Public Interest

"The public interest inquiry primarily addresses impact on non-parties rather than parties." *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 974 (9th Cir. 2002).  Here, there would be no harm to the public interest should an injunction be issued, and in fact the public interest would be served by discontinuing a scheme that could injure other members of the public.  Plaintiffs argue that because the injunction would impact only the parties, this factor is at most neutral.  However, they also argue Nevada has an interest in targeting fraud perpetrated within its boundaries.  Accordingly, the public interest favors the issuance of an injunction.

The court therefore concludes as follows.

1. The court has jurisdiction over the subject matter of this case, and there is good cause to believe it will have jurisdiction of all parties hereto and that venue in this district is proper. Plaintiffs have asserted federal securities claims and such claims are not "patently without merit, or clearly . . . immaterial and made solely for the purpose of obtaining jurisdiction." *Brock v. Writers Guild of Am., W., Inc.*, 762 F.2d 1349, 1352 (9th Cir. 1985)

(internal citations omitted) ("Because jurisdiction is not defeated by the possibility that the complaint might fail to state a claim upon which recovery can be had, the failure to state a valid claim is not the equivalent of a lack of subject matter jurisdiction, and calls for a judgment on the merits rather than for a dismissal for lack of jurisdiction.");

2. There is good cause to believe that MRI has engaged in breaches of contract and fraud, including securities fraud, and plaintiffs are likely to prevail on the merits of this action;

3. There is good cause to believe that immediate and irreparable harm will result from MRI's ongoing breaches of contract and fraudulent acts and practices in connection with the operation of MRI and related entities, unless MRI and its officers and agents are restrained and enjoined by order of this court;

4. There is good cause to believe that MRI is not cooperating with Japanese regulators by failing to comply with orders issued by the Japanese regulators;

5. There is cause to believe that MRI has violated SEC's order by destroying documents in direct contravention of its order;

6. There is good cause to believe that immediate and irreparable damage to the court's ability to grant effective final relief for plaintiffs, including monetary restitution, will occur from the sale, transfer, or other disposition or concealment of MRI's assets or records;

7. Balancing the equities, the potential harm to the plaintiffs outweighs the harm to MRI and Fujinaga, as officer of MRI, if an injunction is issued; and

8. Weighing the equities and considering plaintiffs'

1  likelihood of success on the merits, equitable relief is in the

2  public interest.

3       It is therefore ordered that the motion for preliminary

4  injunction of the plaintiffs is granted as to the defendants MRI

5  and Edwin Fujinaga as officer of MRI (#8, #70), and it is ordered

6  that MRI and Edwin Fujinaga, as officer of MRI, and MRI's

7  representatives, whether acting directly or through any entity,

8  corporation, subsidiary, division, director, manager, member,

9  affiliate, independent contractor, accountant, or financial

10 advisor, are hereby enjoined and restrained from:

11      A. Destroying, erasing, mutilating, concealing, altering,

12 transferring, or otherwise disposing of, in any manner, directly or

13 indirectly, documents that relate to the business, business

14 practices, assets, or business or personal finances of any

15 defendant;

16      B. Failing to create and maintain documents that, in

17 reasonable detail, accurately, fairly, and completely reflect MRI's

18 or Sterling Escrow's incomes, disbursements, transactions, and use

19 of money; and

20      C. Dissipating or transferring any of MRI's assets in

21 violation of the terms of the existing contracts or the SESC's

22 order of April 26, 2013, or in violation of the law.

23      It is further ordered that the parties shall complete

24 discovery on issues regarding the operation of MRI's business from

25 January 2011 to the present within ninety (90) days of this order.

26 Such discovery shall include but not be limited to:

27      1. Determining the location and amount of assets held by MRI,

28 Fujinaga as officer of MRI, or Sterling Escrow, in their names or

13

in which they have a beneficial interest, including accounting records in both paper and electronic form, such as financial statements, general ledgers, and check registers reflecting all receipts and disbursements of assets by MRI during that period;

2. Determining whether assets of MRI are being converted from MRI to any other person or entity;

3. Discovery from MRI's bank or banks in which plaintiffs deposited their money;

4. Ascertaining whether MRI or Fujinaga as officer of MRI have solicited or consummated any investment contracts following the Japanese regulators' order of April 26, 2013; and

5. Determine the status of any efforts by MRI to repay MRI investors.

Service of any discovery requests, notices, or subpoeanas may be made by personal service, facsimile, overnight courier, e-mail, or first-class mail on an individual, entity or the individual's or entity's attorney.

To facilitate discovery, the parties may: take depositions, subject to ten (1) calendar days' notice by facsimile, email or otherwise; obtain the production of documents, within thirty (30) calendar days from service by facsimile, email or otherwise of a request or subpoena from any persons or entities, including non-party witnesses; obtain other discovery, including further interrogatories, requests for admissions, and requests to inspect the premises and files of defendants within thirty (30) calendar days from the date of service by facsimile, email or otherwise of such other discovery requests, interrogatories, requests for admissions, or requests for inspection.

1    Service of any discovery requests, notices, or subpoenas may
2 be made by personal by service, facsimile, email or first-class
3 mail on an individual, entity, or the individual's or entity's
4 attorney.

5    The court reserves on the plaintiffs' request for the
6 appointment of a monitoring receiver and an asset freeze until the
7 parties have engaged in the discovery provided for in this order or
8 until further order of the court.

9    It is further ordered that the court shall retain jurisdiction
10 of this matter for all purposes.

11    It is further ordered that plaintiffs file proof of bond in an
12 amount of $10,000.00 within five (5) days of this order.  The bond
13 shall serve as security for all claims with respect to this
14 preliminary injunction, and any additional injunctive relief
15 ordered by the court in this action.

16    DATED: This 12th day of September, 2013.

_____
UNITED STATES DISTRICT JUDGE