**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\*\*\*

SHIGE TAKIGUCHI, *et al.*,

          Plaintiffs,

vs.

MRI INTERNATIONAL, INC. *et al.*,

          Defendants.

2:13–cv–01183–JAD–VCF

**ORDER**

     Before the court is Defendants Junzo Suzuki and Paul Musashi Suzuki's motion to stay discovery (#106[1]). Class-action Plaintiffs filed an opposition (#114); and, the Suzukis replied (#119).

     Also before the court is Defendants MRI International and Edwin Fujunaga's motion to stay discovery (#108). Class-action Plaintiffs renewed their opposition (#114); and, MRI International and Fujunaga replied (#118).

     Also before the court is class-action Plaintiffs' motion to compel (#123) and motion for sanctions (#127). Separate oppositions were filed by non-party deponent Mark Luszczk (#126) and Defendants MRI International and Edwin Fujinaga (#128).

**BACKGROUND**

     This matter involves a securities fraud class action under state and federal law. (*See* Amend. Compl. (#86) at 10–19). For purposes of Defendants' motions to stay, the relevant facts include: (1) the alleged Ponzi scheme; (2) Japanese and American regulatory investigations into the

---

[1] Parenthetical citations refer to the court's docket.

1

alleged scheme; (3) U.S. District Judge Howard D. McKibben's September 12, 2013 preliminary injunction and order granting expedited discovery; and, (4) the circumstances surrounding the motions before the court. Each is discussed below.

### I.    Defendants Allegedly Orchestrate a Ponzi Scheme

From approximately 1998 through April 26, 2013, Defendants MRI International, LVT, Inc. d/b/a Sterling Escrow, and their corporate officers, Edwin J. Fujinaga, Junzo Suzuki, and Paul Musashi Suzuki, allegedly orchestrated a Ponzi scheme in connection with the purchase and sale of medical-account receivables. (Amend. Compl. (#86) at ¶¶ 1, 3–7, 23).

The medical-account receivables involved in the scheme were purportedly held by U.S. medical providers against insurance companies. (*Id*. at ¶ 1). After allegedly buying the receivables from medical providers at a discount, Defendants sold the receivables to Japanese investors on the premise that the accounts were profitable investments that were heavily regulated by American authorities and guaranteed under Nevada law. (*Id*. at ¶ 19.)

In reality, no medical-account receivables appear to have existed. Defendants allegedly used investors' money to pay off earlier investors and fund their own lavish lifestyles. (*Id*. at ¶ 2). In the process, Defendants misrepresented the extent of the United States' regulatory oversight and lied to Japanese regulators who investigated the scam. (*Id*.) In the end, Defendants allegedly stole $136.5 billion from approximately 8,700 Japanese investors. (*Id*. at ¶ 30).

### II.   Japan & the United States Investigate

The scheme was uncovered in 2013. (*See id*. at ¶ 31). Customers reported MRI International to Japan's Financial Services Agency ("FSA"), and complained that MRI International failed to repay on matured investments. (*Id*.) Shortly thereafter, the United States Securities and Exchange Commission followed suit. On March 7, 2013, the SEC sent a letter to Defendant Edwin Fujinaga, MRI

2

International's CEO, demanding that "all documents created, received or maintained by MRI be preserved pending further notice from the SEC staff" and that "any procedures for the disposal, removal or purging of MRI documents be suspended." (Def.'s Opp'n (#40) at Exhibit A).

On April 26, 2013, the FSA revoked MRI's license. (Amend. Compl. (#86) at ¶ 31). The FSA adopted the recommendation of the Japanese Securities and Exchange Surveillance Commission, which found that MRI International: (1) failed to separately hold investor monies and since at least 2011; (2) commingled those assets with MRI's own monies; (3) used investor monies to pay dividends to other investors; (4) made false statements to FSA during its regulatory investigation; (5) developed plans to continue soliciting new investors in 2013, knowing MRI International could not satisfy its outstanding obligations. (*Id*.)

In revoking MRI's license, the FSA directed MRI to: (1) give proper explanations to customers about the administrative action; (2) immediately assess the customers' status and the status concerning the use and management of assets invested by the customers and regarding other necessary matters; (3) formulate a plan to repay the investors and implement the plan immediately; (4) take every step to protect customers; (5) stop improperly spending the company assets; and, (6) submit status reports regarding the above responses and implementations. (*Id*.); (*see also* Amend. Mot. for Prelim. Injunc. (#8) at Ex. 5).

