**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\*\*\*

| | |
|---|---|
| SHIGE TAKIGUCHI, *et al.*, | |
| Plaintiffs, | Case No. 2:13–cv–1183–JAD–VCF |
| vs. | **ORDER** |
| MRI INTERNATIONAL, INC., *et al.*, | |
| Defendants. | |

This matter involves a class action securities fraud lawsuit governed by the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 77a, *et seq*. Before the court is Defendant Edwin Fujinaga's motion to disqualify Plaintiffs' Counsel (#148[1]). Plaintiff Shige Takiguchi filed an opposition (#155); and Fujinaga replied (#162). Also before the court is Fujinaga's motion for an order to show cause why Takiguchi and Plaintiffs' Counsel should not be held in contempt for allegedly violating the discovery stay (#150). Takiguchi filed an opposition (#158); and Fujinaga replied (#165). Also before the court is Defendants' motion to continue the hearing on the pending motions (#167). For the reasons stated below, Fujinaga's motions are denied and the hearing is vacated.

## BACKGROUND

Fujinaga's motions argue that Takiguchi violated this court's order staying discovery. For purposes of the motions, the relevant facts include (1) Defendants' alleged Ponzi scheme, (2) the court's orders limiting and staying discovery, and (3) Takiguchi's conduct that allegedly violated the court's orders. Each is discussed below.

---

[1] Parenthetical citations refer to the court's docket.

**I.     The Alleged Ponzi Scheme**

From approximately 1998 through April 26, 2013, Defendants MRI International, LVT, Inc. d/b/a Sterling Escrow, and their corporate officers, Edwin J. Fujinaga, Junzo Suzuki, and Paul Musashi Suzuki, allegedly orchestrated a Ponzi scheme in connection with the purchase and sale of medical-account receivables. (Amend. Compl. (#86) at ¶¶ 1, 3–7, 23).

The medical-account receivables involved in the scheme were purportedly held by U.S. medical providers against insurance companies. (*Id.* at ¶ 1). After allegedly buying the receivables from medical providers at a discount, Defendants sold the receivables to Japanese investors on the premise that the accounts were profitable investments that were heavily regulated by American authorities and guaranteed under Nevada law. (*Id.* at ¶ 19.)

Plaintffs claims that no medical-account receivables existed. Defendants allegedly used investors' money to pay off earlier investors and fund their own lavish lifestyles. (*Id.* at ¶ 2). In the process, Defendants misrepresented the extent of the United States' regulatory oversight and lied to Japanese regulators who investigated the scam. (*Id.*) In the end, Defendants allegedly stole $136.5 billion from approximately 8,700 Japanese investors. (*Id.* at ¶ 30).

The scheme was uncovered in 2013. (*See id.* at ¶ 31). Customers reported MRI International to Japan's Financial Services Agency ("FSA"), and complained that MRI International failed to repay on matured investments. (*Id.*) Shortly thereafter, the United States Securities and Exchange Commission became involved. On March 7, 2013, the SEC sent a letter to Defendant Edwin Fujinaga, MRI International's CEO, demanding that "all documents created, received or maintained by MRI be preserved pending further notice from the SEC staff" and that "any procedures for the disposal, removal or purging of MRI documents be suspended." (Def.'s Opp'n (#40) at Exhibit A).

On April 26, 2013, the FSA revoked MRI's license. (Amend. Compl. (#86) at ¶ 31). The FSA adopted the recommendation of the Japanese Securities and Exchange Surveillance Commission, which found that MRI International: (1) failed to separately hold investor monies and since at least 2011; (2) commingled those assets with MRI's own monies; (3) used investor monies to pay dividends to other investors; (4) made false statements to FSA during its regulatory investigation; (5) developed plans to continue soliciting new investors in 2013, knowing MRI International could not satisfy its outstanding obligations. (*Id*.)

In revoking MRI's license, the FSA directed MRI to: (1) give proper explanations to customers about the administrative action; (2) immediately assess the customers' status and the status concerning the use and management of assets invested by the customers and regarding other necessary matters; (3) formulate a plan to repay the investors and implement the plan immediately; (4) take every step to protect customers; (5) stop improperly spending the company assets; and, (6) submit status reports regarding the above responses and implementations. (*Id*.); (*see also* Amend. Mot. for Prelim. Injunc. (#8) at Ex. 5).

Thereafter, the U.S. Security and Exchange Commission filed a civil enforcement action against MRI International, Edwin Fujinaga, and CSA Service Center LLC. *See SEC v. Fujinaga, et al.*, No. 13–cv–01658–JCM–CWH (D. Nev. Sept. 11, 2013).

## II.     The Discovery Stay

On July 5, 2013, class-action Plaintiffs filed suit under the Securities Act of 1933, the Securities Exchange Act of 1934, and various Nevada state laws. (Compl. (#1) at 10–19). On the same day, Plaintiffs also moved for a preliminary injunction to freeze Defendants assets and expedite discovery. (Mot. for Prelim. Injunc. (#5) at 13).

On September 13, 2013, U.S. District Judge Howard D. McKibben granted Plaintiffs' motion for a preliminary injunction and determined that Plaintiffs face an "immediate and irreparable harm" because there is "cause to believe that MRI has violated [an] SEC[] order by destroying documents in direct contravention of its order." (*Id.* at 12:18–19). Accordingly, the court ordered expedited discovery for ninety days, stating "discovery shall include but not be limited to" the following five categories:

> 1. Determining the location and amount of assets held by MRI, Fujinaga as officer of MRI, or Sterling Escrow, in their names or in which they have a beneficial interest, including accounting records in both paper and electronic form, such as financial statements, general ledgers, and check registers reflecting all receipts and disbursements of assets by MRI during that period;
>
> 2. Determining whether assets of MRI are being converted from MRI to any other person or entity;
>
> 3. Discovery from MRI's bank or banks in which plaintiffs deposited their money;
>
> 4. Ascertaining whether MRI or Fujinaga as officer of MRI have solicited or consummated any investment contracts following the Japanese regulators' order of April 26, 2013; and,
>
> 5. Determine the status of any efforts by MRI to repay MRI investors.

(Prelim. Injunc. (#96) at 13:26–14:13).

Following Judge McKibben's entry of a preliminary injunction, Defendants filed a motion to dismiss (#102, #105) and an emergency motion to stay discovery (#106, #108). On October 21, 2013, the court limited discovery to the five particularized topics listed in Judge McKibben's preliminary-injunction order, pending resolution of Defendants' motion to stay. (*See* Min. Order (#109) at 2:21–23). On December 9, 2012, the court held a hearing on Defendants' motion to stay. (Mins. Proceedings #129). On December 11, 2013, the ninety-day expedited-discovery period permitted by Judge McKibben's preliminary-injunction order expired. On the same day, the court ordered a discovery stay under the Private Securities Litigation Reform Act, 5 U.S.C. § 78u–4(b). (*See* Order (#130) at 7–15).

**III.    Takiguchi Allegedly Violates the Discovery Stay**

On May 20, 2014 and June 2, 2014, Defendants filed the instant motions, arguing that Plaintiffs violated the Private Securities Litigation Reform Act's discovery stay. Defendants take issue with the following four events.

First, on October 10, 2013, Plaintiffs subpoenaed the U.S. Securities and Exchange Commission to obtain documents from the Commission that related to the parallel civil enforcement action. (*See* Taenaka Decl. (#159) at ¶ 3); (Def.'s Mot. to Disqual. (#148) at 7:10–21); (Def.'s Contempt Mem. (#151) at 5:5–17). On October 25, 2013, the Commission complied with Plaintiffs' subpoena and stated:

> As you know, this past Friday, October 25, the SEC shipped to you an electronic document production in compliance with the plaintiff-investors' subpoenas served on the SEC. After making the shipment, we looked at Pacer and noticed that the Court in the investor action had entered an order for a limited temporary stay of discovery. The order appears to apply to the SEC's document production. In light of the Court's order, we ask that you and the other counsel for the investors refrain from reviewing and otherwise sequester the SEC's production until the limited stay of discovery is lifted.

(Edwards Email (#148-3) at 1). These events transpired after Judge McKibben granted Plaintiffs' motion for expedited discovery, but before the court stayed discovery.

Second, Defendants "believe[] that Plaintiffs' counsel, upon information and belief, also obtained records from another party to this matter, Sterling Escrow, for a time period encompassing several years prior to this Court's limitation on discovery of 2011." (Def.'s Mot. to Disqual. (#148) at 8:1–5); (Def.'s Contempt Mem. (#151) at 5:23–27).

Third, sometime in January 2014, Plaintiffs and the Commission voluntarily collaborated to formulate questions for Fujinaga's deposition, which noticed by the Commission in connection with its civil enforcement action. (Def.'s Mot. to Disqual. (#148) at 8:10–16); (Def.'s Contempt Mem. (#151) at 6:3–9).

5

Fourth, Plaintiff's Counsel represented Samuel Haddad, who is Defendant MRI International's former Vice President of Operations, when the Commission deposed Haddad in connection with its civil enforcement action. (Def.'s Mot. to Disqual. (#148) at 8–9); (Def.'s Contempt Mem. (#151) at 6:10–19). Defendants argue that representing Haddad created a conflict of interest and has resulted in the disclosure of privileged or confidential information.

## LEGAL STANDARDS

Two separate legal standards govern the court's inquiry. The first relates to disqualification. Disqualification is a matter of state law. *In re Cnty. of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000); *Trone v. Smith*, 621 F.2d 994, 999 (9th Cir. 1980). Under Nevada Rule of Professional Conduct 1.7 lawyers must "not represent a client if the representation involves a concurrent conflict of interest." NEV. R. PROF'L. CON. 1.7(a). A concurrent conflict exists if one client will be directly adverse to another client or there is a "significant risk" that the representation of one client will be materially limited by the lawyer's responsibilities to another client. *Id*. Additionally, under Rule 4.4, when a lawyer represents a client, the lawyer must "not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person." NEV. R. PROF'L. CON. 4.4.

Disqualification is a drastic measure. *United States v. Walker River Irrig. Dist.*, 3:73–cv–127– ECR–RAM, 2006 WL 618823, at *3 (D. Nev. Mar. 10, 2006) (citing *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721–22 (7th Cir. 1982); *Miller v. Alagna*, 138 F. Supp. 2d 1252, 1258–59 (C.D.Cal.2000)). "A court may not find a conflict of interest out of mere conjecture." *United States v. Linton*, 502 F. Supp. 871, 876–77 (D. Nev. 1980). Courts are directed to hesitate before disqualifying attorneys because it deprives parties from being able to choose their own representation and is often used as a tactic to create delay or harassment. *Id*. Motions to disqualify are therefore subject to strict

judicial scrutiny. *Optyl Eyewear Fashion Intern. Corp. v. Style Co., Ltd*., 760 F.2d 1045, 1050 (9th Cir. 1985). The moving party bears the burden of presenting sufficient facts justifying disqualification. *Walker River*, 2006 WL 618823, at *3 (citations omitted).

The second legal standard relates to contempt. It is well established that "courts have inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370 (1966). A finding of contempt is appropriate "[i]f a person disobeys a specific and definite court order." *In re Crystal Palace Gambling Hall, Inc*., 817 F.2d 1361, 1365 (9th Cir. 1987) (citing *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1146 (9th Cir. 1983). However, a party can "escape contempt by demonstrating that he is unable to comply" with a district court's order. *Crystal Palace*, 817 F.2d at 1365 (citing *Donovan v. Mazzola*, 716 F.2d 1226, 1240 (9th Cir. 1983)).

A party may be found in civil contempt for disobedience of a specific and definite court order if it fails to take all reasonable steps within its power to comply. *In Re Dual–Deck Video Cassette AntiTrust Litig*., 10 F.3d 693, 695 (9th Cir. 1993). The contempt "need not be willful," and there is no good faith exception to the requirement to obey a court order. *Id*. However, a party should not be held in contempt if its action appears to be based on a good faith and reasonable interpretation of the court's order. *Id*. Substantial compliance with a court order is a defense to civil contempt. *Id*. A few technical violations do not vitiate substantial compliance if a party has made reasonable efforts to comply. *Id*. Substantial compliance with a court order purges civil contempt. *NLRB v. A–Plus Roofing, Inc*., 39 F.3d 1410, 1418 (9th Cir. 1994) (citing *Gen. Signal Corp. v. Donallco, Inc*., 787 F.2d 1376, 1379 (9th Cir. 1986).

/// /// ///

/// /// ///

/// /// ///

**DISCUSSION**

Defendants' motions present two questions: (1) whether Plaintiffs violated the Private Securities Litigation Reform Act's automatic discovery stay and (2) whether Plaintiffs' representation of Samuel Haddad created an ethical conflict of interest. Before addressing these questions, the court begins by reviewing the scope of the discovery stay under the Private Securities Litigation Reform Act.

**I.     Discovery Stays under the Private Securities Litigation Reform Act**

The Private Securities Litigation Reform Act, 15 U.S.C. § 77a, *et seq.*, imposes an automatic discovery stay "during the pendency of any motion to dismiss" to "ward off allegations of 'fraud by hindsight" and permit discovery only after "the court has sustained the legal sufficiency of the complaint." 15 U.S.C. § 78u–4(b)(3)(B); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 320 (2007); *SG Gowen Sec. v. U.S. Dist. Court for the N. Dist. Of Cal.*, 189 F.3d 909, 913 (9th Cir. 1999) (citing S. Rep. No. 104–98 at 14 (1995).

The provision staying discovery reads:

> In any private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party.

15 U.S.C. § 78u–4(b)(3)(B). In *Medhekar v. U.S. Dist. Court for the N. Dist. of Cal.*, 99 F.3d 325, 328 (9th Cir. 1996), the Ninth Circuit concluded that the term "other proceedings" "was intended to include litigation activity relating to discovery" and does not require the plaintiffs to stay "all litigation activity in general."

The purpose of the stay is to shield corporations from baseless "strike suits."[2] *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 191 (1st Cir. 1999); *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1095

---

[2] A "strike suit" is a shareholder derivative action "based on no valid claim, brought either for nuisance value or as leverage to obtain a favorable or inflated settlement." BLACK'S LAW DICTIONARY (9th ed. 2009).

(10th Cir. 2003). Congress was concerned, for example, that "the threat that time of key employees will be spent responding to discovery requests, including providing deposition testimony, often forces coercive settlements. . . ." *In re Flir Sys., Inc. Sec. Litig.*, CIV. 00-360-HA, Fed. Sec. L. Rep. P 91, 308, 2000 WL 33201904, at *2 (D. Or. Dec. 13, 2000) (citing 1995 U.S.C.C.A.N. Sess. at 733); *see also Medhekar*, 99 F.3d at 328 (citing 141 Cong. Rec. at H13699) (stating that the intent of the Act is to minimize unnecessary costs of production of documents and to prevent abusive filings in which facts are sought after initiation of litigation).

Mindful of these goals, courts have construed the Act's discovery stay as "a shield intended to protect security-fraud defendants from costly discovery requirements" rather than "a sword with which defendants can destroy the plaintiffs' ability to obtain information from third parties who are otherwise willing to disclose it." *In re Flir Sys.*, 2000 WL 33201904, at *3; *In re JDS Uniphase Corp. Sec. Litig.*, 238 F. Supp. 2d 1127, 1134 (N.D. Cal. 2002).

For instance, in *JDS Uniphase*, the court held that the Act's discovery stay is not violated where a third-party voluntarily interviews with the plaintiff on matters related to the lawsuit. *JDS Uniphase*, 238 F. Supp. 2d at 1133. The same conclusion was reached in *In re Tyco International Ltd. Securities Litigation*. *Id*. (citing *In re Tyco Int'l Ltd. Sec. Litig.*, 2001 U.S. Dist. Lexis 819 (D. N.H. 2001) ("Neither logic, tradition, the constitution, nor the PSLRA prohibit interviewing prospective witnesses.")). Similarly, in *In re Flir Systems* the court held that the Act's discovery stay is not violated where the plaintiff subpoenas a third party to obtain information related to the lawsuit because "the discovery would not impose any significant burden on the defendant." *In re Flir Sys.*, 2000 WL 33201904, at *2. Together, these cases stand for the proposition that the Act's discovery stay does not prohibit plaintiffs from investigating matters related to the lawsuit, voluntarily collaborating with third-

parties on matters related to the lawsuit or even propounding discovery on third parties in connection with the lawsuit.

## II.     <u>Whether Plaintiffs Violated the Discovery Stay</u>

Defendants argue that Plaintiffs and Plaintiff's Counsel should be held in contempt, and that Plaintiff's Counsel should be disqualified, because they violated the discovery stay by (1) subpoenaing the Commission on October 10, 2013, (2) allegedly acquiring documents related to Defendant Sterling Escrow's activities in 2011, (3) collaborating with the Commission to formulate questions for Fujinaga's deposition, and (4) obtaining information when representing non-party Samuel Haddad during a deposition in a related, but separate, action. The court disagrees.

Each of the events Defendants object to involve either a third-party who is voluntarily collaborating with Plaintiffs or a mechanism for obtaining information that does not constitute discovery under the Federal Rules of Civil Procedure. This conduct is merely investigatory and is not prohibited by this court's orders or the Private Securities Litigation Reform Act. *See* 15 U.S.C. § 78u–4(b)(3)(B); *JDS Uniphase*, 238 F. Supp. 2d at 1133; *In re Flir Sys.*, 2000 WL 33201904, at *3. Therefore, Defendants' motions fail as a matter of law. Nonetheless, the court addresses each of Defendants' arguments below.

Defendants first object to Plaintiffs' October 10, 2013 subpoena, which requested documents from the U.S. Securities and Exchange Commission. This discovery request was appropriate for two reasons. First, it was permitted by Judge McKibben's September 13, 2013 order, which granted Plaintiffs' motion for expedited discovery. (*See* Prelim. Injunc. (#96) at 13:26–14:13) (stating that "discovery shall include **but not be limited to**. . .") (emphasis added).[3] Second, it is permitted under the

---

[3] Discovery did not become limited until this court entered a minute order on October 21, 2013. (*See* Mins. Proceedings #109).

Act because the discovery is directed towards a voluntarily collaborating third-party and does "not impose any significant burden on the defendant." *In re Flir Sys.*, 2000 WL 33201904, at *2.

Defendants argue that the subpoena violated the court's orders and the Act's discovery stay because (1) the Commission stated the court's orders "appear[] to apply to the SEC's document production" and (2) Plaintiffs used the documents in presentations, meetings, and depositions "likely to try to muster up" a cognizable securities fraud complaint. (*See* Def.'s Mot. (#148) at 7:10–27). These arguments are unpersuasive. While the Commission's legal opinion is valued, it is not dispositive. The Commission's October 25, 2013 email contains no citations to authority, no legal argument, and appears to be written out of a good faith effort to ensure compliance with the court's orders. Defendants' other argument is equally unpersuasive. Using legally obtained documents in presentations, meetings, and depositions is not discovery; and there is no indication that Plaintiffs' use of these documents in these settings was otherwise inappropriate.

Second, Defendants move to sanction Plaintiffs' Counsel because Defendants "believe[] that Plaintiffs' Counsel, upon information and belief, also obtained records from another party to this matter, Sterling Escrow, for a time period encompassing several years prior to this Court's limitation on discovery of 2011." (Def.'s Mot. to Disqual. (#148) at 8:1–5); (Def.'s Contempt Mem. (#151) at 5:23–27). This argument is speculative and fails to satisfy Defendants' burden as a matter of law. *See, e.g.*, *Walker River*, 2006 WL 618823, at *3 (citations omitted). Defendants have not proffered a single fact or unlawfully obtained document to support this allegation.

Defendants' remaining arguments—(*viz*., that Plaintiffs collaborated with the Commission to formulate questions for Fujinaga's deposition and represented non-party Samuel Haddad during a deposition)—fail for the reasons stated above. Neither the PSLRA nor this court's orders prohibit Plaintiffs from investigating matters related to the lawsuit or voluntarily collaborating with third-parties.

11

*See JDS Uniphase*, 238 F. Supp. 2d at 1133; *In re Flir Sys.*, 2000 WL 33201904, at \*3. In fact, the PSLRA "encourages plaintiffs to do more investigation before filing a complaint, not less." *JDS Uniphase*, 238 F. Supp. 2d at 1134.

### III. <u>Whether Plaintiffs' Representation of Samuel Haddad Created a Conflict of Interest</u>

Finally, the court addresses Defendants' argument that Plaintiffs' Counsel breached her ethical duties. (*See generally* Def.'s Mot. to Disqualify #148). As a preliminary matter, the court notes that Defendants' argument lacks clarity. The Honorable Carl W. Hoffman, U.S. Magistrate Judge, observed the same problem with Defendants' ethical argument when it was raised in the Commission's parallel action. (*See* Mins. Proceedings (#159-1) at 3–16). In that action, as here, Defendants proffered various arguments that contend that Plaintiffs' Counsel created a conflict of interest by representing Samuel Haddad and, as a result, somehow caused confidential attorney-client communications and confidential documents to be disclosed. This court, like Judge Hoffman, disagrees.

Defendants have not made a prima facie showing that an attorney-client relationship exists or that any confidential communications or documents exist. Defendants appear to argue that an attorney-client relationship exists, and confidential information was disclosed, because Haddad—who is a non-party and a former vice president of Defendant MRI International—once spoke with MRI International's in-house counsel, Paul Lal. (*See* Doc. (#148) at 9:1). This is insufficient.

A corporation's in-house counsel is the corporation's attorney, not the employee's attorney. *See Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). Even when in-house counsel represents one of the corporation's employees, not all communications with between the attorney and the employee are privileged. *See LightGuard Sys., Inc. v. Spot Devices, Inc.*, 281 F.R.D. 593, 597 (D. Nev. 2012). The attorney-client privilege only protects communications between attorneys and clients that are made for the purpose of giving or receiving legal advice. *Id.* (citing *Upjohn*, 449 U.S. at 389). Here, Defendants

contend that Haddad's information is protected simply because he spoke with Lal, MRI International's in-house counsel. This argument fails as a matter of law. *Id*.

Defendants' argument is also unavailing if the court assumes that the communications were made by Haddad on behalf of the corporation. Again, there is no basis for finding that (1) the communications were confidential, (2) the communications were made for the purpose of securing legal advice, and (3) the privilege has not been waived. *LightGuard Sys., Inc*, 281 F.R.D. at 597. Defendants have not even identified a single communication or date on which the communication was allegedly made or inappropriately disclosed.

Defendants also assert that Plaintiffs' Counsel breached its ethical duties because it disclosed privileged information that Haddad obtained from Fujinaga. This argument is boilerplate and fails for the same reasons: Defendants failed to identify any communications, the subject matter of the communications, or the date on which the alleged communications were made. *Upjohn*, 449 U.S. at 389.

The court also concludes that Plaintiffs' Counsel's representation of Haddad presents no conflict of interest. Defendants appear to argue that a conflict of interest exists because Plaintiffs' Counsel's interests conflict with Defendants' interests. (*See* Mins. Proceedings (#159-1) at 5:9–15). This is not an ethical conflict of interest. Haddad is not a named defendant in any action. Rather, Haddad is cooperating and collaborating with the Plaintiffs in both actions.

Defendants' also argue that Plaintiffs' Counsel's representation of Haddad has caused confidential information to be disclosed. This argument is boilerplate and speculative. Defendants failed to identify any trade secrets or protected information that Plaintiffs' Counsel's representation of Haddad somehow caused to be disclosed.

ACCORDINGLY, and for good cause shown,

IT IS ORDERED that Defendants' motion to disqualify (#148) is DENIED.

IT IS FURTHER ORDERED that Defendants' motion for an order to show cause (#150) is DENIED.

IT IS FURTHER ORDERED that the court's July 18, 2014 hearing is VACATED.

IT IS FURTHER ORDERED that Defendants' motion to continue the July 18, 2014 hearing (#167) is DENIED AS MOOT.

IT IS SO ORDERED.

DATED this 7th day of July, 2014.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE