1

2

3

4

5                          **UNITED STATES DISTRICT COURT**

6                              **DISTRICT OF NEVADA**

7

8    SHIGE TAKIGUCHI, FUMI NONAKA,    )        2:13-cv-01183-HDM-VCF
     MITSUAKI TAKITA, KAORUKO KOIZUMI, )
9    TATSURO SAKAI, SHIZUKO ISHIMORI, )
     YOKO HATANO, YUKO NAKAMURA,      )        ORDER
10   HIDEHITO MIURA, YOSHIKO TAZAKI,  )
     MASAAKI MORIYA, HATSUNE HATANO,  )
11   SATORU MORIYA, HIDENAO TAKAMA,   )
     SHIGERU KURISU, SAKA ONO,        )
12   KAZUHIRO MATSUMOTO, KAYA         )
     HATANAKA, HIROKA YAMAJIRI,       )
13   KIYOHARU YAMAMOTO, JUNKO         )
     YAMAMOTO, KOICHI INOUE, AKIKO    )
14   NARUSE, TOSHIMASA NOMURA, and    )
     RITSU YURIKUSA, Individually and )
15   on Behalf of All Others Similarly)
     Situated,                        )
16                                    )
                   Plaintiffs,        )
17                                    )
     vs.                              )
18                                    )
     MRI INTERNATIONAL, INC., EDWIN J.)
19   FUJINAGA, JUNZO SUZUKI, PAUL     )
     MUSASHI SUZUKI, LVT, INC., dba   )
20   STERLING ESCROW, and DOES 1-500, )
                                      )
21                 Defendants.        )
     _____)
22

23        This action, brought by twenty-five named plaintiffs, involves

24   claims on behalf of a putative class of 8,700 individuals who

25   invested with MRI International ("MRI").  The plaintiffs allege

26   that MRI and its executives perpetrated a Ponzi scheme that

27   ultimately collapsed, depriving the investors of repayment on their

28   investments.

                                        1

Before the court is a renewed motion to dismiss or, in the alternative, motion to stay filed by defendants Junzo Suzuki and Paul Musashi Suzuki (collectively "the Suzukis") (#276).[1]  The motion incorporates by reference the Suzukis' motion to dismiss filed on January 8, 2015 (#209), which the court denied without prejudice at a hearing on June 4, 2015.  The court granted in limited part the alternative motion to stay at a hearing on April 22, 2015.  The alternative motion to stay has apparently also been renewed.  Plaintiffs have opposed the motions (#224, #284), and the Suzukis have replied (#229, #287).  On October 6, 2015, the Suzukis filed a supplement to their motion (#305), to which plaintiffs have responded (#307).[2]

This action is one of several cases involving the MRI fallout that are pending or resolved in both the United States and Japan. Plaintiffs filed their original complaint on July 5, 2013.  Weeks earlier, nine MRI investors had filed a breach of contract action against MRI in Japan, and five investors had filed petitions to attach the Suzukis' property, also in Japan.  Within a year of plaintiffs' complaint, the U.S. Securities and Exchange Commission ("S.E.C.") filed a complaint against Fujinaga, MRI, and others in the District of Nevada, and six MRI investors filed a fraud suit against the Suzukis, two MRI investors filed an unjust enrichment suit against MRI, and several more petitions to attach the Suzukis

---

[1] Defendant LVT, Inc. ("Sterling Escrow") joins the renewed motion to dismiss (#279).  Defendants MRI and Edwin Fujinaga ("Fujinaga") joined the original motion to dismiss (#212).

[2] Plaintiffs object to the supplement as being filed without leave of court.  Because the supplement presents recent developments relevant to the court's decision, the court will consider the supplement.

assets were filed – all in Japan. In or around April 2015, another action was filed in Japan against the Suzukis.[3] Most recently, the grand jury in the District of Nevada returned a criminal indictment against Fujinaga and the Suzukis.

Judgment has been entered in the S.E.C. action. Although the trial court had granted a motion to dismiss the first MRI action based on the forum selection clause in the parties' contract, that decision was reversed by Tokyo High Court and the Japanese Supreme Court has recently declined review. The other suits also appear to be proceeding.

Defendants move for dismissal of this case on the grounds of forum non conveniens. The Suzukis argue that they and most of the plaintiffs, potential witnesses, and documentary evidence are located in Japan. They also argue that Nevada's nexus to this case insofar as it concerns the Suzukis is minimal or nonexistent; while MRI is a Nevada corporation, the Suzukis assert they were not involved in MRI's general operations and instead were involved primarily in investor relations and marketing in Japan. The Suzukis also argue that despite filing their case in Nevada, only six of the twenty-five plaintiffs have agreed to be deposed in the state, and those six did not even attend their depositions that had been scheduled in June on at least fourteen-days' notice each. They argue that all of this demonstrates that Japan is a much more convenient forum. In the alternative, defendants request a stay of this action in light of the actions pending in Japan and the United

---

[3] The parties made this representation to the court at the April 22, 2015, hearing. Beyond the fact this latest suit was filed to freeze the Suzukis' Japanese assets, no other information has been presented to the court. (*See* Doc. #250 (Apr. 22, 2015, Hearing Tr. 14-17).

States, which they assert are parallel or substantially similar proceedings.

Plaintiffs oppose both the motion to dismiss and the motion to stay, arguing that their choice of forum is entitled to deference and that the nexus of this case to Nevada is sufficient to keep it before this court. Plaintiffs argue that, contrary to the Suzukis' representation, many witnesses and much of the documentary evidence is located in Nevada and the Suzukis' connection to Nevada is not minimal: Junzo Suzuki owns two condos in Las Vegas, Paul Musashi Suzuki maintains a bank account and a residence in Nevada, and both traveled to Nevada nearly 100 times over the years to conduct seminars, tours, and junkets as part of their work with MRI.  In addition, they argue, the Suzukis were paid commissions that came directly from money the plaintiffs had deposited with MRI in Nevada bank accounts.  Moreover, the nexus to Nevada is overall strong, as the investments that are the subject of this case were marketed – by the Suzukis – as being backed by Nevada law, the MRI investment contracts signed by the plaintiffs contained a Nevada forum selection clause, and the plaintiffs' investment monies were wired to a bank account in Nevada and managed by a Nevada escrow company. Plaintiffs further deny that they have refused to be deposed in the United States, noting that the six plaintiffs could have attended depositions in the United States during the week of July 20, 2015, that plaintiffs had been in the process of arranging for other named plaintiffs to be deposed in the United States, and that it was the Suzukis who decided not to go forward with the depositions in July, presumably in order to create grounds for filing the renewed motion to dismiss.

# I. **Forum Non Conveniens**

In deciding a motion to dismiss on forum non conveniens grounds, the court accepts as true the facts alleged by plaintiffs in their complaint. *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1222 (9th Cir. 2011). "The mere fact that a case involves conduct or plaintiffs from overseas is not enough for dismissal." *Carijano*, 643 F.3d at 1224.

The doctrine of forum non conveniens is an "exceptional tool to be employed sparingly," and not a "doctrine that compels plaintiffs to choose the optimal forum for their claim." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002).

> Historically, the doctrine's purpose is to root out cases in which the "open door" of broad jurisdiction and venue laws "may admit those who seek not simply justice but perhaps justice blended with some harassment," and particularly cases in which a plaintiff resorts "to a strategy of forcing the trial at a most inconvenient place for an adversary."

*Carijano*, 643 F.3d at 1224. A defendant seeking forum non conveniens dismissal must make a clear showing of facts that establish the oppression and vexation of the defendant is out of proportion to plaintiff's convenience. *Boston Telecomms. Group, Inc. v. Wood*, 588 F.3d 1201, 1206 (9th Cir. 2009).

A case may be dismissed under the doctrine of forum non conveniens if: (1) the moving party shows the existence of an adequate alternative forum; and (2) the balance of private and public interests favor dismissal. *Loya v. Starwood Hotels & Resorts*, 583 F.3d 656, 664 (9th Cir. 2009).

A. Adequate Alternative Forum

Generally, an adequate alternative forum exists if the defendant is amenable to service in that forum and plaintiff can

5

obtain "some remedy" for the wrong at issue. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n. 22 (1981); *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1178 (9th Cir. 2006). A forum is typically inadequate only where the remedy is "so clearly inadequate or unsatisfactory, that it is no remedy at all." *Tuazon*, 433 F.3d at 1178. "The defendant bears the burden of proving the existence of an adequate alternative forum." *Cheng v. Boeing Co.*, 708 F.2d 1406, 1411 (9th Cir. 1983).

The Suzukis argue that Japan is an adequate forum because (1) they are amenable to service there and (2) there is an adequate remedy, as evidenced by the pending lawsuits that Japanese courts have allowed to proceed. Plaintiffs disagree that Japan is an adequate alternative forum. First, they argue the decisions allowing the cases to proceed in Japan are not final, so they may at some point be dismissed on grounds of improper venue. Second, they assert that Japanese courts, lacking a class action mechanism, would be overwhelmed by the individual cases of more than 8,000 investors. Third, they assert that Japanese courts would have difficulty applying U.S. securities laws. Finally, they argue that under Japanese law, they would not be entitled to certain relief they could obtain in the United States.

The possibility that some of plaintiff's claims may not be available in the alternate forum is not dispositive. *Lockman Found. v. Evangelical Alliance Mission*, 930 F.2d 764, 768-69 (9th Cir. 1991). Thus, Japan is not an inadequate forum merely because it does not provide all avenues and mechanisms for relief available in the United States. *See id.* at 769. As the Suzukis and MRI are clearly amenable to process in Japan, and there are remedies available to plaintiffs,

6

Japan is arguably an adequate alternative forum as to the Suzukis and MRI. Although the venue arguments raised in various of the Japanese cases may not be completely resolved, the Japanese Supreme Court's recent refusal to review the lower court's decision allowing the first MRI to proceed in Japan suggests that it is likely all cases filed in Japan will remain there.

Even so, it has not been demonstrated that either Fujinaga or Sterling Escrow, the other two defendants in this case, are amenable to service of process in Japan. Japan is therefore not an adequate alternative forum as to those defendants.

B. Private and Public Interests

"Ordinarily, a plaintiff's choice of forum will not be disturbed unless the private interest and public interest factors strongly favor trial in a foreign country." *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1145 (9th Cir. 2001). A plaintiff need not select the optimal forum, but "only a forum that is not so oppressive and vexatious to the defendant 'as to be out of proportion to plaintiff's convenience.'" *Tuazon*, 433 F.3d at 1180.

The plaintiffs' selection of forum is due some deference. While a plaintiff's selection of a forum is generally due heavy deference, deference is reduced for both foreign plaintiffs and U.S. residents who sue in other than their home forums. *Lueck*, 236 F.3d at 1145; *Gemini Capital Grp., Inc. v. Yap Fishing Corp.*, 150 F.3d 1088, 1091 (9th Cir. 1998); *Mujica v. Occidental Petroleum Corp.*, 381 F. Supp. 2d 1134, 1141 (C.D. Cal. 2005); *see also Boston Telecomms.*, 588 F.3d at 1207. "[L]ess deference," however, "is not the same thing as no deference." *Lueck*, 236 F.3d at 1143. The plaintiffs concede that, as residents of Japan (and one resident of Canada/Texas), their

7

selection of a U.S. forum is not entitled to heavy deference, though it is entitled to some deference.

### i. Private Factors

Private factors include: (1) the residence of parties and witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) "all other practical problems that make trial of the case easy, expeditious and inexpensive." *Lueck*, 236 F.3d at 1145.

### a. *Residence of parties and witnesses*

The Suzukis claim to be residents of Japan, however they do also own property in Hawaii. Named plaintiffs are primarily Japanese residents, though at least one resides part-time in Texas. MRI and Sterling Escrow are Nevada corporations, and Fujinaga resides in Nevada. The Suzukis argue that there are likely witnesses in Japan who could testify about MRI's marketing materials, the Suzukis' roles in the Tokyo MRI office, and the Suzukis' statements during seminars. The plaintiffs argue that there are many witnesses in Nevada, lay and expert, including those associated with MRI's operations and the operations of other entities with which MRI did business, as well as those familiar with the ways in which MRI purported to run its business.

While the potential class of plaintiffs, most of whom reside in Japan, is in the thousands, there are just 25 named plaintiffs. Most of those named plaintiffs, the Suzukis, and an unidentified number of other witnesses reside in Japan. One named plaintiff, Fujinaga, Munoz, and an unidentified number of other witnesses reside in the

1   United States.

2       While more witnesses and litigants may reside in Japan than in
3   the United States, the court is not persuaded by the current evidence
4   that such an imbalance is significant.  Accordingly, this factor does
5   not weigh in favor of dismissal at this stage of the proceeding.

6                   b. *Convenience to litigants and witnesses*

7       In addition to Japan being the location of all relevant parties,
8   witnesses and evidence, the Suzukis argue, the United States is an
9   especially inconvenient forum because plaintiffs are refusing to be
10  deposed here.  In addition, the Suzukis' ability to travel to the
11  United States for their own depositions is hindered by the asset
12  freeze currently in place.

13      Plaintiffs argue that because Japan has no class action
14  mechanism, trying these cases in Japan would be much more inconvenient
15  than trial in the United States because there would be thousands of
16  separate lawsuits each with their own filing fees and bond
17  requirements.  As noted, plaintiffs also deny that they have refused
18  to be deposed in the United States, pointing to the six named
19  plaintiffs that have already agreed to be deposed here.  Finally,
20  plaintiffs assert that the Suzukis' asset freeze argument is not
21  supported by any evidence and is impossible to evaluate as discovery
22  into the Suzukis' assets has been lacking.

23      As noted, a large number of litigants and witnesses are in each
24  forum.  Thus, wherever this case is tried, it will be inconvenient for
25  some witnesses.  The plaintiffs' inability to timely attend the
26  depositions scheduled by the Suzukis does demonstrate one of the major
27  inconveniences of litigating in this forum.  However, although the
28  plaintiffs have not yet assured opposing counsel that all named

plaintiffs will be made available for depositions in the United
States, the Suzukis have failed to provide sufficient evidence to
convince the court that the plaintiffs will refuse to be deposed in
the United States.  It appears to the court that several plaintiffs
had agreed to attend depositions in the United States and that the
reason those depositions was because the Suzukis did not want them to.
Further, there are substantial inconveniences associated with
litigating in Japan.  A lack of a class action mechanism means
litigation could increase exponentially if investors were required to
file in Japan.  In addition, the court is not persuaded by the
Suzukis' argument that they are hampered in their ability to the
travel to the United States due to the asset freeze.  The freeze
carves out an exception for litigation fees and costs.  Accordingly,
the court concludes the convenience to parties and witnesses of
litigating in Japan versus litigating in the United States does not
weigh in favor of a dismissal.

c. <em>Access to physical evidence/proof</em>

The Suzukis argue that much of the physical evidence is in Japan
because that is where most of the events took place.  This evidence
would include documents seized and records made during the
investigations of Japan's Financial Services Agency and SESC.
Plaintiffs disagree that a significant quantity of the evidence in is
in Japan.  They argue that the documents seized by the SESC are not
available to private litigants at any rate and therefore do not weigh
in favor of a Japanese forum.  And they assert that relevant banking
and accounting records showing MRI investment figures and losses are
maintained by MRI in Las Vegas.

Documentary evidence in this case appears to exist in both Japan

10

and the United States.  The Suzukis have not demonstrated that based on the location of documentary evidence litigation would necessarily be more convenient in Japan.  Accordingly, this factor does not weigh in favor of dismissal.

d. <em>Compelling unwilling witnesses to testify</em>

The Suzukis argue that because the plaintiffs themselves are unwilling to testify in Nevada, it is likely that other relevant witnesses in Japan will resist testifying in Nevada.  Plaintiffs assert that, conversely, defendants do not explain how any unwilling witnesses located in the United States, such as Fujinaga, Sterling Escrow's Peter Munoz and other high-ranking employees of MRI, could be compelled to testify in Japan.  Further, plaintiffs argue that they have agreed to testify in this case.

The focus for this factor does "not rest on the number of witnesses in each locale but rather the court should evaluate the materiality and importance of the anticipated witnesses' testimony and then determine their accessibility and convenience to the forum." *Carijano*, 643 F.3d at 1231 (internal punctuation omitted).  The initial question is whether it has been shown that witnesses would be unwilling to testify, not whether they are outside the court's compulsory process.  *Id.*

The Suzukis have identified no specific witnesses who would be unwilling to testify, and thus the court is unable to determine the materiality of their probable testimony.  While the Suzukis may wish to call certain witnesses based in Japan, including MRI employees located there, they have not established that any of those witnesses would be unwilling to testify or that their testimony would be material.  Further, it appears that the most important witnesses who

11

might be unwilling to testify in a foreign forum are in the United States: Fujinaga and Munoz. Accordingly, this factor does not weigh in favor of dismissal.

### e. *Cost of bringing witnesses to trial*

The Suzukis argue that because most of the potential witnesses are located in Japan, the cost of bringing this matter to trial in the United States would be high. Plaintiffs assert that trial in Japan would not save money because abandoning this case would involve wasting all the resources already expended on top of the substantial costs in arranging for U.S. witnesses to testify in Japan.

As already discussed, there are witnesses residing in both Japan and Nevada. The Suzukis, however, have not substantiated their assertion that "most" are in Japan, nor have they discussed the cost of producing these Japanese witnesses in the United States. Accordingly, the court finds this factor does not weigh in favor of dismissal.

### f. *Enforceability of Judgment*

The Suzukis argue that it would be easier to enforce a Japanese judgment in Nevada than a United States class action judgment in Japan. The parties appear to agree that it is unknown whether a United States class action judgment would be enforceable in Japan. Nevada, on the other hand, has adopted the Uniform Recognition of Foreign-Country Money Judgments Act, *see* Nev. Rev. Stat. §§ 17.700, *et seq.,* and as such it is possible to enforce a foreign money judgment in the state. Thus, this factor weighs in favor of dismissal.

### g. *Other Factors*

The parties raise several other factors for the court to consider.

First, the Suzukis argue that should this case remain here, much of the evidence and testimony would need to be translated. That includes advertisements, explanations, pre-agreement disclosure documents, contract applications, and financial products trading contracts. In addition, plaintiffs assert that the Suzukis should pay for the cost of translating their depositions into English.

Plaintiffs argue that translation costs would be even greater if this case were tried in Japan because most of the marketing materials in Japanese have already been translated into English and there is an abundance of English materials and testimony that would have to be translated into Japanese, including MRI's accounting records. However, they do not address the Suzukis' apparent argument that their insistence that they pay for the plaintiffs' depositions is a cost that would not be incurred were this case tried in Japan.

Clearly, there is a significant amount of documentary evidence and witness testimony that will need to be translated wherever this case is tried. It is not at all clear that the documents requiring translation from Japanese to English exceed those requiring translation from English to Japanese. However, given that the Suzukis and nearly all plaintiffs speak Japanese, it does appear likely that there will be significantly more costs in translating depositions and trial testimony should the case remain here than if the cases were tried in Japan, particularly to the Suzukis if the plaintiffs are correct that they must bear that cost. Accordingly, this factor weighs in favor of dismissal.

Second, plaintiffs assert that a forum selection clause in their investment contracts, which selects Nevada as the exclusive forum for disputes, weighs against dismissal. Although the Suzukis argue they

are not bound by the clause because they were not parties to the contract, plaintiffs assert that under Ninth Circuit law, the Suzukis were sufficiently related to the contractual relationship between plaintiffs and MRI that the clause should apply to them. *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988). The Suzukis dispute that they are closely related enough for the contracts to bind them and argue that even if they are bound by the contracts, it would be unfair and unreasonable to enforce the forum selection clause against them because they cannot enforce it in Japan: a Japanese court has declared the clause void as against public policy. Even assuming the clause is unenforceable against the Suzukis, such a finding would not favor a dismissal.

Next, the plaintiffs, citing *Watson v. Merrell Dow Pharm., Inc.*, 769 F.2d 354, 357 (6th Cir. 1985), argue that in order for a dismissal under forum non conveniens to be appropriate, all defendants must be amenable to process in the foreign jurisdiction. *Watson* actually stands for the proposition that dismissal of an individual defendant who is amenable to process in the alternative forum is proper even where the other defendants are not. Thus, under *Watson*, it could be proper to dismiss the Suzukis and MRI, who are all clearly subject to jurisdiction in Japan, but it would not be proper to dismiss Sterling Escrow and Fujinaga, over whom it is unclear whether Japan has jurisdiction. The fact that this entire case could not be dismissed, however, would mean that it would have to be litigated in two fora at the same time. The court considers this to be a substantial waste of judicial resources and an impairment on judicial efficiency, and therefore concludes that this consideration weighs against dismissal.

14

ii. Public Factors

The factors to consider in weighing the public interest are: (1) the local interest of the lawsuit; (2) the court's familiarity with governing law; (3) the burden on the local courts and juries; (4) congestion in the court; and (5) the costs of resolving a dispute unrelated to this forum.  *Lueck*, 236 F.3d at 1147.

a. *Local Interest*

The Suzukis argue that Nevada has a weaker interest in this suit because the S.E.C. has obtained relief against the two primary defendants who tied this case to Nevada – MRI and Fujinaga – and that the relief has rendered those defendants judgment proof.  The Suzukis argue that without MRI and Fujinaga, the interest in this case is heavily concentrated in Japan: the remaining parties are primarily Japanese residents or have strong ties to Japan, and any misrepresentations by the Suzukis took place in Japan.  In fact, they argue, the Japanese courts' refusal to dismiss the actions pending in Japan suggests they believe Japan has a stronger interest in the case than the United States.  Plaintiffs argue that Nevada's interest in this case is strong because, regardless of the judgment against MRI and Fujinaga, a massive fraud was perpetrated within Nevada by the Suzukis.

Nevada's interest in this case is not reduced either by the S.E.C. judgment or by the argument that Japan may have a stronger interest.  Nevada has a strong interest in preventing and redressing any fraud committed within its boundaries, and plaintiffs allege that much of the fraud in this case occurred in Nevada.  Accordingly, this factor weighs against dismissal.

15

1          b. *Choice of Law*

2          A court's unfamiliarity with and need to apply foreign law

3    strongly favors dismissal. *Loya v. Starwood Hotels & Resorts*

4    *Worldwide, Inc.*, 583 F.3d 656, 665 (9th Cir. 2009). While this is a

5    significant factor, it is not alone sufficient to justify dismissal

6    when a balancing of factors shows the chosen forum is appropriate.

7    *Piper Aircraft*, 454 U.S. at 260 n.29. The Suzukis argue that the

8    choice-of-law provision in the Financial Trading Contract would not

9    apply to them because they are not parties to the contract, and that

10   under Nevada's choice-of-law rules, the common law of Japan would

11   apply to plaintiffs' common law causes of action. Plaintiffs assume

12   without discussion that Nevada common law and U.S. securities law

13   would apply in this case.

14         The court reserves until another day the choice of law issue and

15   concludes that it does not weigh in favor of dismissal at this time.

16          c. *Juries*

17         The Suzukis argue that the burden on the juries in Nevada is not

18   justified because the local interest in the controversy is weaker than

19   the Japanese interest. For the reasons already discussed, Nevada has

20   a sufficiently strong interest in this case to justify the court's

21   time and resources. Accordingly, the burden on a Nevada jury does not

22   favor dismissal of this case.

23          d. *Congestion*

24         The Suzukis argue that this court's docket is very full, and that

25   the time from filing to trial is on average 40 months. Plaintiffs

26   assert that requiring their claims to be tried in Japanese courts

27   would lead to an even greater degree of congestion because 8,700

28   individual cases would increase the caseload there by 25 percent. The

16

Suzukis respond that plaintiffs have offered no proof that all 8,700 plaintiffs would file suit in Japan if this case were dismissed.

Given the plaintiffs' ability to consolidate their claims in the United States, this action will cause less congestion in this court than the separate actions of thousands of MRI investors would congest the Japanese courts.   Accordingly, this factor weighs against dismissal.

> e. *Costs of resolving suit unrelated to the forum*

The Suzukis argue that because Nevada's interest in the dispute is weak, and it would cost a substantial amount to resolve the matter here, the case should be dismissed. As already discussed, this action is not unrelated to Nevada, and Nevada's interest in this action is quite strong. Accordingly, the costs of resolving suit in this forum are not out of proportion to the forum's interest in this case. This factor does not favor dismissal.

In weighing the private and public factors, and considering the deference owed to the plaintiffs' choice of forum, the court concludes that the evidence currently before the court does not favor dismissal on forum non conveniens grounds as the defendants have not carried their burden of showing that trial in this forum would be so vexatious and/or oppressive as to be out of proportion to plaintiffs' convenience.   Accordingly, the motion to dismiss on forum non conveniens grounds is **DENIED**.[4]

---

[4]Although plaintiffs have argued in their opposition that the Suzukis should be judicially estopped from making many of the factual assertions and legal arguments they make in their motion, the court need not decide this issue at this time.   Even accepting the Suzukis' version of the facts asserted here, defendants have failed to satisfy their burden of showing that dismissal is warranted.

1   **II. Alternative Motion to Stay**

2         The Suzukis argue that in the alternative, the court should stay

3   this action pending resolution of the Japanese cases.   The Suzukis

4   base this request both on the court's inherent powers as well as the

5   "international abstention doctrine."

6         The court may stay an action pending resolution of independent

7   proceedings that bear upon the case if it is efficient for its docket

8   and will "provide for a just determination of the cases pending before

9   it." *Leyva v. Certified Grocers of Calif., Ltd.*, 593 F.2d 857, 863-64

10  (9th Cir. 1979).   Relatedly, under the international abstention

11  doctrine, the court may stay or dismiss an action where there are

12  parallel proceedings pending in the court of a foreign nation. *Mujica*

13  *v. Occidental Petroleum Corp.*, 381 F. Supp. 2d 1134, 1157 (C.D. Cal.

14  2005) (quoting *SuperMicro Computer, Inc. v. Digitechnic, S.A.*, 145 F.

15  Supp. 2d 1147, 1149 (N.D. Cal. 2001)).   "[T]he doctrine allows a court

16  to abstain from hearing an action if there is a first-filed foreign

17  proceeding elsewhere." *Supermicro*, 145 F. Supp. 2d at 1149.   While

18  exact parallelism is not required, the pending cases must be at least

19  "substantially similar." *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th

20  Cir. 1989).   Courts, including the Ninth Circuit, have applied the

21  *Colorado River* factors to determine whether a stay under the

22  international abstention doctrine is appropriate.[5] *See Neuchatel Swiss*

23  *Gen. Ins. Co. v. Lufthansa Airlines*, 925 F.2d 1193 (9th Cir. 1991);

24

25         [5] Those factors include: (1) whether either court has assumed
26  jurisdiction over a res; (2) the relative convenience of the forums; (3) the
    desirability of avoiding piecemeal litigation; and (4) the order in which
27  the forums obtained jurisdiction. See 424 U.S. at 818, 96 S.Ct. at 1246-47.
    In Moses Cone, the Court articulated two more considerations: (5) whether
28  state or federal law controls and (6) whether the state proceeding is
    adequate to protect the parties' rights. *Nakash*, 882 F.2d at 1415.

1  *Mujica*, 381 F. Supp. 2d 1134.  A court should decline to exercise

2  jurisdiction under *Colorado River* only in "exceptional circumstances."

3  *Neuchatel*, 925 F.2d at 1194.  Further, the existence of a substantial

4  doubt as to whether the parallel proceedings will resolve this action

5  precludes the granting of a stay.  *Smith v. Cent. Ariz. Water*

6  *Conservation Dist.*, 418 F.3d 1028, 1033 (9th Cir. 2005).

7      The Suzukis argue that the pending Japanese actions involve

8  "substantially the same parties and issue in dispute here," so the

9  court should stay this case pending resolution of those actions to

10  avoid piecemeal litigation or conflicting results.  Although the

11  Suzukis recognize that none of the named plaintiffs are the same in

12  this action as in any pending Japanese action, they argue that because

13  all the plaintiffs are represented by the same group of attorneys and

14  are sharing discovery, they are substantially the same parties.[6]  They

15  also assert that the claims are substantially the same because all are

16  based on alleged misrepresentations in connection with the MRI

17  investment scheme and involve the question of whether the Suzukis were

18  aware of the Ponzi scheme and made the misrepresentations in order to

19  defraud the plaintiffs.

20      It is unnecessary to reach the *Colorado River* factors in

21  evaluating the Suzukis' request to stay because the proceedings in

22  Japan are not "substantially similar."  While all cases appear to

23  derive from a common nucleus of operative facts, the parties are

24

25      [6]  According to plaintiffs, none of the plaintiffs in the Japanese
action against the Suzukis are named plaintiffs in this case, and all have
agreed to opt out of this class action should certification be granted.
26  (Doc. #225 (Igarishi Decl. ¶ 5)).  Plaintiffs do not indicate whether any
of the plaintiffs in either MRI case are named plaintiffs in this case or
27  whether they, too, have agreed to opt out in the case of class
certification.  However, documents provided by the Suzukis appear to suggest
28  that none are.  (*See* Doc. #231-1 at 37 & 39; Doc. #231-3 at 9).

different – there are no shared plaintiffs in any of the cases and two defendants in this case are not named in any Japanese case at all – and this action is substantially more comprehensive both in number and type of claims.  Despite the Suzukis' reliance on it, *Nakash* does not counsel otherwise.  There, the Ninth Circuit found pending actions substantially similar because the only difference was that corporate subsidiaries named in one action were not named in the other.  This is different from a situation where completely different plaintiffs who will likely opt out of a class action are asserting actions against a fraction of the defendants named in this case.  Nor does the fact the plaintiffs are essentially represented by some of the same attorneys change the court's conclusion.  The Suzukis cite to no authority for the proposition that plaintiffs in similar causes of action become substantially similar if they are represented by the same attorneys. Further, there is substantial doubt as to whether the Japanese cases will resolve the merits of this action because of the differences in claims and defendants.  Finally, the existence of actions by a handful of investors in Japan against three of this case's defendants is not the type of "exceptional circumstances" that would justify a *Colorado River* stay of the comprehensive class action being advanced by the plaintiffs in the action before this court.

In accordance with the foregoing, the Suzukis' motion to dismiss or stay this action (#209, #276) is **DENIED.**

**IT IS SO ORDERED.**

DATED: This 29th day of October, 2015.

_____
UNITED STATES DISTRICT JUDGE