JAMES E. GIBBONS (*pro hac vice*)
Cal. State Bar No. 130631
**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**
801 South Figueroa Street, 15th Floor
Los Angeles, CA 90017
Tel. (213) 624-6900
jeg@manningllp.com

ROBERT W. COHEN (*pro hac vice*)
Cal. State Bar No. 150310
MARIKO TAENAKA (*pro hac vice*)
Cal. State Bar No. 273895
**LAW OFFICES OF ROBERT W. COHEN, A.P.C.**
1901 Avenue of the Stars, Suite 1900
Los Angeles, CA 90067
Tel. (310) 282-7586
rwc@robertwcohenlaw.com
mt@robertwcohenlaw.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| SHIGE TAKIGUCHI, FUMI NONAKA, MITSUAKI TAKITA, TATSURO SAKAI, SHIZUKO ISHIMORI, YUKO NAKAMURA, MASAAKI MORIYA, HATSUNE HATANO, and HIDENAO TAKAMA, Individually and On Behalf of All Others Similarity Situated,<br><br>Plaintiff,<br><br>v.<br><br>MRI INTERNATIONAL, INC., EDWIN J. FUJINAGA,  JUNZO SUZUKI, PAUL MUSASHI SUZUKI, LVT, INC., dba STERLING ESCROW, and DOES 1-500,<br><br>Defendants. | Case No.: 2:13-cv-01183-HDM-VCF<br>[*Hon. Howard D. McKibben*]<br><br>**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH LVT, INC., DBA STERLING ESCROW** |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

By this motion, Plaintiffs Shige Takiguchi, et al. ("Plaintiffs") and the Class seek preliminary approval of their proposed class action settlement with LVT, Inc., doing business as Sterling Escrow ("Sterling Escrow").  Plaintiffs now request preliminary approval of the proposed Settlement Agreement, approval of the proposed Notice of Settlement, the setting of deadlines for Class Members to object and file exclusion requests, and the setting of a date for the Final Approval Hearing and for the hearing of Plaintiff's motion for attorneys' fees and costs.  Capitalized words in this motion shall have the same meaning as set forth in the Settlement Agreement.

## II.   SUMMARY OF THE CASE

Plaintiffs filed this case on July 5, 2013 (the "Action") against MRI International, Inc., its principal operators -- Edwin Fujinaga, Junzo Suzuki, and Paul Suzuki -- and Sterling Escrow, the escrow company purportedly holding the investors' money in trust.  The Defendants all filed motions to dismiss, and Plaintiffs amended their pleadings on several occasions.  Plaintiffs filed their operative Fifth Amended Complaint on September 29, 2016 (Dkt. 481).

On June 2, 2015, Plaintiffs filed a motion to certify the class. (Dkt. 255.)  On March 21, 2016, the Court certified the Class.  (Dkt. 404.)  The court also appointed Law Offices of Robert W. Cohen, APC and Manning & Kass, Ellrod, Ramirez, Trester, LLP as Class Counsel.  On May 5, 2016, the parties stipulated to modify the Class Certification Order to make the class definition consistent with the operative complaint. (Dkt. 425.)  On May 6, 2016, the Court granted the stipulation and the class definition was modified.  (Dkt. 426.)  Pursuant to the Class Certification Order, the Class is now defined as:

> The MRI Investor Class consisting of: all persons who were MRI investors and who were injured because of the defendants' alleged illegal Ponzi scheme and actions from July 5, 2008 through July 5, 2013. Excluded from the class are the defendants, their employees, their family members and their affiliates, and the following 26 individuals who are plaintiffs in the pending litigation against the defendants in Japan: (1) Tomoyasu Kojima; (2) Keiko Amaya; (3) Masakazu Sekihara; (4) Chiri Satou; (5) Meiko Murakami; (6) Masayoshi Tsutsumi; (7) Yumiko Ishiguro; (8) Reiko Suzuki; (9) Hiroji Sumita; (10) Eiko Uchiyama; (11) Hideyo Uchiyama; (12) Youzou Shiki; (13) Naoki Nagasawa; (14) Noboru Yokoyama; (15) Masami Segawa; (16) Fumiko Takagi; (17)

Kumiko Kaita; (18) Fumi Kobayashi; (19) Ikuko Miyazaki; (20) Hina Nagase; (21) Akio Iwama; (22) Kouji Kishida; (23) Eri Kishida; (24) Nomai Nii; (25) Youko Miyahara; and (26) Tsukiko Kurano.

After the Court granted approval of the Stipulation Regarding Class Notice on May 9, 2016 (Dkt. 429), Notice of Class Certification was mailed on June 17, 2016. 8,759 notices were sent to Class Members. Of those 8,759 notices, 664 were returned undeliverable. An address search was performed and 290 new addresses were identified. Accordingly, 290 Class Notices were re-mailed to the new addresses. There are a total of 372 Class Members for whom no new address can be found. The Notice of Class Certification was also published in the Saneki Shinbun, a financial newspaper with nationwide circulation in Japan. There were 33 exclusion requests.

The Parties engaged in extensive discovery throughout the course of this litigation and are fully informed of the facts that support or undermine their respective positions, as well as the financial condition of Sterling Escrow. From July 5, 2013 to the present, Plaintiffs served multiple sets of discovery on Defendants and served over 20 third-party subpoenas, resulting in the production of nearly one million pages of documents, all of which were reviewed. Plaintiffs also responded to interrogatories and requests for production of documents from Sterling Escrow.

In addition to the written discovery, numerous depositions also took place. Defendants deposed eight of the nine named plaintiffs. Plaintiffs deposed the President of Sterling Escrow, Peter Munoz, on two separate occasions, the accountant for MRI, Ms. Raven Gilmore, and other employees of MRI and their affiliates.

### III.  SUMMARY OF THE PROPOSED SETTLEMENT

#### A.  Settlement Negotiations with Sterling Escrow

Prior to entering into settlement negotiations, plaintiffs and Sterling Escrow conducted extensive discovery, including deposing Sterling Escrow's President, Mr. Munoz, on two separate occasions. During Mr. Munoz's second deposition, he admitted that, in hindsight, MRI's operation was a Ponzi scheme. At present, Sterling Escrow is a defunct company. It has no bank account, no assets, no operations, no license and it conducts no operations. The company, however, did maintain errors and omissions insurance coverage, with a policy limit of $1 million, minus the cost of defense. Mr. Munoz himself is not personally named in the lawsuit, and even if plaintiffs sought to add him as a defendant to

the Action, an asset check revealed that he has limited assets, making collection of any judgment against Mr. Munoz personally problematic.  For these reasons, it is in the best interest of both parties to enter into the proposed settlement.  At all times, the Parties' settlement negotiations were adversarial, non-collusive and arms' length.

### B.  Settlement Payments and Additional Consideration

Pursuant to the Settlement Agreement, Sterling Escrow will pay a total of $800,000.  As additional consideration, Mr. Munoz has agreed to cooperate with Class Counsel in the further prosecution of their claims against the Non-Settling Defendants.  Specifically, Mr. Munoz has agreed to have Sterling Escrow' counsel accept trial subpoenas on his behalf, and has agreed to authenticate documents as needed.

### C.  Approval of Motion for Good Faith Settlement

Pursuant to the Settlement Agreement, the settlement with Sterling Escrow shall be contingent upon the court's granting of its Motion for Good Faith Settlement.  Sterling Escrow filed its motion on May 17, 2017 (Dkt. 686).

### D.  Certification of the Class

The Class has already been certified as to Sterling Escrow, and is defined as described above.

### E.  Release of All Claims against the Settling Defendants and Reservation of Rights as to Remaining Defendants.

In exchange for the Settling Defendants' monetary and cooperation consideration, upon entry of a final judgment approving the proposed settlement, plaintiffs will release Sterling Escrow of all claims related to the alleged conduct giving rise to this litigation.  The settlements preserve plaintiffs' right to litigate against the Non-Settling Defendants for the entire amount of plaintiffs' damages.

### F.  Attorneys' Fees and Costs.

The settlement recognize that Class Counsel will seek attorneys' fees and reimbursement of costs and expenses incurred in the prosecution of this action.  Pursuant to the Settlement Agreement, Class Counsel will look solely to the Settlement Fund for satisfaction of such fees and costs.  Class Counsel will move the Court for an award of attorneys' fees and costs not to exceed $200,000, which equals 25% of the Settlement Fund.

## V. LEGAL ARGUMENT

### A. Class Action Settlement Procedure

A class action may not be dismissed, compromised, or settled without the approval of the Court. Judicial proceedings under Federal Rule of Civil Procedure 23 have led to a defined procedure and specific criteria for approval of class action settlements. The Rule 23(e) settlement approval procedure describes three distinct steps:

1. Preliminary approval of the proposed settlement;

2. Disseminating notice of the settlement to all affected class members; and

3. A formal fairness hearing, also called the final approval hearing, at which class members may be heard regarding the settlement, and at which counsel may introduce evidence and present argument concerning the fairness, adequacy, and reasonableness of the settlement.

This procedure safeguards class members' procedural due process rights and enables the Court to fulfill its role as the guardian of class interests. *See* 4 *Newberg on Class Actions* §§ 11.22, et seq. (4th ed. 2002) ("*Newberg*") [describing class action settlement procedure].

By this Motion, the parties request that the Court take the first step in the settlement approval process and preliminarily approve the proposed Settlement.

### B. Standards For Preliminary Settlement Approval

Rule 23(e) requires court approval of any settlement of claims brought on a class basis. "[T]here is an overriding public interest in settling and quieting litigation . . . particularly . . . in class action suits[.]" *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also Churchill Village, LLC v. General Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); and *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

The purpose of the Court's preliminary evaluation of the proposed settlement is to determine whether it is within "the range of reasonableness," and thus whether notice to the Class of the terms and conditions of the settlement, and the scheduling of a formal fairness hearing, are worthwhile. Preliminary approval should be granted where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible

approval." *In re NASDAQ Market Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997). Application of these factors here supports an order granting the motion for preliminary approval.

The approval of a proposed settlement of a class action is a matter of discretion for the trial court. *Churchill Village, L.L.C.*, *supra*, 361 F.3d at 575. In exercising that discretion, however, courts recognize that as a matter of sound policy, settlements of disputed claims are encouraged and a settlement approval hearing should "not be turned into a trial or rehearsal for trial on the merits." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982), *cert. denied sub nom. Byrd v. Civil Serv. Comm'n*, 459 U.S. 1217 (1983). Furthermore, courts must give "proper deference" to the settlement agreement, because "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1988) (internal quotations omitted).

To grant preliminary approval of these proposed Settlements, the Court need only find that they fall within "the range of reasonableness." *Newberg*, § 11.25. *The Manual for Complex Litigation (Fourth)* (2004) ("*Manual*") characterizes the preliminary approval stage as an "initial evaluation" of the fairness of the proposed settlement made by the court on the basis of written submissions and informal presentation from the settling parties. *Manual,* § 21.632. A proposed settlement may be finally approved by the trial court if it is determined to be "fundamentally fair, adequate, and reasonable." *City of Seattle*, *supra*, 955 F.2d at 1276. While consideration of the requirements for final approval is unnecessary at this stage, all of the relevant factors weigh in favor of the settlement proposed here. As shown below, the proposed settlement is fair, reasonable and adequate. Therefore, the Court should allow notice of them to be disseminated to the Class.

C.   **The Proposed Settlement Is Within The Range Of Reasonableness**

Plaintiffs' proposed settlement meets the standards for preliminary approval. First, the settlement is entitled to "an initial presumption of fairness" because they are the result of arm's-length negotiations among experienced counsel. *Newberg*, § 11.41. Second, the consideration agreed to of $800,000 with

NOTICE OF MOTION AND MOTION FOR PRELIMINARY SETTLEMENT APPROVAL

Sterling Escrow is substantial, particularly in light of the fact that the Sterling Escrow has no assets other than its professional liability insurance policy. Third, because the Non-Settling Defendants remain jointly and severally liable for all damages caused by the Ponzi Scheme, the settlement does not reduce the total amount of damages recoverable from the Non-Settling Defendants in this litigation. *See In re Corrugated Container Antitrust Litig.*, Case No. M.D.L. 310, 1981 WL 2093, at *17 (S.D. Tex. June 4, 1981). Fourth, the settlement calls for Sterling Escrow's principal, Peter Munoz, to cooperate with plaintiffs to prosecute their case against the Non-Settling Defendants, such as to accept subpoenas through his attorney and to authenticate documents. *See In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1386 (D. Md. 1983) [a defendant's agreement to cooperate with plaintiffs "is an appropriate factor for a court to consider in approving a settlement"]. The proposed settlement is, therefore, fair, reasonable, and adequate.

## VI. PROPOSED PLAN OF NOTICE AND APPOINTMENT OF NOTICE ADMINISTRATOR

Rule 23(e)(1) states that, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." Notice of a proposed settlement must inform class members of the following: (1) the nature of the pending litigation; (2) the general terms of the proposed settlement; (3) that complete information is available from the court files; and (4) that any class member may appear and be heard at the fairness hearing. *See Newberg*, § 8.32. The notice must also indicate an opportunity to opt-out, that the judgment will bind all class counsel who do not opt-out, and that any member who does not opt-out may appear through counsel. Fed. R. Civ. P. 23(c)(2)(B).

The form of notice is "adequate if it may be understood by the average class member." *Newberg*, § 11.53. Notice to the class must be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Amchem Prods.*, *supra*, 521 U.S. at 617. Plaintiffs sent notice of the class certification to the class members in June 2016, and only 372 were returned undeliverable for which no new addresses can be found. In addition, plaintiffs will also publish the notice of class certification with the National Consumer Affairs Center of Japan's website (www.kokusen.go.jp).

Plaintiffs propose that the attorney group representing the MRI victims in Japan ("MRI

7

Higaibengodan") be approved as the Notice Administrator to provide the Class with the Notice of Settlement and manage the Requests for Exclusion. Plaintiffs further propose that the following notice program be adopted and approved by the Court: (1) direct that the cover letter, notice and Initial Claim Form be mailed to each class member; (2) the posting of the notice and Initial Claim Form on the website of the MRI Higaibengodan; and (3) posting the short form notice with the National Consumer Affairs Center of Japan's website (www.kokusen.go.jp). The National Consumer Affairs Center of Japan is a government agency that is regularly accessed by Japanese citizens as a source of information for consumer issues, and has a larger readership than any nationwide newspaper publications. The notice, Initial Claim Form, and Settlement Agreement will all be available on the MRI Higaibengodan's website in both English and in Japanese.

Class Members will have forty-five days (45) days from the mailing of the notice to request to be excluded from the Settlement. Any Class Member who wishes to be excluded from the Settlement Class must send a written Request for Exclusion to the Notice Administrator on or before the deadline. Class Members will have 120 days to complete and return the Initial Claim Form to the Notice Administrator.

The proposed notice provides the definition of the Class, describes the nature of the action, explains the procedures for making comments and objections, and explains how to submit a Request for Exclusion. The notice describes the terms of the Settlements with Sterling Escrow, informs Class members about the payment of Plaintiffs' attorneys' fees and costs, and advises the Class that the funds will be distributed at a future time to be determined. The notice also provides specifics regarding the date, time, and place of the final approval hearing, and informs the Class that they may enter an appearance through counsel. The notice also informs Class members how to exercise their rights and make informed decisions regarding the proposed settlement, and tells them that if they do not opt out, the judgment will be binding upon them. The information set forth in the proposed notice adequately informs the Class about the proposed settlement and their rights. In fact, courts have approved notices even when they have provided only general information about a settlement. *See*, *e.g.*, *Mendoza v. United States*, 623 F.2d 1338, 1351 (9th Cir. 1980) ("very general description of the proposed settlement" satisfies standards).

## VII. APPOINTMENT OF CLAIMS ADMINISTRATOR

Plaintiffs also proposes the appointment of Heffler Claims Group as the Claims Administrator. The Claims Administrator shall be responsible for holding and managing the Net Settlement Funds until the funds are distributed upon the final resolution of the case.  At the resolution of the case or, at any time earlier with Court approval, the Claims Administrator shall also be responsible for processing the claims of Class Members and distributing funds to Class Members pursuant to the Plan of Allocation approved by the Court.

Heffler Claims Group has more than 45 years of experience in administering class action settlements in securities, consumer, and anti-trust litigation, and has been appointed as the claims administrator in several high-profile class action settlements.  Heffler Claims Group also has experience with processing and administering claims involving international claimants.

## VIII. DEFERRMENT OF PLAN OF ALLOCATION AND DISTRIBUTION

Class Counsel believe that it is in the best interest of the Settlement Class to defer the distribution of the Net Settlement Fund until the resolution of the entire Action.  Class Counsel anticipate that additional funds may be added to the Settlement Fund in the future from recoveries from other defendants which will require distribution.  Class Counsel represent that, because all Settlement Class Members are residents of Japan, piecemeal distribution of the proceeds of multiple settlements and/or a judgment in this Action would require numerous, costly international wire transfers.  The Parties therefore agree that the Settlement Funds will remain held by the Claims Administrator until final resolution of the entire Action.

Accordingly, plaintiffs respectfully request that they be allowed to defer presentment of a plan of allocation until final resolution of the case or upon motion by plaintiffs at a later time.  However, any plan of allocation that will be presented to the Court for approval will be "fair, reasonable and adequate" and will reimburse the class members according to their injuries.  *See In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001); *see also In re Oracle Sec. Litig.*, 1994 U.S. Dist. LEXIS 21593, at *3 (N.D. Cal. June 18, 1994) ("A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable.")

## X. ATTORNEYS' FEES AND COSTS

Before the filing of the motion for final approval, Class Counsel intends to move the Court for an order authorizing payment to Class Counsel for attorneys' fees and costs of up to 25% or $200,000. Defendants have agreed that they will not to oppose an award of attorneys' fees and costs to Class Counsel.

## XI. THE COURT SHOULD SET A FINAL APPROVAL HEARING SCHEDULE

The last step in the settlement approval process is the final approval hearing, at which the Court may hear all evidence and argument necessary to evaluate the proposed settlement. At that hearing, proponents of the Settlements may explain and describe their terms and conditions and offer argument in support of approval and members of the Class, or their counsel, may be heard in support of or in opposition to the Settlements. Plaintiffs propose the following schedule for final approval of the Settlements:

| Event | Date |
| --- | --- |
| Notice of Class Action Settlement to Be Mailed and Posted on Internet | Within 20 days of Preliminary Approval Order |
| Motion for Attorneys' Fees and Costs Filed by Class Counsel | To be completed 31 days from Notice Date |
| Opt-Out and Objection Deadline | 45 days from Notice Date |
| Deadline for Initial Claim Form | 120 Days from Notice Date |
| Notice Administrator Affidavit of Compliance with Notice Requirements | To be filed 30 days prior to the Final Approval Hearing |
| Motion for Final Approval | To be filed 21 days prior to Final Approval Hearing |
| Responses or Opposition to the Motion for Final Approval | To be filed 14 days prior to Final Approval Hearing |
| Provide List of Persons Who Have Made Requests for Exclusions | To be filed 14 days prior to Final Approval Hearing |

| Replies in Support of Motions for Final Approval, Attorneys' Fees and Costs | To be filed 7 days prior to Final Approval Hearing |
|---|---|
| Final Approval Hearing | _____, 2017 |

## XII. CONCLUSION

Based on the foregoing, plaintiffs respectfully request that the Court: (1) preliminarily approve the proposed settlement with Sterling Escrow; (2) approve the Notice Administrator cover letter, proposed long form and short form notice to be sent to the Class; (3) appoint MRI Higaibengodan as the Notice Administrator; (4) appoint Heffler Claims Group as the Claims Administrator; (5) set a schedule for disseminating notice of settlement to the Class, as well as deadlines to comment on or object to, or be excluded from the settlement; and (6) schedule a hearing pursuant to Rule 23(e) of the Federal Rules of Civil Procedure to determine whether the proposed Settlements are fair, reasonable, and adequate and should be finally approved.

Respectfully submitted.

Dated: May 24, 2017

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP

By:   /s/ James E. Gibbons
      JAMES E. GIBBONS


LAW OFFICES OF ROBERT W. COHEN
A Professional Corporation

By:   /s/ Robert W. Cohen
      ROBERT W. COHEN
      MARIKO TAENAKA

## CERTIFICATE OF SERVICE

I hereby certify that on May 24, 2017, a copy of the foregoing document was filed electronically via the Court's CM/ECF system. Pursuant to Local Rule 5.5(h), notice of filing will be served on all parties by operation of the Court's CM/ECF system, and parties may access this filing through the Court's CM/ECF system.

          /s/ Mariko Taenaka    .
          Mariko Taenaka