JAMES E. GIBBONS (*pro hac vice*)
Cal. State Bar No. 130631
**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**
801 South Figueroa Street, 15th Floor
Los Angeles, CA 90017
Tel. (213) 624-6900
jeg@manningllp.com

ROBERT W. COHEN (*pro hac vice*)
Cal. State Bar No. 150310
MARIKO TAENAKA (*pro hac vice*)
Cal. State Bar No. 273895
**LAW OFFICES OF ROBERT W. COHEN, A.P.C.**
1901 Avenue of the Stars, Suite 1900
Los Angeles, CA 90067
Tel. (310) 282-7586
rwc@robertwcohenlaw.com
mt@robertwcohenlaw.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| SHIGE TAKIGUCHI, FUMI NONAKA, MITSUAKI TAKITA, TATSURO SAKAI, SHIZUKO ISHIMORI, YUKO NAKAMURA, MASAAKI MORIYA, HATSUNE HATANO, and HIDENAO TAKAMA, individually and on behalf of all others similarity situated,<br><br>Plaintiff,<br><br>v.<br><br>MRI INTERNATIONAL, INC., EDWIN J. FUJINAGA, JUNZO SUZUKI, PAUL MUSASHI SUZUKI, LVT, INC., dba STERLING ESCROW, and DOES 1-500,<br><br>Defendants. | Case No.: 2:13-cv-01183-HDM-NJK<br><br>**PLAINTIFFS' NOTION OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES; DECLARATION OF JAMES E. GIBBONS** |

Plaintiffs Shige Takiguchi, et. al. move this Court for an order awarding Class Counsel Manning & Kass, Ellrod, Ramirez, Trester, LLP, and The Law Offices of Robert W. Cohen, A.P.C. attorneys' fees in connection with the settlement reached with LVT, Inc., dba Sterling Escrow.

This Motion is supported by the accompanying Memorandum of Points and Authorities, the Declaration of James E. Gibbons, all pleadings, records and papers on file, and upon such other evidence and oral argument as may be considered by this Court.

Dated:  August 24, 2017                     MANNING & KASS
                                            ELLROD, RAMIREZ, TRESTER LLP

                                            By:     /s/ James E. Gibbons
                                                    JAMES E. GIBBONS

**TABLE OF CONTENTS**

I.   INTRODUCTION………………………...……………………………………….…….................1

II.  CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES OF
     25% OF THE COMMON FUND SHOULD BE APPROVED….…………………….................1

     A. Class Counsel Is Entitled to an Award of Attorneys' Fees from the Common Fund………2

     B. A Reasonable Percentage of the Fund Recovered in the Appropriate
        Method for Awarding Attorneys' Fees in Common Fund Cases…………………………..2

     C. A Fee of 25% if the Settlement Fund Is Reasonable…………………..…………………….3

     D. Analysis Under the Percentage Method and the Vizcaino
        Factors Justifies a Fee Award of 25% in this Case……………………………………….4

          1. The Result Achieved………………………………………………………………….4

          2. The Risks of Litigation……………………………………………………………….4

          3. The Skills Required and the Quality of Work…………………………………….….6

          4. The Contingent Nature of the Fee and the Financial
             Burden Carried by Class Counsel……………………………………………………6

          5. A 25% Fee Award is the Ninth Circuit's Benchmark and
             Is Comparable to Attorneys' Fees Awarded in Similar Cases……..……………….8

          6. Reaction of the Settlement Class…………………………………………………….8

III. CONCLUSION……………………………………………………………………………….9

# **TABLE OF AUTHORITIES**

*Cases*                                                                                                      *Page(s)*

*In re Alliance Gaming Corp. Sec. Litig.*,
    No. CV-S-04-0821-BES-PAL, slip op. at 1 (D. Nev. June 28, 2007)……………………………8

*Anixter v. Home-Stake Prod. Co.*,
    77 F.3d 1215 (10th Cir. 1996)……………………………………………………………………8

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
    No. 02-CV-5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)……………………………6

*ATLAS v. Accredited Home Lenders Holding Co.*,
    No. 07-CV-00488-H (CAB), 2009 WL 3698393 (S.D. Cal. Nov. 4, 2009)………………………5

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
    472 U.S. 299 (1985)………………………………………………………………...……………7

*In re Beckman Coulter, Inc. Sec. Litig.*,
    No. 8:10-cv-1327-JST (RNBx), (C.D. Cal. Mar. 1, 2012)…………………………………….…8

*Blum v. Stenson*,
    465 U.S. 886 (1984)……………………………………………………………………………..2

*Boeing Co. v. Van Gemert*,
    44 U.S. 472 (1980)……………………………………………………………………...……..2

*Chemical Bank v. City of Seattle (In re Washington Pub. Power Supply Sys. Sec. Litig.) (WPPSS)*,
    19 F.3d 1291 (9th Cir. 1994)…………………………………………………………………..2, 4

*Class Plaintiffs v. Jaffe & Schlesinger P.A.*,
    19 F.3d 1306 (9th Cir. 1994)……………………………………………………………..………2

*Evans v. Linden Research, Inc.*,
    No. 11-CV-01078 (DMR), 2014 WL 1724891 (N.D. Cal. Apr. 29, 2014)……………...…….3-4

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983)……………………………………………………………………………..4

*In re Heritage Bond Litig.*,
    No. 02-ML-1475 DT (RCX), 2005 WL 1594389 (C.D. Cal. June 10, 2005)……………………6, 9

*IBEW Local 697 Pension Fund v. Int'l Game Tech., Inc.*,
    No. 3:09-cv-00419-MMD-WGC, 2012 U.S. Dist. LEXIS 151498 (D.Nev. Oct. 19, 2012)….…3, 8

*In re Ikon Office Sols. Inc. Sec. Litig.*,
    194 F.R.D. 166 (E.D. Pa. 2000)……………………………………………………………………6

*Int'l Brotherhood of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*,
    No. 3:09-cv-00419-MMD-WGC, 2012 WL 5199742 (D. Nev. Oct. 19, 2012)………………..7

*In re Oracle Corp. Sec. Litig.*,
    No. C 01-00988 SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009)………………………….....7

*In re Omnivision*,
    559 F.Supp.2d 1036 (N.D.Cal. 2007)……………………………………………………….6, 7

*Principe v. Ukropina* (*In re Pac. Enters. Sec. Litig.*),
    47 F.3d 373 (9th Cir. 1995) ……………………………………………………………...…1, 3, 5

*Powers v. Eichen*,
    229 F.3d 1249 (9th Cir. 2000)……………………………………………………………...……..3

*Redwen v. Sino Clean Energy, Inc.*,
    No. CV 11-3936 PA (SSx), 2013 U.S. Dist. LEXIS 100275 (C.D. Cal. July 9, 2013)…………..6

*Rieckborn v. Velti PLC*,
    No. 13-CV-03889-WHO, 2015 WL 468329, (N.D. Cal. Feb. 3, 2015)……………………………..8

*Robbins v. Koger Props., Inc.*,
    116 F.3d 1441 (11th Cir. 1997)……………………………………………………………………..8

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003)……………………………………………………………………….2

*In re Sunterra Corp. Sec. Litig.*,
    No. 2:06-cv-00844- BES-RJJ, slip op. at 1 (D. Nev. Feb. 10, 2009)……………………………….8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)…………………………………………………………………………….....7

*Vincent v. Hughes Air West, Inc.*,
    557 F.2d 759 (9th Cir. 1977)………………………………………………………………………..2

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002)………………………………………………………………2, 4, 5, 6

*Vincent v. Reser*,
    No. C-11-03572 CRB, 2013 WL 621865 (N.D. Cal. Feb. 19, 2013)……………………………….2

*Ward v. Succession of Freeman*,
    854 F.2d 780 (5th Cir. 1998)………………………………………………………………………..8

Case 2:13-cv-01183-HDM-NJK   Document 720   Filed 08/24/17   Page 6 of 16


*In re Xcel Energy, Inc. Securities, Derivative & ERISA Litigation*,
    364 F.Supp.2d 980 (D. Minn. 2005)……………………………………………………………….8

**<u>Other Authorities</u>**                                                                                                     **<u>*Page(s)*</u>**

15 U.S.C. § 78u-4(a)(6) ……………………………………………………………………………….3

Fed. R. Civ. P. 23(h)…………………………………………………………………………………..1

iv

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.   INTRODUCTION

Class Counsel Manning & Kass, Ellrod, Ramirez, Trester, LLP, and The Law Offices of Robert W. Cohen, A.P.C., respectfully submit this Memorandum of Points and Authorities in support of their application for an award of attorneys' fees.[1]

LVT, Inc., dba Sterling Escrow, has agreed to pay $800,000 through its Errors & Omissions insurer, the remaining limits of the insurance policy, to settle the claims alleged against it in this action. This recovery is a very favorable result for the Class when evaluated in light of all the relevant circumstances – most notably, the complicated nature of the action, the risks of pursuing the action through trial, and the absence of assets available for recovery from Sterling Escrow outside of its liability insurance policy. The settlement was achieved only after four years of intensive litigation, including vigorous pre-filing investigative efforts, extensive law and motion work that involved overcoming a succession of defense motions to dismiss, close review of tens of thousands of pages of documents (most which were in Japanese), and taking and defending numerous depositions, including multiple depositions of Sterling Escrow's former principal, Peter Munoz.

Given the straitened financial means of most Class members, Class Counsel agreed to pursue the litigation on a contingency basis. Class Counsel respectfully request that they be awarded an attorneys' fee of 25% of the Settlement. This 25% fee request is the Ninth Circuit's "benchmark" for contingent fees. *See*, *e.g.*, *Principe v. Ukropina (In re Pac. Enters. Sec. Litig.).*, 47 F.3d 373, 379 (9th Cir. 1995) ["Twenty-five percent is the 'benchmark' that district courts should award in common fund cases"].

II.  **CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES OF 25% OF THE COMMON FUND SHOULD BE APPROVED**

Federal Rule of Civil Procedure 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "Attorneys' fees provisions included in proposed class action agreements are, like every other aspect of such agreements, subject to the determination

---

[1] For the sake of brevity, a more detailed description of the lawsuit's allegations, the procedural history of the Action, the risks faced by the Settlement Class in pursuing litigation, and the negotiations that led to the settlement with Sterling Escrow are set out in the attached Declaration of James E. Gibbons.

whether the settlement is 'fundamentally fair, adequate and reasonable.'" *Staton v. Boeing Co.*, 327 F.3d 938, 964 (9th Cir. 2003) (citation omitted).

### A. Class Counsel Is Entitled to an Award of Attorneys' Fees from the Common Fund

It is well settled that attorneys who represent a class and achieve a benefit for class members are entitled to a reasonable fee as compensation for their services. The Supreme Court has recognized that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole*." Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Vincent v. Reser* (N.D.Cal. Feb. 19, 2013, No. C 11-03572 CRB) 2013 U.S.Dist.LEXIS 22341, at *13) [quoting *Boeing*, 444 U.S. at 478]. The Ninth Circuit has expressly reasoned that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). The purpose of this rule, known as the "common fund doctrine," is to prevent unjust enrichment so that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *Chemical Bank v. City of Seattle (In re Washington Pub. Power Supply Sys. Sec. Litig.) (WPPSS),* 19 F.3d 1291, 1300 (9th Cir. 1994), *aff'd* in part, *Class Plaintiffs v. Jaffe & Schlesinger P.A.,* 19 F.3d 1306 (9th Cir. 1994).

### B. A Reasonable Percentage of the Fund Recovered Is the Appropriate Method for Awarding Attorneys' Fees in Common Fund Cases

In *Blum v. Stenson*, 465 U.S. 886 (1984), the Supreme Court recognized that under the common fund doctrine a reasonable fee may be based "on a percentage of the fund bestowed on the class[.]" *Id.* at 900, n. 16. In the Ninth Circuit, a district court has discretion to award fees in common fund cases based on either the so-called lodestar/multiplier method or the percentage of-the-fund method. *WPPSS*, 19 F.3d at 1296. However, the percentage-of-recovery method has become the prevailing method in the Ninth Circuit. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002). Other circuits have similarly endorsed the percentage-of-recovery method.

The rationale for compensating counsel in common fund cases on a percentage basis is sound. Principally, it more closely aligns the lawyers' interest in being paid a fair fee with the interest of the class in achieving the maximum possible recovery in the shortest amount of time. In fact, one of the nation's leading scholars in the field of class actions and attorneys' fees, Professor Charles Silver of the University of Texas School of Law, has concluded that the percentage method of awarding fees is the only method of fee awards that is consistent with class members' due process rights. Professor Silver notes:

> The consensus that the contingent percentage approach creates a closer harmony of interests between class counsel and absent plaintiffs than the lodestar method is strikingly broad. . . . In view of this, it is as clear as it possibly can be that judges should not apply the lodestar method in common fund class actions. The Due Process Clause requires them to minimize conflicts between absent claimants and their representatives. The contingent percentage approach accomplishes this.

Charles Silver, Class Actions In The Gulf South Symposium, *Due Process and the Lodestar Method: You Can't Get There From Here*, 74 Tul.L.Rev. 1809, 1819-20 (2000) [footnotes omitted]. This is particularly appropriate in cases under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), where Congress recognized the propriety of the percentage method of fee awards. See 15 U.S.C. § 78u-4(a)(6) ["Total attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class"].

### C. A Fee of 25% of the Settlement Fund Is Reasonable

Recognizing the utility of the percentage-of-recovery method, the Ninth Circuit has stated that "[t]wenty-five percent is the 'benchmark' that district courts should award in common fund cases." *Pac. Enters.*, 47 F.3d at 379; *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) [reaffirming 25% benchmark]; *see also IBEW Local 697 Pension Fund v. Int'l Game Tech., Inc.*, No. 3:09-cv-00419-MMD-WGC, 2012 U.S. Dist. LEXIS 151498, at *12 (D.Nev. Oct. 19, 2012) ["Twenty-five percent should be the 'benchmark' percentage, but the district court may adjust upward or downward for the circumstances in each case"] [citation omitted] ; *Evans v. Linden Research, Inc.,* No. C-11-01078

(DMR), 2014 WL 1724891, at *6 (N.D. Cal. Apr. 29, 2014) ["25% of the recovery obtained is the benchmark in the Ninth Circuit"].

The guiding principle in the Ninth Circuit is that a fee award be "reasonable under the circumstances." *WPPSS*, 19 F.3d at 1296. Here, in view of the result obtained, the contingent fee risk, and other relevant factors, an award of 25% of the recovery obtained for the Class is appropriate.

### D. Analysis Under the Percentage Method and the *Vizcaino* Factors Justifies a Fee Award of 25% in this Case

Class Counsel's request for a fee award of 25% of the Sterling Settlement Fund is eminently reasonable. The fee request readily satisfies the five factors that are often used by the Ninth Circuit courts to evaluate the reasonableness of a requested fee: 1) result achieved; 2) risk of litigation; 3) skill required and quality of the work; 4) awards made in similar cases; and 5) contingent nature of the fee and financial burden carried by counsel. *Vizcaino*, 290 F.3d at 1048-50. The Ninth Circuit has explained that these factors should not be used as a rigid checklist or weighed individually, but, rather, should be evaluated in light of the totality of the circumstances. *Id.* As set forth below, all of the *Vizcaino* factors militate in favor of approving the requested fee.

#### 1. The Result Achieved

Courts have consistently recognized that the result achieved is an important factor to be considered in making a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) [noting the "most critical factor is the degree of success obtained"]; *Vizcaino*, 290 F.3d at 1048 ["(e)xceptional results are a relevant circumstance" in awarding attorneys' fees]. Class Counsel submit that the $800,000 proposed settlement for their claims against Sterling Escrow is an excellent result for the Class, both quantitatively and when considering the risk of a lesser (or no) recovery if the case proceeded through trial.

The settlement represents the entirety of the remaining limits of Sterling Escrow's Errors & Omissions liability policy.[2] Given that Sterling Escrow closed its doors shortly after the discovery of the Ponzi scheme fraud in May 2013, and had no other ascertainable assets other than its liability insurance policy, the recovery of the policy limits is an excellent result.

---

[2] The policy was a "burning limits" policy, meaning that the liability limits were depleted by defense expenses.

### 2. The Risks of Litigation

The risk of further litigation is also an important factor in determining a fair fee award. *Vizcaino*, 290 F.3d at 1048 ["(r)isk is a relevant circumstance" in awarding attorneys' fees]; *Pac. Enters.*, 47 F.3d at 379 [attorneys' fees were justified "because of the complexity of the issues and the risks"]; *see also ATLAS v. Accredited Home Lenders Holding Co.*, No. 07-CV-00488-H (CAB), 2009 WL 3698393, at *3 (S.D. Cal. Nov. 4, 2009) [approving settlement where "litigating the complex securities fraud class action to completion would have resulted in substantial delay and expense"]. As set forth in the Declaration of James E. Gibbons, there were substantial risks and uncertainties in the Action that required the skill and focus of Class Counsel to bring this matter to a favorable resolution.

Although plaintiffs' Complaint ultimately survived Defendants' multiple motions to dismiss, plaintiffs faced substantial risks in ultimately proving that Sterling Escrow was culpable in the MRI Ponzi scheme and, moreover, that any damages awarded against Sterling would be covered by its E&O liability policy. As to liability, Sterling's former principal claimed that neither he nor anyone at Sterling knew anything about MRI's misleading sales statements, because Sterling simply acted as a bookkeeper and was never apprised of the sales representations MRI made in Japan to its investors. Moreover, Sterling Escrow's former principal testified that no one at Sterling Escrow was literate in Japanese and, therefore, even if they had seen the sales materials, they would not have understood them. Gibbons Decl., ¶¶ 5-7.

As to insurance coverage for liability, Sterling's insurer, which had agreed to defend the lawsuit only under a reservation of rights, had potentially potent coverage defenses. Clearly, any liability attributable to Sterling's fraud, criminality, or self-dealing, or any liability that did not result from escrow services (and Sterling's former principal testified that the company provided *no* escrow services to MRI), would not be covered under the policy. Also problematic for Class Counsel in proving the case was the fact that Sterling's principal during the inception of the scheme and during most of the years it worked on behalf of MRI – Jeff Critcher – had passed away before the litigation began, and was thus unavailable as a witness. *Id.,* ¶¶ 7-9.

Accordingly, plaintiffs faced the possibility of either failing to win any recovery against Sterling or – equally disastrous – of winning a recovery against Sterling that was not covered by Sterling's E&O

5
PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

policy and, thus, uncollectible. *See*, *e.g.*, *In re Omnivision*, 559 F.Supp.2d 1036, 1047 (N.D.Cal. 2007) [noting that the uncertainty in proving and recovering damages supported counsel's requested fee].[3]

In light of the above, Class Counsel achieved a significant result for the Class on its claims against Sterling Escrow in the face of very real risks. Under these circumstances, the requested fee is fully appropriate.

### 3.  The Skill Required and the Quality of the Work

Courts have recognized that the "prosecution and management of a complex national class action requires unique legal skills and abilities." *In re Heritage Bond Litig.*, No. 02-ML-1475 DT (RCX), 2005 WL 1594389, at *12 (C.D. Cal. June 10, 2005) [citation omitted]; *see also Vizcaino*, 290 F.3d at 1048. Courts also have acknowledged the "notorious complexity" of securities class action litigation. *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. 02 Civ. 5575 (SWK), 2006 WL 903236, at *8 (S.D.N.Y. Apr. 6, 2006).

Here, Class Counsel initiated its own initial investigation without the benefit of any U.S. government agency so that they could develop sufficient facts to support the litigation and flesh out legal theories. Class Counsel also defeated multiple motions to dismiss and/or to transfer the case to Japan. The extensive litigation efforts included, among many other things, reviewing and analyzing voluminous information and data concerning MRI, its investment scheme, its written and oral representations to investors, the investments of thousands of investors, and interviewing scores of persons with knowledge of the underlying facts. Much of the documentation was in Japanese, and nearly all of the victims spoke only Japanese. Gibbons Decl., ¶¶ 5-7. The favorable settlement is attributable to the diligence, determination, hard work, and skill of Class Counsel, who developed, litigated, and successfully negotiated the settlement.

---

[3] While courts have always recognized that securities class actions carry significant risks, post-PSLRA rulings make it clear that the risk of no recovery (and hence no fee) has increased exponentially. *See Redwen v. Sino Clean Energy, Inc.*, No. CV 11-3936 PA (SSx), 2013 U.S. Dist. LEXIS 100275, at *19-20 (C.D. Cal. July 9, 2013) ["Courts experienced with securities fraud litigation, routinely recognize that securities class actions present hurdles to proving liability that are difficult for plaintiffs to clear]" [internal punctuation omitted]; *In re Ikon Office Sols. Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) [noting that "securities actions have become more difficult from a plaintiffs perspective in the wake of the PSLRA"].

### 4. The Contingent Nature of the Fee and the Financial Burden Carried by Class Counsel

It has long been recognized that attorneys are entitled to a larger fee when their compensation is contingent in nature. *See Vizcaino*, 290 F.3d at 1048-50; *In re Omnivision*, 559 F.Supp.2d at 1047 ["The importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee"]; *see also Int'l Brotherhood of Electrical Workers Local 697 Pension Fund*, 2012 U.S. Dist. LEXIS 151498, at *13 [awarding fee of 25% of the common fund and noting that "(p)laintiffs' counsel shouldered the risk of non-payment by taking the class action suit on a contingency fee basis"].

The Supreme Court has emphasized that private securities actions provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) [citation omitted]; *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007) [noting that the court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions].[4]

There have been many class actions in which plaintiffs' counsel took on the risk of pursuing claims on a contingency basis, expended thousands of hours and dollars, yet received no remuneration whatsoever despite their diligence and expertise. *See*, *e.g.*, *In re Oracle Corp. Sec. Litig.*, No. C 01-00988 SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010) [granting summary judgment to defendants after eight years of litigation, and after plaintiff's counsel incurred over $6 million in expenses and worked over 100,000 hours, representing a lodestar of approximately $48 million]. Class Counsel are aware of many other hard-fought lawsuits where, because of the discovery of facts unknown when the case was commenced, changes in the law during the pendency of the case, or a decision of a judge or jury following a trial on the merits, excellent professional efforts by plaintiff's

---

[4] Additionally, vigorous private enforcement of the federal securities laws and state corporation laws can only occur if private plaintiffs can obtain some semblance of parity in representation with that available to large corporate defendants. If this important public policy is to be carried out, courts should award fees that will adequately compensate private plaintiffs' counsel, taking into account the enormous risks undertaken with a clear view of the economics of a securities class action.

7

counsel produced no fee. *See*, *e.g.*, *Ward v. Succession of Freeman*, 854 F.2d 780 (5th Cir. 1998) [reversing plaintiffs' jury verdict for securities fraud]; *Robbins v. Koger Props., Inc.,* 116 F.3d 1441 (11th Cir. 1997) [reversing $81 million jury verdict and dismissing case with prejudice]; *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) [overturning plaintiffs' verdict obtained after two decades of litigation]. As the court recognized in *In re Xcel Energy, Inc. Securities, Derivative & ERISA Litigation*, 364 F.Supp.2d 980 (D. Minn. 2005), "[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy." *Id.* at 994.

Here, because Class Counsel's fee is contingent, the only sure thing was that there would be no fee without a successful result, and that a successful result would only be realized after significant amounts of time, effort, and expense had been expended. There was always a significant risk that, at the end of the day, the Class and their counsel would recover nothing.

### 5.   A 25% Fee Award Is the Ninth Circuit's Benchmark and Is Comparable to Attorneys' Fees Awarded in Similar Cases

In requesting a 25% fee, Class Counsel seek the benchmark that has been established by the Ninth Circuit. *Eichen*, 229 F.3d at 1256 ["We have also established twenty-five percent of the recovery as a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery approach"]. The requested fee is also reasonable when compared to fee awards in similarly-sized securities class action settlements from district courts within the Ninth Circuit. *See, e.g.*, *IBEW Local 697 Pension Fund,* 2012 U.S. Dist. LEXIS 151498, at *12 [awarding fees of 25% of $12.5 million settlement]; *In re Sunterra Corp. Sec. Litig.*, No. 2:06-cv-00844- BES-RJJ, slip op. at 1 (D. Nev. Feb. 10, 2009) [awarding fees of 25% of $8 million settlement]; *In re Alliance Gaming Corp. Sec. Litig.,* No. CV-S-04-0821-BES-PAL, slip op. at 1 (D. Nev. June 28, 2007) [awarding fees of 25% of $15.5 million settlement]; *Rieckborn v. Velti PLC*, No. 13-CV-03889-WHO, 2015 WL 468329, at *21-22 (N.D. Cal. Feb. 3, 2015) [awarding fees of 25% of $9.5 million settlement]; *In re Beckman Coulter, Inc. Sec. Litig.,* No. 8:10-cv-1327-JST (RNBx), slip op. at 3 (C.D. Cal. Mar. 1, 2012) [awarding fees of 25% of $5.5 million settlement]. Accordingly, it is respectfully submitted that the attorneys' fee requested here is well within the range of fees awarded by district courts within the Ninth Circuit in comparable securities settlements.

**6. Reaction of the Settlement Class**

Although not articulated specifically in *Vizcaino*, district courts in the Ninth Circuit also consider the reaction of the class when deciding whether to award the requested fee. *See In re Heritage Bond Litig.*, 2005 WL 1594389, at *15 ["The presence or absence of objections . . . is also a factor in determining the proper fee award"]. Copies of the Court-approved Notice, which stated that Class Counsel would seek a 25 percent contingency fee, were mailed to all Class members and also posted on the internet in Japan on July 24, 2017. See Gibbons Decl. ¶ 11. Although the objection deadline will not run until September 14, 2017, no objections or opt-outs have been received to date.

## III. CONCLUSION

For the foregoing reasons, Class Counsel respectfully request that the Court award attorneys' fees of 25% of the $800,000 settlement with Sterling Escrow.

Respectfully submitted.

Dated: August 24, 2017

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP

By: ___/s/ James E. Gibbons___
     JAMES E. GIBBONS


LAW OFFICES OF ROBERT W. COHEN
A Professional Corporation


By: ___/s/ Robert W. Cohen___
     ROBERT W. COHEN
     MARIKO TAENAKA

## CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2017, a copy of the foregoing document was filed electronically via the Court's CM/ECF system. Pursuant to Local Rule 5.5(h), notice of filing will be served on all parties by operation of the Court's CM/ECF system, and parties may access this filing through the Court's CM/ECF system.

                                                  /s/ Mariko Taenaka          .
                                                  Mariko Taenaka