1  JAMES E. GIBBONS (*pro hac vice*)
   Cal. State Bar No. 130631
2  **MANNING & KASS**
   **ELLROD, RAMIREZ, TRESTER LLP**
3  801 South Figueroa Street, 15th Floor
   Los Angeles, CA 90017
4  Tel. (213) 624-6900
   jeg@manningllp.com
5
   ROBERT W. COHEN (*pro hac vice*)
6  Cal. State Bar No. 150310
   MARIKO TAENAKA (*pro hac vice*)
7  Cal. State Bar No. 273895
   **LAW OFFICES OF ROBERT W. COHEN, A.P.C.**
8  1901 Avenue of the Stars, Suite 1900
   Los Angeles, CA 90067
9  Tel. (310) 282-7586
   rwc@robertwcohenlaw.com
10 mt@robertwcohenlaw.com

11 *Attorneys for Plaintiffs*

12              **UNITED STATES DISTRICT COURT**

13                 **DISTRICT OF NEVADA**

14

15 SHIGE TAKIGUCHI, FUMI NONAKA,          Case No.: 2:13-cv-01183-HDM-NJK
   MITSUAKI TAKITA, TATSURO SAKAI,        [*Hon. Howard D. McKibben*]
16 SHIZUKO ISHIMORI, YUKO NAKAMURA,
   MASAAKI MORIYA, HATSUNE HATANO, and    **NOTICE OF MOTION AND**
17 HIDENAO TAKAMA, Individually and On Behalf  **MOTION FOR PRELIMINARY**
   of All Others Similarity Situated,     **APPROVAL OF CLASS ACTION**
                                          **SETTLEMENT WITH ICAG, INC.**
18              Plaintiff,

19         v.

20 MRI INTERNATIONAL, INC., EDWIN J.
   FUJINAGA, JUNZO SUZUKI, PAUL MUSASHI
21 SUZUKI, LVT, INC., dba STERLING ESCROW,
   and DOES 1-500,
22
               Defendants.
23

24

25

26

27

28

4852-9404-7062.1                    1

# TABLE OF CONTENTS

NOTICE OF MOTION………………………………………………………...…..….…..………2

MEMORANDUM OF POINTS AND AUTHORITIES……………………………………3

   I.      INTRODUCTION………………………………………………………………3

   II.     SUMMARY OF THE CASE…………………………………………….….…..…..…3

   III.    SUMMARY OF THE PROPOSED SETTLEMENT…………………………...…….5

       A.  Settlement Negotiations with ICAG………………………………………5

       B.  Settlement Payments and Additional Consideration……..……………………..…..6

       C.  Certification of the Class………………………………………………7

       D.  Release of All Claims Against the Settling Defendants and
           Reservation of Rights as to Remaining Defendants……………………………...7

       E.  Attorneys' Fees and Costs……………………………………………7

   IV.    LEGAL ARGUMENTS…....……………………….....………………………7

       A.  Class Action Settlement Procedures………………………………………7

       B.  Standards for Preliminary Settlement Approval…………………………………8

       C.  The Proposed Settlements Are Within the Range of Reasonableness………………………9

   V.     PROPOSED PLAN OF NOTICE AND
         APPOINTMENT OF NOTICE ADMINISTRATOR……………………………10

   VI.    APPOINTMENT OF CLAIMS ADMINISTRATOR………………………………...…11

   VII.   DEFERRMENT OF PLAN OF ALLOCATIONS…………………………………11

   VIII.  ATTORNEYS' FEES AND COSTS………………………………………12

   IX.    THE COURT SHOULD SET A FINAL APPROVAL HEARING……………………12

   X.     CONCLUSION……………………………………………………….………13

# TABLE OF AUTHORITIES

*__Cases__*                                                                                                    *__Page(s)__*

*Amchem Prods. Inc. v. Windsor*,
    521 U.S. 591 (1997)…………………………………..……………..10

*Byrd v. Civil Serv. Comm'n*,
    459 U.S. 1217 (1983)……..……………………………………………9

*Churchill Village, LLC v. General Elec.*,
    361 F.3d 566 (9th Cir. 2004)……………………………………………8

*In re Citric Acid Antitrust Litig.*,
    145 F. Supp. 2d 1152 (N.D. Cal. 2001)……………………………………...12

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992)……………………………………………..8, 9

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1988)…………………………………………...9

*Mendoza v. United States*,
    623 F.2d 1338 (9th Cir. 1980)……………………………………………11

*In re NASDAQ Market Makers Antitrust Litig.*,
    176 F.R.D. 99 (S.D.N.Y. 1997)……………………………………….…8

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982)………………………………………...…9

*In re Oracle Sec. Litig.*,
    1994 U.S. Dist. LEXIS 21593, at *3 (N.D. Cal. June 18, 1994)……………………………12

*In re Pacific Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995)………………………………………………...8

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976)……………………………………………8

*__Statutes and Other Authority__*                                                              *__Page(s)__*

Fed. R. Civ. P. 23 ………………………………………………………*passim*

*Newberg on Class Actions* §§ 11.22, et seq. (4th ed. 2002)………………………………8, 9, 10

## NOTICE OF MOTION

**PLEASE TAKE NOTICE THAT** Plaintiffs Shige Takiguchi, et. al. hereby move pursuant to Federal Rule of Civil Procedure 23(e) for entry of an Order:

1.       Preliminarily approving the settlement agreement reached with ICAG, Inc.

2.       Directing distribution of notice of the Settlements to the class;

3.       Appointing the MRI Higaibengodan as the notice administrator;

4.       Appointing Heffler Claims Group as the claims administrator; and

5.       Scheduling a hearing for final approval of the Settlements.

This motion is made on the grounds that the Settlement is the product of arm's length, good-faith negotiations, and that the Settlemens should be preliminarily approved, because it is fair, reasonable and adequate.

This motion is based on this Notice, the Memorandum of Points and Authorities, the Declaration of Robert W. Cohen, argument of counsel, and all papers and records on file in this matter.

Dated: November 22, 2017

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP

By:      /s/ James Gibbons
         JAMES E. GIBBONS
         Attorneys for Plaintiffs

LAW OFFICES OF ROBERT W. COHEN, APC

By:      /s/ Robert W. Cohen
         ROBERT W. COHEN
         MARIKO TAENAKA
         Attorneys for Plaintiffs

4852-9404-7062.1

2

NOTICE OF MOTION AND MOTION FOR PRELIMINARY SETTLEMENT APPROVAL WITH ICAG, INC.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

By this motion, Plaintiffs Shige Takiguchi, et al. ("Plaintiffs") and the Class seek preliminary approval of their proposed class action settlement with ICAG, Inc. ("ICAG").  Plaintiffs now request preliminary approval of the proposed Settlement Agreement, approval of the proposed Notice of Settlement, the setting of deadlines for Class Members to object and file exclusion requests, and the setting of a date for the Final Approval Hearing and for the hearing of Plaintiff's motion for attorneys' fees and costs.  Capitalized words in this motion have the same meaning as set forth in the Settlement Agreement.

### II.    SUMMARY OF THE CASE

Plaintiffs filed this case on July 5, 2013 (the "Action") against MRI International, Inc. ("MRI"), its three principal operators, and the escrow company entrusted with plaintiffs' investments, alleging defendants orchestrated a Ponzi scheme that defrauded 8,700 investors, all Japanese residents, of $1.3 billion.  A parallel action was also initiated by the U.S. Securities and Exchange Commission against MRI and Edwin Fujinaga for securities violations, *Securities and Exchange Commission v. Edwin Fujinaga, et al.,* USDC Nevada Case No. 2:13-cv-1658-JCM-CWH ("the SEC Action").  The SEC obtained a judgment in the amount of $564,359,364.08 against MRI and Fujinaga on Janaury 27, 2015, and a court-appointed receiver has since taken custody of all assets owned by MRI and Fujinaga.  On June 2, 2015, Plaintiffs filed a motion to certify the Class.  (Dkt. 255.)  On March 21, 2016, the Court certified the Class and appointed Law Offices of Robert W. Cohen, APC and Manning & Kass, Ellrod, Ramirez, Trester, LLP as Class Counsel. (Dkt. 404.)  On May 5, 2016, the parties stipulated to modify the Class Certification Order to make the class definition consistent with the operative complaint.  (Dkt. 425.)  On May 6, 2016, the Court granted the stipulation and the class definition was modified.  (Dkt. 426.)  Pursuant to the Class Certification Order, the Class is now defined as:

> The MRI Investor Class consisting of: all persons who were MRI investors and who were injured because of the defendants' alleged illegal Ponzi scheme and actions from July 5, 2008 through July 5, 2013. Excluded from the class are the defendants, their employees, their family members and their affiliates, and the following 26 individuals who are plaintiffs in the pending litigation against the defendants in Japan: (1)

4852-9404-7062.1

3

NOTICE OF MOTION AND MOTION FOR PRELIMINARY SETTLEMENT APPROVAL WITH ICAG, INC.

Tomoyasu Kojima; (2) Keiko Amaya; (3) Masakazu Sekihara; (4) Chiri Satou; (5) Meiko Murakami; (6) Masayoshi Tsutsumi; (7) Yumiko Ishiguro; (8) Reiko Suzuki; (9) Hiroji Sumita; (10) Eiko Uchiyama; (11) Hideyo Uchiyama; (12) Youzou Shiki; (13) Naoki Nagasawa; (14) Noboru Yokoyama; (15) Masami Segawa; (16) Fumiko Takagi; (17) Kumiko Kaita; (18) Fumi Kobayashi; (19) Ikuko Miyazaki; (20) Hina Nagase; (21) Akio Iwama; (22) Kouji Kishida; (23) Eri Kishida; (24) Nomai Nii; (25) Youko Miyahara; and (26) Tsukiko Kurano.

After the Court granted approval of the Stipulation Regarding Class Notice on May 9, 2016 (Dkt. 429), Notice of Class Certification was mailed on June 17, 2016. 8,759 notices were sent to Class Members. Of those 8,759 notices, 664 were returned undeliverable. An address search was performed and 290 new addresses were identified. Accordingly, 290 Class Notices were re-mailed to the new addresses. There are a total of 372 Class Members for whom no new address can be found. The Notice of Class Certification was also published in the Saneki Shinbun, a financial newspaper with nationwide circulation in Japan. There were 34 exclusion requests.

Plaintiffs engaged in extensive discovery and motion practice throughout the litigation. From July 5, 2013 to the present, Plaintiffs served multiple sets of discovery on Defendants and served over 20 third-party subpoenas, resulting in the production of nearly one million pages of documents, all of which were reviewed. Plaintiffs also subpoenaed documents from the U.S. Securities and Exchange Commission. There were also over twenty depositions taken, including the depositions of Junzo and Paul Suzuki, which were taken at the U.S. Embassy in Tokyo, and the deposition of the Suzukis' long-time family lawyers, which took place in Hawaii. From the production of thousands of pages by the Suzukis and the Suzukis' family lawyer in Hawaii, plaintiffs learned of other parties who were either directly involved in MRI's Ponzi scheme or received commissions that could be traced back to MRI's Ponzi scheme. Through discovery, Plaintiffs learned that ICAG was an entity owned and operated by Richard Shintaku, who died in 2010 but was one of the chief operators of MRI, working closely with Defendants Edwin Fujinaga, Junzo Suzuki and Paul Suzuki. Plaintiffs contend that Mr. Shintaku directed MRI to pay tens of millions of dollars of commissions on his behalf to ICAG. Therefore, on August 24, 2016, Plaintiffs sought leave to amend the Complaint to assert fraudulent transfer, constructive trust and unjust enrichment against ten new defendants, including ICAG. (Dkt. 461). On September 28, 2016, the Court granted the motion and Plaintiffs filed their Fifth Amended Complaint. (Dkt. 480-481.) On December

1   29, 2016 ICAG was served with process, and appeared in the action on January 18, 2017.  (Dkt. 595.)

2          Following its appearance in the action, Plaintiffs served several sets of written discovery, and

3   subpoenaed thousands of pages of documents from ICAG's accountant Lyle Mortensen, as well as

4   thousands of pages of bank statements for ICAG and its affiliates from Bank of America.  Plaintiffs also

5   took the deposition of Cheryl Shintaku, current president and sole shareholder of ICAG; Tiffany

6   Kalahiki, current treasurer of ICAG; Julia Shintaku, current secretary of ICAG; and Mr. Mortensen.

7          On June 9, 2017 ICAG filed a motion to preclude evidence and grant judgment pursuant to Rule

8   37(c) (Dkt. 703), which was denied by the Court on July 24, 2017 (Dkt. 709).  On October 20, 2017

9   Plaintiffs and ICAG stipulated to certification of the Class as to ICAG (Dkt. 741), which was granted the

10  same day.  (Dkt. 742.)

11  **III.     SUMMARY OF THE PROPOSED SETTLEMENT**

12         **A.     Settlement Negotiations with ICAG**

13         Prior to entering into settlement negotiations, Plaintiffs and ICAG conducted extensive discovery.

14  Although the documents produced during discovery evidence that Mr. Shintaku and ICAG received

15  approximately $48 million in commissions from MRI, it was clear that little of that money still remains.

16  Mr. Shintaku appears to have invested millions in numerous business ventures, such as entertainment

17  companies, media companies, and technology companies, the majority of which ultimately went bankrupt

18  or became defunct.  According to ICAG's accountant Mr. Mortensen, who also provided tax services for

19  Mr. Shintaku's personal and business interests, none of Mr. Shintaku's investments were profitable, and

20  he also testified at his deposition that ICAG lost millions of dollars each year as a result of its

21  unsuccessful investments.

22         Mr. Shintaku is survived by his wife, his sole heir, and his daughters Julia Shintaku and Tiffany

23  Kalahiki.  All three were also deposed, and they all deny having any knowledge of Mr. Shintaku's

24  business dealings with MRI or ICAG, and were not even aware what type of business Mr. Shintaku was

25  engaged in.  Cheryl Shintaku is the sole shareholder and president of ICAG, but since Mr. Shintaku's

26  death, ICAG has not conducted any business.  Cheryl Shintaku and her daughters are not personally

27  named in the lawsuit, and even if liability could be extended to them personally, there is no reason to

28  believe thay are possessed of assets sufficient to pay a significant judgment.  (Cheryl Shintaku was

always a housewife, Julia Shintaku is an esthetician, and Tiffany Kalahiki is an elementary school teacher.)

The only assets remaining in ICAG's name include four bank accounts totalling $339,710.54 and an account receivable in the amount of $150,000 owed by Premier Entertainment Services International, Inc. ("Premier"), a product placement company in California that Mr. Shintaku was involved in prior to his death. ICAG also owes approximately $80,000 in unpaid attorneys' fees to its prior and current counsel.

ICAG also contends that Plaintiffs are barred by the statute of limitations from asserting their claims, and has prepared a motion for summary judgment on those grounds. Although Plaintiffs do not believe that the statute of limitations bars their claims, Plaintiffs acknowledge the legal arguments in favor of ICAG's position.

For these reasons, it is in the best interest of both parties to enter into the proposed settlement. At all times, the Parties' settlement negotiations were adversarial, non-collusive and arms' length.

### B.     Settlement Payments and Additional Consideration

Pursuant to the Settlement Agreement, ICAG will provide the following consideration:

- Cash payments totalling $265,000;
- An assignment of accounts receivable in the amount of $150,000 owed by Premier Entertainment Services International, Inc. to ICAG; and
- An assignment by Cheryl Shintaku of the 15% interest in HMC Service Center, LLC that she inherited from Richard Shintaku.

Premier's Chief Financial Officer, Lyle Mortensen (the same individual who is ICAG's accountant) acknowledges the debt in Premier's financial records. However, during Mr. Mortensen's deposition, he represented that Premier is not in a financial position to repay the entirety of that debt. It is therefore unclear how much of this receivable Plaintiffs will be able to collect. Plaintiffs will undertake collection efforts and seek court approval in the event they believe it is necessary to accept an amount lesser than the entire account receivable amount actually owed.

With respect to the 15% interest in HMC Service Center, LLC, which is the only asset owned by the LLC, this asset has already been seized and sold by the receiver in the SEC Action. *See SEC v.*

NOTICE OF MOTION AND MOTION FOR PRELIMINARY SETTLEMENT APPROVAL WITH ICAG, INC.

*Fujinaga, et al.,* USDC of Nevada Case No. 2:13-cv-1658, Dkt. 326. The property was sold for $7,036,888.91, and the receiver set aside 15% of the net proceeds from the sale. The receiver, however, has taken the position that Mr. Shintaku never provided consideration for his 15% interest and therefore never had a legitimate membership interest. The receiver has indicated to Plaintiffs that he disputes the legitimacy of Mrs. Shintaku's assignment and Plaintiffs' claim against the 15% interest.

**C.    Certification of the Class**

The Class has already been certified as to ICAG pursuant to stipulation.

**D.    Release of All Claims against the Settling Defendants and Reservation of Rights as to the Remaining Defendants**.

In exchange for the Settling Defendants' monetary and cooperation consideration, upon entry of a final judgment approving the proposed settlement, plaintiffs will release ICAG, Cheryl Shintaku, Julia Shintaku, Tiffany Shintaku and any entity or trust affiliated with ICAG and Richard Shintaku, of all claims related to the alleged conduct giving rise to this litigation. The settlement preserves Plaintiffs' right to litigate against the Non-Settling Defendants for the entire amount of Plaintiffs' damages.

**E.    Attorneys' Fees and Costs.**

The settlement recognizes that Class Counsel will seek attorneys' fees and reimbursement of costs and expenses incurred in the prosecution of this action. Pursuant to the Settlement Agreement, Class Counsel will look solely to this settlement for satisfaction of such fees and costs. Class Counsel will move the Court for an award of attorneys' fees and costs not to exceed 25% of the Settlement Fund.

Therefore, Class Counsel will request payment of $66,250, which is 25% of the cash payment of $265,000. Additionally, Class Counsel will ask for up to 25% of the amount collected from Premier Entertainment Services International, Inc., but no more than $37,500 and up to 25% of the amount collected from the 15% interest in HMC Service Center, LLC, but no more than $300,000. In no event will Class Counsel request attorneys' fees of more than $403,750.

**V.    LEGAL ARGUMENT**

**A.    Class Action Settlement Procedure**

A class action may not be dismissed, compromised, or settled without the approval of the Court. Judicial proceedings under Federal Rule of Civil Procedure 23 have led to a defined procedure and

4852-9404-7062.1

7

NOTICE OF MOTION AND MOTION FOR PRELIMINARY SETTLEMENT APPROVAL WITH ICAG, INC.

specific criteria for approval of class action settlements. The Rule 23(e) settlement approval procedure describes three distinct steps:

1.      Preliminary approval of the proposed settlement;

2.      Disseminating notice of the settlement to all affected class members; and

3.      A formal fairness hearing, also called the final approval hearing, at which class members may be heard regarding the settlement, and at which counsel may introduce evidence and present argument concerning the fairness, adequacy, and reasonableness of the settlement.

This procedure safeguards class members' procedural due process rights and enables the Court to fulfill its role as the guardian of class interests. *See* 4 *Newberg on Class Actions* §§ 11.22, et seq. (4th ed. 2002) ("*Newberg*") [describing class action settlement procedure].

By this Motion, the parties request that the Court take the first step in the settlement approval process and preliminarily approve the proposed Settlement.

### B.      Standards For Preliminary Settlement Approval

Rule 23(e) requires court approval of any settlement of claims brought on a class basis. "[T]here is an overriding public interest in settling and quieting litigation . . . particularly . . . in class action suits[.]" *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also Churchill Village, LLC v. General Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); and *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

The purpose of the Court's preliminary evaluation of the proposed settlement is to determine whether it is within "the range of reasonableness," and thus whether notice to the Class of the terms and conditions of the settlement, and the scheduling of a formal fairness hearing, are worthwhile. Preliminary approval should be granted where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval*." In re NASDAQ Market Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997). Application of these factors here supports an order granting the motion for preliminary approval.

The approval of a proposed settlement of a class action is a matter of discretion for the trial court. *Churchill Village, L.L.C.*, *supra*, 361 F.3d at 575.  In exercising that discretion, however, courts

recognize that as a matter of sound policy, settlements of disputed claims are encouraged and a settlement approval hearing should "not be turned into a trial or rehearsal for trial on the merits." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982), *cert. denied sub nom. Byrd v. Civil Serv. Comm'n*, 459 U.S. 1217 (1983). Furthermore, courts must give "proper deference" to the settlement agreement, because "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1988) (internal quotations omitted).

To grant preliminary approval of these proposed Settlements, the Court need only find that they fall within "the range of reasonableness." *Newberg*, § 11.25. *The Manual for Complex Litigation (Fourth)* (2004) ("*Manual*") characterizes the preliminary approval stage as an "initial evaluation" of the fairness of the proposed settlement made by the court on the basis of written submissions and informal presentation from the settling parties. *Manual,* § 21.632. A proposed settlement may be finally approved by the trial court if it is determined to be "fundamentally fair, adequate, and reasonable." *City of Seattle*, *supra*, 955 F.2d at 1276. While consideration of the requirements for final approval is unnecessary at this stage, all of the relevant factors weigh in favor of the settlement proposed here. As shown below, the proposed settlement is fair, reasonable and adequate. Therefore, the Court should allow notice of them to be disseminated to the Class.

### C.    The Proposed Settlement Is Within The Range Of Reasonableness

Plaintiffs' proposed settlement meets the standards for preliminary approval. First, the settlement is entitled to "an initial presumption of fairness" because they are the result of arm's-length negotiations among experienced counsel. *Newberg*, § 11.41. Second, the consideration of $265,000, the assignment of interest in the $150,000 accounts receivable, and the 15% in HMC Service Center, LLC is substantial, particularly in light of the fact that the ICAG has no other assets, and that Cheryl Shintaku, while she is not personally named in the lawsuit, is contributing to the settlement. The proposed settlement is, therefore, fair, reasonable, and adequate.

NOTICE OF MOTION AND MOTION FOR PRELIMINARY SETTLEMENT APPROVAL WITH ICAG, INC.

## VI.   PROPOSED PLAN OF NOTICE AND APPOINTMENT OF NOTICE ADMINISTRATOR

Rule 23(e)(1) states that, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." Notice of a proposed settlement must inform class members of the following: (1) the nature of the pending litigation; (2) the general terms of the proposed settlement; (3) that complete information is available from the court files; and (4) that any class member may appear and be heard at the fairness hearing. *See Newberg*, § 8.32.  The notice must also indicate an opportunity to opt-out, that the judgment will bind all class counsel who do not opt-out, and that any member who does not opt-out may appear through counsel.  Fed. R. Civ. P. 23(c)(2)(B).

The form of notice is "adequate if it may be understood by the average class member." *Newberg*, § 11.53.  Notice to the class must be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Amchem Prods. Inc. v. Windsor,* 521 U.S. 591, 617 (1997).  Plaintiffs sent notice of the class certification to the class members in June 2016, and only 372 were returned undeliverable for which no new addresses can be found.  In addition, Plaintiffs will also publish the notice of settlement with the National Consumer Affairs Center of Japan's website (www.kokusen.go.jp).

As was the case in the LVT, Inc. settlement, Plaintiffs again propose that the attorney group representing the MRI victims in Japan ("MRI Higaibengodan") be approved as the Notice Administrator to provide the Class with the Notice of Settlement and manage the Requests for Exclusion.  Plaintiffs further propose that the following notice program be adopted and approved by the Court: (1) direct that the cover letter and notice be mailed to each class member; (2) the posting of the notice and settlement agreement on the website of the MRI Higaibengodan; and (3) posting the short form notice on the National Consumer Affairs Center of Japan's website (www.kokusen.go.jp).  The National Consumer Affairs Center of Japan is a government agency that is regularly accessed by Japanese citizens as a source of information for consumer issues, and has a larger readership than any nationwide newspaper publication.  The Notice and Settlement Agreement will be available on the MRI Higaibengodan's website in both English and in Japanese.

The proposed notice provides the definition of the Class, describes the nature of the action,

explains the procedures for making comments and objections, and explains how to submit a Request for Exclusion. The notice describes the terms of the Settlements with ICAG, informs Class members about the payment of Plaintiffs' attorneys' fees and costs, and advises the Class that the funds will be distributed at a future time to be determined. The notice also provides specifics regarding the date, time, and place of the final approval hearing, and informs the Class that they may enter an appearance through counsel. The notice also informs Class members how to exercise their rights and make informed decisions regarding the proposed settlement, and tells them that if they do not opt out, the judgment will be binding upon them. The information set forth in the proposed notice adequately informs the Class about the proposed settlement and their rights. In fact, courts have approved notices even when they have provided only general information about a settlement. *See*, *e.g.*, *Mendoza v. United States*, 623 F.2d 1338, 1351 (9th Cir. 1980) ("very general description of the proposed settlement" satisfies standards).

Moreover, the Court has already previously approved the same notice program in granting preliminary approval and final approval of Plaintiffs' settlement with ICAG finding that the proposed notice program complied with Rule 23(e)(1).

Class Members will have 52 days from the mailing of the notice to request to be excluded from the Settlement. Any Class Member who wishes to be excluded from the Settlement Class must send a written Request for Exclusion to the Notice Administrator on or before the deadline.

## VII. APPOINTMENT OF CLAIMS ADMINISTRATOR

Plaintiffs also proposes the appointment of Heffler Claims Group as the Claims Administrator. The Claims Administrator shall be responsible for holding and managing the Net Settlement Funds until the funds are distributed upon the final resolution of the case. At the resolution of the case or, at any time earlier with Court approval, the Claims Administrator shall also be responsible for processing the claims of Class Members and distributing funds to Class Members pursuant to the Plan of Allocation approved by the Court. Moreover, the Court has already appointed Heffler Claims Group as the Claims Administrator in the settlement with LVT, Inc., and the appointment of the same claims administrator is appropriate.

## VIII. DEFERRMENT OF PLAN OF ALLOCATION AND DISTRIBUTION

Class Counsel believe that it is in the best interest of the Settlement Class to defer the distribution

1  of the Net Settlement Fund until the resolution of the entire Action.  Class Counsel anticipate that

2  additional funds may be added to the Settlement Fund in the future from recoveries from other

3  defendants which will require distribution.  Class Counsel represent that, because all Settlement Class

4  Members are residents of Japan, piecemeal distribution of the proceeds of multiple settlements and/or a

5  judgment in this Action would require numerous, costly international wire transfers.  The Parties

6  therefore agree that the Settlement Funds will remain held by the Claims Administrator until final

7  resolution of the entire Action.

8  Accordingly, Plaintiffs respectfully request that they be allowed to defer presentment of a plan of

9  allocation until final resolution of the case or upon motion by Plaintiffs at a later time.  However, any

10  plan of allocation that will be presented to the Court for approval will be "fair, reasonable and adequate"

11  and will reimburse the class members according to their injuries.  *See In re Citric Acid Antitrust Litig.*,

12  145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001); *see also In re Oracle Sec. Litig.*, 1994 U.S. Dist. LEXIS

13  21593, at *3 (N.D. Cal. June 18, 1994) ("A plan of allocation that reimburses class members based on the

14  extent of their injuries is generally reasonable").

15  **X.    ATTORNEYS' FEES AND COSTS**

16  Before the filing of the motion for final approval, Class Counsel intends to move the Court for an

17  order authorizing payment to Class Counsel for attorneys' fees and costs of up to 25% of the entire

18  amount actually collected from the settlement, but not to exceed $403,750.  Defendants have agreed that

19  they will not oppose an award of attorneys' fees and costs to Class Counsel.

20  **XI.    THE COURT SHOULD SET A FINAL APPROVAL HEARING SCHEDULE**

21  The last step in the settlement approval process is the final approval hearing, at which the Court

22  may hear all evidence and argument necessary to evaluate the proposed settlement.  At that hearing,

23  proponents of the Settlements may explain and describe their terms and conditions and argue in support

24  of approval, and members of the Class or their counsel may be heard in support of or in opposition to the

25  Settlements.  Plaintiffs propose the following schedule for final approval of the Settlements:

26

27

28

NOTICE OF MOTION AND MOTION FOR PRELIMINARY SETTLEMENT APPROVAL WITH ICAG, INC.

| Event | Date |
|---|---|
| Notice of Class Action Settlement to Be Mailed and Posted on Internet | Within 60 days of Preliminary Approval Order |
| Motion for Attorneys' Fees and Costs Filed by Class Counsel | To be completed 31 days from Notice Date |
| Opt-Out and Objection Deadline | 52 days from Notice Date |
| Deadline for Initial Claim Form | 120 Days from Notice Date |
| Notice Administrator Affidavit of Compliance with Notice Requirements | To be filed 30 days prior to the Final Approval Hearing |
| Motion for Final Approval | To be filed 21 days prior to Final Approval Hearing |
| Responses or Opposition to the Motion for Final Approval | To be filed 14 days prior to Final Approval Hearing |
| Provide List of Persons Who Have Made Requests for Exclusions | To be filed 14 days prior to Final Approval Hearing |
| Replies in Support of Motions for Final Approval, Attorneys' Fees and Costs | To be filed 7 days prior to Final Approval Hearing |
| Final Approval Hearing | _____, 2018 |

## XII.  CONCLUSION

Based on the foregoing, plaintiffs respectfully request that the Court: (1) preliminarily approve the proposed settlement with ICAG; (2) approve the Notice Administrator cover letter, proposed long form and short form notice to be sent to the Class; (3) appoint MRI Higaibengodan as the Notice Administrator; (4) appoint Heffler Claims Group as the Claims Administrator; (5) set a schedule for disseminating notice of settlement to the Class, as well as deadlines to comment on or object to, or be excluded from the settlement; and (6) schedule a hearing pursuant to Rule 23(e) of the Federal Rules of Civil Procedure to determine whether the proposed Settlement is fair, reasonable, and adequate and

1    should be finally approved.

2            Respectfully submitted.

3    Dated:  November 22, 2017                    MANNING & KASS

4                                                 ELLROD, RAMIREZ, TRESTER LLP

5                                                 By:    /s/ James E. Gibbons
                                                        JAMES E. GIBBONS
6

7                                                 LAW OFFICES OF ROBERT W. COHEN

8                                                 A Professional Corporation

9                                                 By:    /s/ Robert W. Cohen
10                                                       ROBERT W. COHEN
                                                        MARIKO TAENAKA
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION FOR PRELIMINARY SETTLEMENT APPROVAL WITH ICAG, INC.

1

2

**<u>CERTIFICATE OF SERVICE</u>**

3

      I hereby certify that on November 22, 2017, a copy of the foregoing document was filed

4

electronically via the Court's CM/ECF system. Pursuant to Local Rule 5.5(h), notice of filing will be

5

served on all parties by operation of the Court's CM/ECF system, and parties may access this filing

6

through the Court's CM/ECF system.

7

8

                               /s/ Mariko Taenaka       .

                                 Mariko Taenaka

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4852-9404-7062.1                             15

NOTICE OF MOTION AND MOTION FOR PRELIMINARY SETTLEMENT APPROVAL WITH ICAG, INC.