Thereafter, the United States Security and Exchange Commission filed a civil enforcement action against MRI International, Edwin Fujinaga, and CSA Service Center LLC. *See SEC v. Fujinaga, et al.*, No. 13–cv–01658–JCM–CWH (D. Nev. Sept. 11, 2013).

**III.     Defendants are Enjoined & Discovery is Expedited**

On July 5, 2013, class-action Plaintiffs filed suit under the Securities Act of 1933, the Securities Exchange Act of 1934, and various Nevada state laws. (Compl. (#1) at 10–19). On the same day,

3

Plaintiffs also moved for a preliminary injunction to freeze Defendants assets and expedite discovery. (Mot. for Prelim. Injunc. (#5) at 13).

On September 12, 2013, in the SEC's parallel action, U.S. District Judge James C. Mahan entered a temporary restraining order. *See SEC v. Fujinaga, et al.*, No. 13–cv–01658–JCM–CWH, Order #10 at 2–11 (D. Nev. Sept. 11, 2013).

On September 13, 2013, U.S. District Judge Howard D. McKibben granted Plaintiffs' motion for a preliminary injunction against MRI International and Edwin Fujinaga. (Prelim. Injunc. #96). The court reviewed Plaintiffs' complaint, applied *Winter v. Natural Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008), and found, *inter alia*, that Plaintiffs are likely to succeed on their federal and state law securities claims. (Prelim. Injunc. (#96) at 6–8, 11).

Judge McKibben also determined that Plaintiffs face an "immediate and irreparable harm" because there is "cause to believe that MRI has violated the SEC's order by destroying documents in direct contravention of its order." (*Id*. at 12:18–19). Accordingly, the court ordered expedited discovery for ninety days, stating "discovery shall include but **not** be limited to" the following five categories:

> 1. Determining the location and amount of assets held by MRI, Fujinaga as officer of MRI, or Sterling Escrow, in their names or in which they have a beneficial interest, including accounting records in both paper and electronic form, such as financial statements, general ledgers, and check registers reflecting all receipts and disbursements of assets by MRI during that period;
>
> 2. Determining whether assets of MRI are being converted from MRI to any other person or entity;
>
> 3. Discovery from MRI's bank or banks in which plaintiffs deposited their money;

        4.      Ascertaining whether MRI or Fujinaga as officer of MRI have solicited or consummated any investment contracts following the Japanese regulators' order of April 26, 2013; and,

        5.      Determine the status of any efforts by MRI to repay MRI investors.

(Prelim. Injunc. (#96) at 13:26–14:13) (emphasis added).

On October 7, 2013, Judge Mahan entered an asset freeze and preliminary injunction in the Security and Exchange Commission's civil enforcement action. *See SEC v. Fujinaga, et al.*, No. 13–cv–01658–JCM–CWH, Order #20 at 2–10 (D. Nev. Sept. 11, 2013).

## IV. The Motions Before the Court

Following Judge McKibben's September 13 preliminary injunction in this action, Defendants filed motions to dismiss (#102, #105) and emergency motions to stay discovery (#106, #108) in early October. As discussed below, Defendants' motions to dismiss instituted an automatic stay of discovery under the Private Securities Litigation Reform Act. (*See infra* DISCUSSION § I).

In response to the emergency nature of Defendants' motions to stay, this court issued a minute order pending resolution of the motions to stay. (*See* Min. Order (#109) at 2:21–23). The minute order limited discovery to the five particularized topics listed in Judge McKibben's preliminary-injunction. (*Id.*) ("IT IS HEREBY ORDERED all discovery on topics other than those specifically ordered by Judge McKibben to be completed on or before December 11, 2013, is temporarily stayed pending resolution of these motions."); (*see also* Mins. Proceedings #129) (stating that the court's intent in drafting the minute order was to eliminate Judge McKibben's qualification that "discovery shall include but not be limited to").

On November 13, 2013, Plaintiffs deposed non-party Mary Luszcyzk. (Pl.'s Mot. to Compel (#123) at 4:21). Luszcyzk is the Senior Vice President of accounts receivables for Claims Servicing of

5

American, LLC. Claims Servicing of American, LLC is a Nevada corporation allegedly owned and controlled by Defendant Edwin Fujinaga, the kingpin in the underlying securities-fraud action. (*Id.* at 4:10–14). Luszcyzk refused to answer any questions during the deposition on the grounds that answering Plaintiffs' questions would expose Luszcyzk to civil liability under the terms of a confidentiality agreement between Luszcyzk and Fujinaga. (*Id.* at 5:3–11). Consequently, on November 20, 2013, Plaintiffs filed the instant motion to compel Luszcyzk's testimony.

On December 5, 2013, Plaintiffs deposed non-party Raven Gilmore. (*See* Mins. Proceedings (#129) at 1:11:00 p.m.) (proffering the court Gilmore's deposition transcript). During the deposition Plaintiffs' counsel asserted that the court's various orders entitle Plaintiffs to unlimited discovery. (*Id.* at 1:32:39) (stating that Plaintiffs' interpreted (1) the preliminary injunction order as permitted unlimited discovery and (2) this court's minute order as maintaining the preliminary injunction order without modification).

On December 9, 2012, the court held a hearing on Defendants' motions. (Mins. Proceedings #129). Defendants argued that discovery must be stayed because a stay is mandated by the Private Securities Litigation Reform Act, which takes precedence over the court's preliminary injunction and order granting expedited discovery. (*Id.*); (*see also* Def.'s Mot. to Stay (#106) at 2:21–22). In response, Plaintiffs argued that the Private Securities Litigation Reform Act permits discovery under certain conditions, which Judge McKibben's preliminary injunction satisfied. (Pl.'s Opp'n (#114) at 4–5); (*see also* Mins. Proceedings #129).

On December 11, 2013—(which is today)—the ninety-day discovery period permitted by Judge McKibben's preliminary injunction order expired.

# DISCUSSION

The parties' motions raise three questions: (1) whether the findings in Judge McKibben's preliminary injunction satisfy the PSLRA's heightened pleading standard; (2) whether the preliminary injunction also satisfies the PSLRA's discovery requirements; and, (3) whether Plaintiffs may compel Luszcyzk's testimony, despite the existence of a confidentiality agreement between Luszcyzk and Defendants. Before examining these questions, the court begins its analysis by reviewing the Private Securities Litigation Reform Act's heightened pleading standard and discovery requirements.

## I.     The Statutory Background

Private securities fraud actions are governed by the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 77a, *et seq.* ("the PSLRA" or "the Act"). The Act was passed to restrict perceived abuses in securities class-action litigation by testing the sufficiency of a plaintiff's complaint before discovery begins. *Medhekar v. U.S. Dist. Court for the N. Dist. of Cal.*, 99 F.3d 325, 328 (9th Cir. 1996) (discussing Congress' intent); *SG Gowen Sec. v. U.S. Dist. Court for the N. Dist. Of Cal.*, 189 F.3d 909, 911–13 (9th Cir. 1999) (citing *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 530–31 (3d Cir. 1999)).

The primary abuse the Act sought to curb is the filing of "strike suits." *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 191 (1st Cir. 1999); *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1095 (10th Cir. 2003). A "strike suit" is a shareholder derivative action "based on no valid claim, brought either for nuisance value or as leverage to obtain a favorable or inflated settlement." BLACK'S LAW DICTIONARY (9th ed. 2009). As reported by the U.S. Senate:

> The Committee heard substantial testimony that today certain lawyers file frivolous "strike" suits alleging violations of the federal securities laws in the hope that defendants will quickly settle to avoid the expense of litigation. These suits, which unnecessarily increase the cost of raising capital and chill corporate disclosure, are often based on

7

nothing more than a company's announcement of bad news, not evidence of fraud. All too often, the same "professional" plaintiffs appear as name plaintiffs in suit after suit.

S. Rep. No. 104–98 at 2 (1995).

The PSLRA achieves its goal by departing from the Federal Rules of Civil Procedure in two significant ways that are relevant here. First, the Act requires plaintiffs to satisfy a heightened pleading standard that is more stringent than Rule 8 and Rule 9(b)'s pleading requirements. *See* 15 U.S.C. § 78u–4(b); *see also* WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE: CIVIL 3d § 2046.2. The heightened pleading standard's purpose is to curb strike suits by "ward[ing] off allegations of 'fraud by hindsight.'" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 320 (2007) (citations omitted).

Second, the Act departs from the discovery procedures outlined in Rule 26. Under the PSLRA, discovery is permitted "only after the court has sustained the legal sufficiency of the complaint." *SG Cowen Sec.* 189 F.3d at 913 (citing S. Rep. No. 104–98 at 14 (1995). The PSLRA's automatic stay of discovery takes effect "during the pendency of any motion to dismiss." 15 U.S.C. § 78u–4(b)(3)(B); *see also* WRIGHT & MILLER, *supra* at § 2046.2 (stating that the stay may apply even if the defendant has not yet moved to dismiss) (citation omitted).

Although automatic, the PSLRA's discovery stay is not absolute. Under the Act, "all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party." 15 U.S.C. § 78u–4(b)(3)(B).

The party seeking discovery bears the burden of demonstrating that the discovery sought is particularized and that the stay will cause undue prejudice or risk the destruction of evidence. WRIGHT & MILLER, *supra* at § 2046.2. A discovery request is "particularized" if it seeks a "clearly defined universe of documents" and other information. *In re WorldCom, Inc. Sec. Litig.*, 234 F. Supp. 2d 301, 306

8

(S.D.N.Y. 2002). Under the PSLRA, "undue prejudice" means "improper or unfair detriment," which is less than "irreparable harm." *Med. Imaging Ctrs. of Am., Inc. v. Lichtenstein*, 917 F. Supp. 717, 720 (S.D. Cal. 1996).

## II. <u>Whether the Preliminary Injunction Satisfies the PSLRA's Heightened Pleading Standard</u>

The threshold issue raised by Defendants' motions to stay is whether the findings in the court's preliminary injunction satisfy the PSLRA's heightened pleading standard. Defendants proffer two arguments as to why the preliminary injunction cannot satisfy the PSLRA's heightened pleading standard. First, Defendants proffer a procedural argument; it contends that the preliminary injunction cannot satisfy the PSLRA's heightened pleading standard because Plaintiffs have not filed a motion to lift the PSLRA's automatic stay. Second, Defendants argue that discovery cannot commence because the preliminary injunction did not sustain the legal sufficiency of the complaint as required by section 78u–4(b) of the PSLRA. Both arguments are discussed below.

### *A.    Defendants' Procedural Argument is Unpersuasive*

Defendants contend that lifting the PSLRA's discovery stay is procedurally improper because Plaintiffs did not file a specific "motion for 'particularized' discovery." (Def.'s Mot. to Stay (#108) at 3:15); (Def.'s Reply (#119) at 6:14). This argument is unpersuasive.

Under certain conditions, the PSLRA permits plaintiffs to conduct "particularized" discovery before the court has sustained the legal sufficiency of the complaint. *See* 15 U.S.C. § 78u–4(b)(3)(B). To conduct "particularized" discovery, the plaintiff must demonstrate that the stay will cause either undue prejudice or the risk of the destruction of evidence. WRIGHT & MILLER, *supra* at § 2046.2.

The PSLRA does not, however, contain a procedural hurdle that limits when or how the court may decide whether these conditions are satisfied. *See* 15 U.S.C. § 78u–4(b)(3)(B); (*see also* Def.'s Mot. to Stay (#108) at 3:15) (arguing that that lifting the PSLRA's discovery stay is procedurally

9

improper because Plaintiffs did not file "a motion for 'particularized' discovery" without citing any legal authority for this proposition); (Def.'s Reply (#119) at 6:14) (arguing the same).

Rather, the Act merely states that the discovery stay may be lifted "upon the motion of any party." 15 U.S.C. § 78u–4(b)(3)(B). The court, therefore, concludes that the PSLRA does not, as Defendants contend, require Plaintiffs to file a specific "motion for 'particularized' discovery." (Def.'s Mot. to Stay (#108) at 3:15). The PSLRA's plain language indicates the converse: namely, that the discovery stay may be lifted on any motion brought by any party.

### B. *The Preliminary Injunction & PSLRA's Heightened Pleading Standard*

Second, Defendants argue that lifting the PSLRA's discovery stay is improper because the court has not sustained the complaint's legal sufficiency as required by section 78u–4(b). The lynchpin of Defendants' argument is that the preliminary-injunction standard is a wholly different legal standard than the PSLRA's heightened pleading standard. (*See* Def.'s Reply (#118) at 2:26–28). In response, Plaintiffs argue that, despite the differing standards, the complaint's legal sufficiency was established by the court's entry of a preliminary injunction because the court reviewed Plaintiffs' complaint and determined that Plaintiffs are "likely to succeed on the merits" of their state and federal claims. (*See* Pl.'s Opp'n (#114) at 2:16–18).

      i.    The PSLRA's heightened pleading standard

As discussed above, the PSLRA was enacted to curb frivolous strike suits that had little legal merit relative to the suits' ultimate settlement values. *See* S. Rep. No. 104–98 at 2, 14. The PSLRA confronts this problem by instituting a heightened pleading standard above the requirements set forth by Federal Rules of Civil Procedure 8 and 9(b). *See* 15 U.S.C. § 78u–4(b).

Under this heightened pleading standard, "any private securities complaint alleging that the defendant made a false or misleading statement must: (1) 'specify each statement alleged to have been

10

misleading [and] the reason or reasons why the statement is misleading,' 15 U.S.C. § 78u–4(b)(1); and (2) 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind,' § 78u–4(b)(2)." *Tellabs*, 551 U.S. at 321.

In *Tellabs*, the Supreme Court clarified the meaning of the PSLRA's "strong inference" standard. A strong inference exists where "a reasonable person would deem the inference of *scienter* cogent and at least as compelling as any opposing inference one could draw from the facts alleged." 551 U.S. at 322, 324. The strong inference standard "cannot be decided in a vacuum." *Id*. at 323. The Court stated, "[t]he inquiry is inherently comparative: How likely is it that one conclusion, as compared to others, follows from the underlying facts?" *Id*. "The inference that the defendant acted with *scienter* need not be irrefutable, *i.e.*, of the 'smoking-gun' genre, or even the 'most plausible of competing inferences.'" *Id*. (citations omitted). The purpose of the strong inference standard is "to ward off allegations of 'fraud by hindsight.'" *Id*. at 320 (citations omitted).

> ii. The court's preliminary injunction did not satisfy the PSLRA's heightened pleading standard

As an initial matter, the court is not persuaded by Defendants' argument that the stay must be enforced as a matter of law because the preliminary-injunction order "was decided under a **wholly different** and less stringent **legal standard**." (Def.'s Reply (#118) at 2:26–28) (emphasis original). Contrary to Defendants' assertion, the Supreme Court's decisions in both *Winter*, 555 U.S. at 20, which governs preliminary injunctions, and *Tellabs*, 551 U.S. at 321, which governs the PSLRA, focus on "likelihood" as the central inquiry.

As stated in *Winter*, and reiterated in the court's preliminary-injunction order, "[a] plaintiff seeking a preliminary injunction must establish that he is **likely** to succeed on the merits, that he is **likely** to suffer irreparable harm in the absence of preliminary relief, that the **balance** of equities tips in his

11

favor, and that an injunction is in the public interest." *Winter*, 555 U.S. 20 (citations omitted; emphasis added); (*see also* Prelim. Injunc. (#96) at 6:2–3) (citing *Winter*, 555 U.S. at 20). Similarly, in *Tellabs*, the Supreme Court held that the central inquiry governing the PSLRA's heightened pleading standard is "inherently **comparative**: How **likely** is it that one conclusion, as compared to others, follows from the underlying facts?" *Tellabs*, 551 U.S. at 322.

Nonetheless, the preliminary-injunction order did not satisfy the PSLRA standard. Three facts support this conclusion. First, a plaintiff cannot satisfy the PSLRA's heightened pleading standard by neutralizing the PSLRA's policy concerns. *See, e.g.*, *Fosbre v. Las Vegas Sands Corp.*, No. 10–cv–0765, 2012 WL 5879783, at *3 (D. Nev. Nov. 20, 2012). This, however, is the essence of Plaintiffs' argument. (*See* Pl.'s Opp'n (#114) at 4:7–20) ("Because its policy objectives have been satisfied, the PSLRA does not require any discovery stay."). The PSLRA's policy concerns and heightened pleading standard are different issues that trigger separate inquires. The former is a Congressional objective; the latter is a pleading requirement.

Second, although *Winter* and *Tellabs* articulate comparable legal standards, which focus on the likelihood of success, the court's preliminary injunction and the PSLRA's heightened pleading standard focus on different moments in time. As discussed above, the purpose of the PSLRA's heightened pleading standard is to prevent allegations of "fraud by hindsight." *Tellabs*, 551 U.S. at 320. The Act requires the complaint, "with respect to each act or omission alleged to violate this title, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). This means that to satisfy the PSLRA's heightened pleading standard, a complaint must allege that the defendant actually knew a statement was false when the statement was made. *See, e.g.*, *Shields v. Citytrust Bancorp*, 25 F.3d 1124 (2d Cir. 1994); *In re Advanta Corp. Sec. Lit.*, 180 F.3d 525, 535, 539 (3d Cir. 1999); *In re Comshare, Inc. Sec. Lit.*, 183 F.3d 542, 553 (6th Cir. 1999).

12

The court's preliminary injunction, however, was predicated on MRI International's alleged failure to comply with regulatory freezes from the U.S. Security and Exchange Commission and Japan's Securities and Exchange Surveillance Commission. (*See* Prelim. Injunc. (#96) at 3–4). As a result, the preliminary injunction did not examine misrepresentations Defendants allegedly made to Plaintiffs as required by section § 78u-4(b)(2).

Third, the preliminary injunction largely focused on Plaintiffs' state law claims without examining all of Plaintiffs' securities claims in detail. (*See id.* at 8:11–18) ("[P]laintiffs are also likely to succeed on at least **some** of their securities claims.") (emphasis added). In order to sustain the legal sufficiency of a complaint, however, the court must review all of the claims at issue. *See* 15 U.S.C. § 78u–4(b). The court, therefore, concludes that the September 13, 2013 preliminary injunction did not satisfy the PSLRA's heightened pleading standard.

### III.      Whether the Preliminary Injunction Triggered the PSLRA's Discovery Exceptions

The second question raised by Defendants' motion is whether the court's preliminary injunction triggered the PSLRA's exceptions to the mandatory discovery stay. Because the court has concluded that the legal sufficiency of Plaintiffs' complaint has not been sustained, this inquiry is moot. Under the PSLRA, Plaintiffs are entitled to discovery only after a court has sustained the legal sufficiency of a complaint. *See* 15 U.S.C. § 78u–4(b)(3)(B).

The court notes, however, that even if the court sustained the complaint's legal sufficiency, which it did not, Plaintiffs did not satisfy their burden of demonstrating that "particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party." *See* 15 U.S.C. § 78u–4(b)(3)(B); WRIGHT & MILLER, *supra* at § 2046.2 (stating that Plaintiffs' bear the burden). Two facts support this conclusion.

13

First, the PLSRA permits particularized discovery only when "necessary." Plaintiffs have not made any showing regarding the "necessity" of discovery. (*See generally* Opp'n (#114) at 1–7); (*see also* Mins. Proceedings #129). On the contrary, Plaintiffs have conducted discovery for ninety days. (*See* Prelim. Injunc. (#96) at 13) (granting ninety days to conduct limited discovery). In addition to propounding written discovery, Plaintiffs have conducted depositions, subpoenaed the U.S. Security and Exchange Commission, and obtained a copy of the Commission's file regarding the parallel administrative action, *SEC v. Fujinaga, et al.*, No. 13–cv–01658–JCM–CWH (D. Nev. Sept. 11, 2013). The breadth of discovery previously conducted militates strongly against finding that additional discovery is now "necessary."

Second, Plaintiffs also failed to satisfy their burden because they did not argue that particularized discovery is presently required to "preserve evidence" or "prevent undue prejudice." (*See* Opp'n (#114) at 1–7); (Mins. Proceedings #129). In September, the court's preliminary injunction found that discovery was required to prevent Plaintiffs from an "immediate and irreparable harm" because "[t]here is cause to believe that MRI has violated SEC's order by destroying documents in direct contravention of its order." (Prelim. Injunc. (#96) at 12:18–19); *see also Lichtenstein*, 917 F. Supp. at 720 (stating that under the PSLRA "undue prejudice" means "something less than irreparable harm."). This allegation, however, was not renewed by Plaintiffs' opposition, (*see* Opp'n (#114) at 1–7), or substantiated during the court's November 9, 2012 hearing. (*See* Mins. Proceedings (#129) at 1:34:00) (stating that there is now only "a concern" that Defendants "may not be" following the SEC order). The court finds that Plaintiffs failed to satisfy their burden of demonstrating that discovery is necessary to "preserve evidence" because Plaintiffs' concern is speculative.

During the court's hearing, Defense counsel for the Suzukis attempted to bolster this conclusion, arguing that "there is no conceivable way" for Plaintiffs to show that discovery is now necessary to

14

preserve evidence because the SEC entered a document-retention order against Defendants. (*See* Mins. Proceedings (#129) at 1:06:00). For the sake of clarity, the court notes that the holding in this order does not encompass the Suzukis' argument. Two facts support rejecting the Suzukis' argument.

First, the argument is factually incorrect. The SEC's order predated the preliminary injunction; it is not, as the Suzukis argue, the other way around. (*Compare* BACKGROUND §§ II–III *with* Mins. Proceedings (#129) at 1:06:00). The preliminary injunction was entered because there was "cause to believe that MRI has violated the SEC's order by destroying documents in direct contravention of its order." (Prelim. Injunc. (#69) at 12:18–19).

Second, even if the argument were factually correct, which it is not, the argument is legally doubtful. Under section 78u–4(b)(3)(C)(i) of the PSLRA all defendants are statutorily obligated to "treat all documents, data compilations (including electronically recorded or stored data), and tangible objects that are in the custody or control of such person and that are relevant to the allegations, as if they were the subject of a continuing request for production of documents from an opposing party under the Federal Rules of Civil Procedure."

This provision imposes a duty to preserve evidence that is, in effect, tantamount to a court order. It is highly unlikely that Congress would have drafted the PSLRA to include both subsection (B), which permits "particularized discovery" to "preserve evidence," and subsection (C), which orders parties to preserve evidence, if Congress thought that an order to preserve evidence was sufficient to prevent the destruction of evidence. *See, e.g.*, *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.") (internal quotation marks omitted)).

**IV.      Whether Plaintiffs may Compel Luszcyzk's Deposition Testimony**

The final question the parties' motions present is whether Plaintiffs' may compel Luszcyzk's testimony, despite the existence of a confidentiality agreement between Luszcyzk and Defendants. Because the court has concluded that Plaintiffs failed to satisfy their burden to lift the PSLRA's discovery stay, this inquiry is moot.

In the interest of judicial economy, however, the court examines the merits of Plaintiffs' motion to compel. *See* FED. R. CIV. P. 1 (instructing courts to administer the Rules "to secure the just, speedy, and inexpensive determination of every action."). If Defendants' motions to dismiss are denied, discovery will automatically recommence and Plaintiffs may re-depose Mary Luszcyzk in accordance with the terms discussed below. (*See infra* § C).

   *A.     Legal Standard*

Federal Rule of Civil Procedure 26(b)(1) governs discovery's scope and limits. Under the Rule's liberal discovery principles, the party resisting discovery carries a heavy burden of showing why discovery should be denied. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

Where, as here, a non-party resists discovery on the grounds that the information sought is confidential, the non-party may move for relief pursuant to Rule 45(d)(3)(B)(i).[2] In pertinent part, Rule 45(d)(3)(B) permits the court to modify or quash a subpoena "if it requires disclosing a trade secret or other confidential research, development, or commercial information." Rule 45(d)(3)(B)(i) tracks the protection of confidential information provided by Rule 26(c)(1)(G). *See, e.g.*, *Mannington Mills, Inc. v. Armstrong World Indus., Inc.*, 206 F.R.D. 525, 529 (D. Del. 2002).

---

[2] As of December 1, 2013, amendments to the Federal Rules of Civil Procedure took effect. These include changes to Rule 45, which recodified the former Rule 45(c)(3)(B)(i) as the present Rule 45(d)(3)(B)(i).

There is "no absolute privilege for trade secrets and similar confidential information." *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 685 (N.D. Cal. 2006) (quoting *Centurion Indus., Inc. v. Warren Steurer & Assoc.*, 665 F.2d 323, 325 (10th Cir. 1981)); *see also* FED. R. CIV. P. 26(c)(1)(G), Advisory Committee Notes, 1966 Amendments ("The courts have not given trade secrets automatic and complete immunity against disclosure, but have in each case weighed their claim to privacy against the need for disclosure."). "Trade secret or commercially sensitive information must be 'important proprietary information' and the party challenging a subpoena must make 'a strong showing that it has historically sought to maintain the confidentiality of this information." *Gonzales*, 234 F.R.D. at 684 (quoting *Compaq Computer Corp. v. Packard Bell Elec., Inc.*, 163 F.R.D. 329, 338 (N.D. Cal. 1995)). Where a subpoenaed party meets its initial burden, "the burden shifts to the requesting party to show a 'substantial need for the testimony or material that cannot be otherwise met without undue hardship.'" *Id*. The Court has broad discretion in controlling discovery. *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988).

### B.     Plaintiffs' Motion to Compel is Granted

The court concludes that Luszcyzk's confidentiality agreement with Edwin Fujinaga and Claims Servicing of America, LLC does not protect the purportedly confidential information from disclosure. Three facts support this conclusion.

First, neither Luszcyzk nor Fujinaga meaningfully opposed Plaintiffs' motion to compel. (*See* Luszcyzk's Opp'n (#126) at 14:14–15) ("Deponent has no personal interest in whether the Confidentiality Agreement is deemed enforceable in full or in part."); (*see also* Fujinaga's Opp'n (#128) at 14:13–14) (making the boilerplate objection that "[p]ublic disclosure of this information would cause irreparable harm to Defendants in this lawsuit."). Under Local Rule 7-2(d), an opposing party's failure to respond to a moving parties' argument constitutes "consent to the granting of the motion."

17

Second, neither Luszcyzk nor Fujinaga have satisfied their burden under Rules 26 and 45. As discussed above, the party resisting discovery carries "a heavy burden" of showing why discovery should be denied. *Blankenship*, 519 F.2d at 429. In the context of a subpoena issued to a non-party, the non-party challenging the subpoena must make "a strong showing that it has historically sought to maintain the confidentiality of this information." *Gonzales*, 234 F.R.D. at 684. Luszcyzk and Fujinaga, however, failed to even address Rule 45, let alone demonstrate that the information sought has historically been kept confidential.

Third, even if Luszcyzk and Fujinaga satisfied their burden, which they did not, the information covered by the confidentiality agreement is, most likely, discoverable. *See* FED. R. CIV. P. 26(c)(1)(G), Advisory Committee Notes, 1966 Amendments ("The courts have not given trade secrets automatic and complete immunity against disclosure, but have in each case weighed their claim to privacy against the need for disclosure.").

### C.  *Luszcyzk's Confidentiality Agreement is Amended to Comply with Public Policy*

Anticipating that the court would grant Plaintiffs' motion to compel, Luszcyzk requests the court to fashion conditions to mitigate any potential harm to her that may be caused by disclosing confidential information. (*See* Luszcyzk's Opp'n (#126) at 14:14–15). Luszcyzk's concern is that her confidentiality agreement with Defendants does not contain the standard language that permits parties to a confidentiality agreement to testify on matters covered by the agreement pursuant to a court order. (*See* Mins. Proceedings #129).

Because Luszcyzk's confidentiality agreement does not contain this provision, the court finds that the agreement violates public policy by prohibiting the discovery of possible violations of federal securities laws. *See, e.g.*, *Chambers, v. Capital Cities/ABC*, 159 F.R.D. 441, 444 (S.D.N.Y. 1995) ("Absent possible extraordinary circumstances not involved here, it is against public policy for parties to

18

agree not to reveal, at least in the limited contexts of depositions or pre-deposition interviews concerning litigation arising under federal law, facts relating to alleged or potential violations of such law."); I*n re JDS Uniphase Corp. Sec. Litig.*, 238 F. Supp. 2d 1127, 1137 (N.D. Cal. 2002) ("To the extent that [the confidentiality] agreements preclude former employees from assisting in investigations of wrongdoing that have nothing to do with trade secrets or other confidential business information, they conflict with public policy in favor of allowing even current employees to assist in securities fraud investigations.").

The court, therefore, amends paragraph 3 of Luszcyzk's confidentiality agreement by adding the bolded provision. In full, paragraph three now reads:

> 3. <u>Confidentiality</u>. Employee shall keep the Information strictly confidential and shall not disclose the Information or allow the Information to be disclosed, whether directly or indirectly, to any other person or third party without the prior written agreement of consent of Employer, **unless such Information is required to be produced by Employee in response to a valid order, summons, or subpoena issued by a court or administrative agency of competent jurisdiction.**

ACCORDINGLY, and for good cause shown,

IT IS ORDERED that Defendants' motions to stay (#106, #108) are GRANTED. All discovery is STAYED pending resolution of Defendants' motions to dismiss. If Defendants' motions to dismiss are denied, discovery automatically recommences on the date Defendants' motions to dismiss are denied.

IT IS FURTHER ORDERED that Plaintiffs' motion to compel (#123) is CONDITIONALLY GRANTED. If Defendants' motions to dismiss are denied, discovery automatically recommences on the date Defendants' motions to dismiss are denied and Plaintiffs may re-depose Mary Luszcyzk in accordance with the terms (*see supra* DISCUSSION § IV-C) of this court order.

IT IS FURTHER ORDERED that Plaintiffs' motion for sanctions (#127) is DENIED.

IT IS SO ORDERED.

DATED this 11th day of December, 2013.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE