JAMES E. GIBBONS (*pro hac vice*), Cal. State Bar No. 130631
**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**
801 South Figueroa Street, 15th Floor
Los Angeles, CA 90017
Tel. (213) 624-6900
jeg@manningllp.com

ROBERT W. COHEN (*pro hac vice*), Cal. State Bar No. 150310
MARIKO TAENAKA (*pro hac vice*)
Cal. State Bar No. 273895
**LAW OFFICES OF ROBERT W. COHEN, A.P.C.**
1901 Avenue of the Stars, Suite 1900
Los Angeles, CA 90067
Tel. (310) 282-7586
rwc@robertwcohenlaw.com
mt@robertwcohenlaw.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| SHIGE TAKIGUCHI, FUMI NONAKA, MITSUAKI TAKITA, TATSURO SAKAI, SHIZUKO ISHIMORI, YUKO NAKAMURA, MASAAKI MORIYA, HATSUNE HATANO, and HIDENAO TAKAMA, Individually and On Behalf of All Others Similarity Situated,<br><br>Plaintiff,<br><br>v.<br><br>MRI INTERNATIONAL, INC., EDWIN J. FUJINAGA, JUNZO SUZUKI, PAUL MUSASHI SUZUKI, LVT, INC., dba STERLING ESCROW, and DOES 1-500,<br><br>Defendants. | Case No.: 2:13-cv-01183-HDM-NJK<br>[*Hon. Howard D. McKibben*]<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH DEFENDANTS (1) JUNZO SUZUKI, (2) PAUL SUZUKI, (3) KEIKO SUZUKI, (4) SUZUKI ENTERPRISES, INC. PROFIT SHARING PLAN, (5) CATHERINE SUZUKI, TRUSTEE OF THE JUNZO SUZUKI IRREVOCABLE TRUST, (6) CATHERINE SUZUKI, TRUSTEE OF THE KEIKO SUZUKI IRREVOCABLE TRUST, (7) CATHERINE SUZUKI, TRUSTEE OF THE JUNZO SUZUKI AND KEIKO SUZUKI IRREVOCABLE TRUST, (8) SUZUKI ENTERPRISES, INC., (9) PUUIKENA INVESTMENTS LLP, (10) CATHERINE SUZUKI IRREVOCABLE TRUST DATED MAY 10, 2013 AND (11) PAUL MUSASHI SUZUKI IRREVOCABLE TRUST DATED MAY 10, 2013** |

# **TABLE OF CONTENTS**

NOTICE OF MOTION..............................................................................................................2

MEMORANDUM OF POINTS AND AUTHORITIES....................................................3

I.    INTRODUCTION...............................................................................................3

II.    SUMMARY OF THE CASE..........................................................................3

III.   SUMMARY OF THE PROPOSED SETTLEMENT....................................5

A.  Settlement Negotiations with Settling Defendants....................................5

B.  Settlement Payments and Additional Consideration..................................6

C.  Certification of the Class.............................................................................6

D.  Release of All Claims Against the Settling Defendants and

Reservation of Rights as to Remaining Defendants..................................7

E.  Attorneys' Fees and Costs..........................................................................7

IV.   LEGAL ARGUMENTS....................................................................................7

A.  Class Action Settlement Procedures..........................................................7

B.  Standards for Preliminary Settlement Approval........................................8

C.  The Proposed Settlements Are Within the Range of Reasonableness........9

D.  It is Reasonable for the Japanese Settlement Proceeds to be
Distributed Only to Bengodan Clients.....................................................10

E.  The Proposed Settlement Class Satisfies Rule 23....................................11

      1.    Rule 23(a)..................................................................................11
          (i)      Numerosity.................................................................11

          (ii)     Commonality..............................................................12

          (iii)    Typicality....................................................................12

          (iv)    Adequacy....................................................................12

      2.    Rule 23(b)(3)..............................................................................13

          (i)      Predominance..............................................................13

(ii)       Superiority…...……………………………………………………13

V.       PROPOSED PLAN OF NOTICE…………….……..……………………………14

VI.      DEFERRMENT OF PLAN OF ALLOCATIONS…………………….……………15

VII.     CLASS MEMBERS WILL NOT BE PROVIDED WITH ANOTHER
         OPPORTUNITY TO OPT-OUT…………………………………………...……16

VIII.    APPOINTMENT OF CLAIMS ADMINISTRATOR……………………………...……16

IX.      ATTORNEYS' FEES AND COSTS…………………………………………17

X.       THE COURT SHOULD SET A FINAL APPROVAL HEARING…………………………17

XI.      CONCLUSION……………………………………..……………………….……..18

1

2

# TABLE OF AUTHORITIES

3

***Cases***                                                                                                              ***Page(s)***

4

*Amchen Prods. Inc. v. Windsor,*
   521 U.S. 591 (1997)……………………………………………………………..11, 14

5

*Byrd v. Civil Serv. Comm'n,*
6   459 U.S. 1217 (1983)………...………………………………………………………8

7

*Churchill Village, LLC v. General Elec.,*
8   361 F.3d 566 (9th Cir. 2004)……………………………………………………8

9

*In re Citric Acid Antitrust Litig.,*
   145 F. Supp. 2d 1152 (N.D. Cal. 2001)………………………………………...15
10

*Class Plaintiffs v. City of Seattle,*
11   955 F.2d 1268 (9th Cir. 1992)……………………………………………….8, 9

12

*Hanlon v. Chrysler Corp.,*
13   150 F.3d 1011 (9th Cir. 1988)……………………………………………...9

14

*Hanon v. Dataproducts Corp.,*
15   976 F.2d 497 (9th Cir. 1992)……………………………………………...12

16

*Mendoza v. United States,*
   623 F.2d 1338 (9th Cir. 1980)……………………………………………15
17

*In re Mid-Atlantic Toyota Antitrust Litig.,*
18   564 F. Supp. 1379 (D. Md. 1983)…………………………………………9

19

*In re NASDAQ Market Makers Antitrust Litig.,*
20   176 F.R.D. 99 (S.D.N.Y. 1997)……………………………………………8

21

*Officers for Justice v. Civil Serv. Comm'n,*
22   688 F.2d 615 (9th Cir. 1982)……………………………………………...8, 16

23

*In re Oracle Sec. Litig.,*
   1994 U.S. Dist. LEXIS 21593, at *3 (N.D. Cal. June 18, 1994)…………………15
24

*In re Pacific Enters. Sec. Litig.,*
25   47 F.3d 373 (9th Cir. 1995)……………………………………………….8

26

*Sullivan v. DB Investments, Inc., et al.,*
27   667 F.3d 273 (3d Cir. 2011)……………………………………………....11

28

*Wal-Mart Stores, Inc. v. Dukes,*

U.S. 131 S.Ct. 2541 (2011)…………………………………………………………………………12

***Cases***                                                                                   ***Page(s)***

*Wolin v. Jaguar Land Rover North Am., LLC,*
      617 F.3d 1168 (9th Cir. 2010)......................................................................................12

*Van Bronkhorst v. Safeco Corp.,*
      529 F.2d 943 (9th Cir. 1976)…………………………………………………………………8

***Statutes and Other Authority***                                                            ***Page(s)***

Fed. R. Civ. P. 23 …………………………………………………………………………*passim*

*Newberg on Class Actions* §§ 11.22, et seq. (4th ed. 2002)…………………………………8, 9, 14

*The Manual for Complex Litigation (Fourth)* (2004)…………………………….…………9, 11

**PLEASE TAKE NOTICE THAT** Plaintiffs Shige Takiguchi, et. al. hereby move, pursuant to Federal Rule of Civil Procedure 23(e) for entry of an Order:

1.     Certifying a settlement class;

2.     Preliminarily approving the settlement agreement reached with (1) Junzo Suzuki, (2) Paul Suzuki, (3) Keiko Suzuki, (4) the SEI PSP, (5) Catherine Suzuki, trustee of the Junzo Suzuki Irrevocable Trust, (6) Catherine Suzuki, trustee of the Keiko Suzuki Irrevocable Trust, (7) Catherine Suzuki, trustee of the Junzo Suzuki and Keiko Suzuki Irrevocable Trust, (8) Suzuki Enterprises, Inc., (9) Puuikena Investments LLP, (10) Catherine Mai Suzuki, trustee of the Catherine Suzuki Irrevocable Trust dated May 10, 2013, (11) Paul Musashi Suzuki, trustee of the Paul Musashi Suzuki Irrevocable Trust dated May 10, 2013.

3.     Directing distribution of notice of the Settlements to the class;

4.     Appointing the MRI Higaibengodan as the notice administrator;

5.     Appointing Heffler Claims Group as the claims administrator; and

6.     Scheduling a hearing for final approval of the Settlements.

This motion is made on the grounds that the Settlements are the product of arm's length, good-faith negotiations, and that the Settlements should be preliminarily approved, because it is fair, reasonable and adequate.

This motion is based on this Notice, the Memorandum of Points and Authorities, the declaration of Robert W. Cohen, argument of counsel, and all papers and records on file in this matter.

Dated: December 11, 2017                              MANNING & KASS
                                                                        ELLROD, RAMIREZ, TRESTER LLP

                                                                        By:   /s/ James Gibbons
                                                                              JAMES E. GIBBONS
                                                                              Attorneys for Plaintiffs

                                                                        LAW OFFICES OF ROBERT W. COHEN, APC

                                                                        By:   /s/ Robert W. Cohen
                                                                              ROBERT W. COHEN
                                                                              MARIKO TAENAKA
                                                                              Attorneys for Plaintiffs

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

By this motion, Plaintiffs Shige Takiguchi, et al. ("Plaintiffs") and the Class seek preliminary approval of their proposed class action settlement with Defendants (1) Junzo Suzuki, (2) Paul Suzuki, (3) Keiko Suzuki, (4) Suzuki Enterprises, Inc. Profit Sharing Plan ("the SEI PSP"), (5) Catherine Suzuki, trustee of the Junzo Suzuki Irrevocable Trust, (6) Catherine Suzuki, trustee of the Keiko Suzuki Irrevocable Trust, (7) Catherine Suzuki, trustee of the Junzo Suzuki and Keiko Suzuki Irrevocable Trust, (8) Suzuki Enterprises, Inc., (9) Puuikena Investments LLP, (10) Catherine Suzuki, trustee of the Catherine Suzuki Irrevocable Trust dated May 10, 2013 and (11) Paul Musashi Suzuki, trustee of the Paul Musashi Suzuki Irrevocable Trust dated May 10, 2013  (collectively "the Settling Defendants"). Plaintiffs now request preliminary approval of the proposed Settlement Agreements, approval of the proposed Notice of Settlement, the setting of deadlines for Class Members to object, and the setting of a date for the Final Approval Hearing and for the hearing of Plaintiff's motion for attorneys' fees and costs to Class Counsel.  Capitalized words in this motion shall have the same meaning as set forth in the Settlement Agreement.

### II.    SUMMARY OF THE CASE

Plaintiffs filed this case on July 5, 2013 (the "Action") against MRI International, Inc., its principal operators -- Edwin Fujinaga, Junzo Suzuki, and Paul Suzuki -- and Sterling Escrow, the escrow company purportedly holding the investors' money in trust.  The Defendants all filed motions to dismiss, and Plaintiffs amended their pleadings on several occasions.  Plaintiffs filed their operative Fifth Amended Complaint on September 29, 2016 (Dkt. 481).

On June 2, 2015, Plaintiffs filed a motion to certify the class.  (Dkt. 255.)  On March 21, 2016, the Court certified the Class.  (Dkt. 404.) The court also appointed Law Offices of Robert W. Cohen, APC and Manning & Kass, Ellrod, Ramirez, Trester, LLP as Class Counsel.  On May 5, 2016, the parties stipulated to modify the Class Certification Order to make the class definition consistent with the operative complaint.  (Dkt. 425.)  On May 6, 2016, the Court granted the stipulation and the class definition was modified.  (Dkt. 426.)  Pursuant to the Class Certification Order, the Class is now defined as:

The MRI Investor Class consisting of: all persons who were MRI investors and who were injured because of the defendants' alleged illegal Ponzi scheme and actions from July 5, 2008 through July 5, 2013. Excluded from the class are the defendants, their employees, their family members and their affiliates, and the following 26 individuals who are plaintiffs in the pending litigation against the defendants in Japan: (1) Tomoyasu Kojima; (2) Keiko Amaya; (3) Masakazu Sekihara; (4) Chiri Satou; (5) Meiko Murakami; (6) Masayoshi Tsutsumi; (7) Yumiko Ishiguro; (8) Reiko Suzuki; (9) Hiroji Sumita; (10) Eiko Uchiyama; (11) Hideyo Uchiyama; (12) Youzou Shiki; (13) Naoki Nagasawa; (14) Noboru Yokoyama; (15) Masami Segawa; (16) Fumiko Takagi; (17) Kumiko Kaita; (18) Fumi Kobayashi; (19) Ikuko Miyazaki; (20) Hina Nagase; (21) Akio Iwama; (22) Kouji Kishida; (23) Eri Kishida; (24) Nomai Nii; (25) Youko Miyahara; and (26) Tsukiko Kurano.

After the Court granted approval of the Stipulation Regarding Class Notice on May 9, 2016 (Dkt. 429), Notice of Class Certification was mailed on June 17, 2016.  8,759 notices were sent to Class Members.  Of those 8,759 notices, 664 were returned undeliverable.  An address search was performed and 290 new addresses were identified.  Accordingly, 290 Class Notices were re-mailed to the new addresses.  There are a total of 372 Class Members for whom no new address can be found.  The Notice of Class Certification was also published in the Saneki Shinbun, a financial newspaper with nationwide circulation in Japan.  There were 33 exclusion requests.

On August 24, 2016, Plaintiffs sought leave to amend the Complaint, to add nine new defendants, affiliated with Junzo and Paul Suzuki: (1) Keiko Suzuki, (2) the SEI PSP, (3) First Hawaiian Bank, trustee of the Junzo Suzuki Irrevocable Trust UAD 07/12/2013, (4) First Hawaiian Bank, trustee of the Keiko Suzuki Irrevocable Trust UAD 07/12/2013, (5) First Hawaiian Bank, trustee of the Junzo Suzuki and Keiko Suzuki Irrevocable Life Insurance U/A DTD 5/1/2008,[1] (6) Suzuki Enterprises, Inc., (7) Puuikena Investments LLP, (8) Catherine Suzuki, trustee of the Catherine Suzuki Irrevocable Trust dated May 10, 2013 and (9) Paul Musashi Suzuki, trustee of the Paul Musashi Suzuki Irrevocable Trust dated May 10, 2013 (Dkt. 461).  On September 28, 2016, the Court granted the motion and Plaintiffs filed their Fifth Amended Complaint (Dkt. 480-481).

The Parties have engaged in extensive discovery over the course of three-and-a -half years,

---

[1]  As of December 6, 2017, Ms. Catherine Suzuki replaced First Hawaiian Bank as the trustee of the (1) Junzo Suzuki Irrevocable Trust UAD 07/12/2013, (2) Keiko Suzuki Irrevocable Trust UAD 07/12/2013, Junzo Suzuki and Keiko Suzuki Irrevocable Life Insurance U/A DTD 5/1/2008.  Ms. Suzuki has accordingly executed the settlement agreement as trustee on behalf of those trusts.

1  related to both class certification and on the merits involving Junzo Suzuki, Paul Suzuki, and their

2  affiliated companies.  From July 5, 2013 to the present, Plaintiffs served multiple sets of discovery on the

3  Defendants in this case and served over 20 third-party subpoenas, resulting in the production of nearly

4  one million pages of documents.  In addition to the written discovery, numerous depositions took place.

5  Defendants deposed eight of the nine representative Plaintiffs.  Plaintiffs also took nine depositions,

6  including the depositions of Junzo Suzuki and Paul Suzuki at the U.S. Embassy in Tokyo, as well as their

7  long-time family attorney Damon Key Leong Kupchak Hastert in Hawaii.

8  **III.    SUMMARY OF THE PROPOSED SETTLEMENT**

9      **A.    Settlement Negotiations with the Settling Defendants**

10     The Parties vigorously litigated this action for over three-and-a half years, and each are intimately

11 aware of the strengths and weaknesses of their case.  Plaintiffs believe that MRI, Fujinaga and the

12 individual Suzuki defendants knowingly perpetrated a Ponzi scheme to defraud investors out of hundreds

13 of millions of dollars.  Plaintiffs further contend that the defendants affiliated with the Suzukis received

14 millions of dollars in commissions from MRI, unjustly enriching them and constituting fraudulent

15 transfers.

16     The Settling Defendants deny that MRI, Fujinaga, and the Suzuki were involved in any wrong-

17 doing and that the Class has been harmed; they maintained that MRI was a legitimately operating

18 business and challenge Plaintiffs' allegation that MRI was a Ponzi scheme.  Additionally, the SEI PSP

19 asserted that the funds maintained in the profit-sharing plan were unrelated to MRI, were sourced from

20 Suzuki Enterprises, Inc.'s legitimate business operations, and that the funds are protected by the United

21 States Employee Retirement Income Security Act of 1974, which precludes creditors from seeking the

22 satisfaction of debts from retirement and pension plans.  Plaintiffs disagree with these legal contentions,

23 but have determined that it is in the best interest of both parties to enter into a settlement.

24     Settlement negotiations with the SEI PSP began in November 2016, with the remaining Settling

25 Defendants joining in the settlement negotiations over the following months.  The parties began

26 exchanging offers informally beginning in February 2017, and participated in a full-day mediation

27 session before Judge Stephen E. Haberfeld of JAMS, Inc. on March 20, 2017, and then participated in a

28 second half-day follow-up mediation session on March 31, 2017.  Thereafter, the Parties continued

settlement discussions on virtually a daily basis, exchanging proposals and counter proposals since March 31, 2017.  The Parties also jointly retained an expert to conduct a valuation of various life insurance policies owned by Junzo Suzuki and Keiko Suzuki and their respective trusts, in an effort to obtain an accurate valuation of the policies for purposes of settlement.  At all times, the Parties' settlement negotiations were adversarial, non-collusive and at arms' length.

**B.**     **Settlement Payments and Additional Consideration**

Pursuant to the Settlement Agreement, the Settling Parties will pay a total of approximately $13,100,000.  (The amount of the settlement is subject to change because part of this amount will be determined by the sale of seven real properties and two interests in timeshares, of which Plaintiffs will receive 62% of the net proceeds.)  As additional consideration, the Settling Parties have warranted that they have disclosed the entirety of their assets, and a promised reasonable cooperation with respect to Plaintiffs' further prosecution of the Action.  Lastly, the parties have agreed to settle the three pending lawsuits in Japan, in connection with the Settling Defendants providing approximately $2.4 Million in assets located in Japan to the plaintiffs in the Japanese lawsuits.  This settlement in Japan is separate and apart from this class action.

**C.**     **Certification of the Class**

The Class has already been certified as to Junzo Suzuki and Paul Suzuki, and is defined as described above.  The Class has not yet been certified as to (1) Keiko Suzuki, (2) the SEI PSP, (3) Catherine Suzuki, trustee of the Junzo Suzuki Irrevocable Trust UAD 07/12/2013, (4) Catherine Suzuki, trustee of the Keiko Suzuki Irrevocable Trust UAD 07/12/2013, (5) Catherine Suzuki, trustee of the Junzo Suzuki and Keiko Suzuki Irrevocable Life Insurance U/A DTD 5/1/2008, (6) Suzuki Enterprises, Inc., (7) Puuikena Investments LLP, (8) Catherine Suzuki, trustee of the Catherine Suzuki Irrevocable Trust dated May 10, 2013 and (9) Paul Musashi Suzuki, trustee of the Paul Musashi Suzuki Irrevocable Trust dated May 10, 2013 ("Uncertified Settling Defendants").  However, pursuant to the Settlement Agreement, the parties agree to stipulate to certification of the Class for settlement purposes only.  The parties request, therefore, that the following Class be certified as to the Uncertified Settling Defendants:

1
2
3
4
5
6
7
8
9

> The MRI Investor Class consisting of: all persons who were MRI investors and who were injured because of the defendants' alleged illegal Ponzi scheme and actions from July 5, 2008 through July 5, 2013. Excluded from the class are the defendants, their employees, their family members and their affiliates, and the following 26 individuals who are plaintiffs in the pending litigation against the defendants in Japan: (1) Tomoyasu Kojima; (2) Keiko Amaya; (3) Masakazu Sekihara; (4) Chiri Satou; (5) Meiko Murakami; (6) Masayoshi Tsutsumi; (7) Yumiko Ishiguro; (8) Reiko Suzuki; (9) Hiroji Sumita; (10) Eiko Uchiyama; (11) Hideyo Uchiyama; (12) Youzou Shiki; (13) Naoki Nagasawa; (14) Noboru Yokoyama; (15) Masami Segawa; (16) Fumiko Takagi; (17) Kumiko Kaita; (18) Fumi Kobayashi; (19) Ikuko Miyazaki; (20) Hina Nagase; (21) Akio Iwama; (22) Kouji Kishida; (23) Eri Kishida; (24) Nomai Nii; (25) Youko Miyahara; and (26) Tsukiko Kurano.

10  This is the same Class that is certified as to Junzo Suzuki and Paul Suzuki.

11      **D.    Release of All Claims against the Settling Defendants and Reservation of**
12          **Rights as to Remaining Defendants**.

13      In exchange for the Settling Defendants' monetary consideration and cooperation, upon entry of a
14  final judgment approving the proposed Settlement, Plaintiffs will release the Settling Defendants of all
15  claims related to the alleged conduct giving rise to this litigation.  The Settlements preserve Plaintiffs'
16  right to litigate against the Non-Settling Defendants for the entire amount of Plaintiffs' damages.

17      **E.    Attorneys' Fees and Costs.**

18      The Settlements recognize that Class Counsel will seek attorneys' fees and reimbursement of
19  costs and expenses incurred in the prosecution of this action.  Pursuant to the Settlements, Class Counsel
20  will look solely to the Settlement Fund for satisfaction of such fees and costs.  Class Counsel will move
21  the Court for an award of attorneys' fees not to exceed $3,275,000 which equals 25% of the estimated
22  Settlement Fund, plus reimbursement of costs not to exceed $200,000.

23  **V.    LEGAL ARGUMENT**

24      **A.    Class Action Settlement Procedure**

25      A class action may not be dismissed, compromised, or settled without the approval of the Court.
26  Judicial proceedings under Federal Rule of Civil Procedure 23 have led to a defined procedure and
27  specific criteria for approval of class action settlements. The Rule 23(e) settlement approval procedure
28  describes three distinct steps:

1.      Preliminary approval of the proposed settlement;

2.      Disseminating notice of the settlement to all affected class members; and

3.      A formal fairness hearing, also called the final approval hearing, at which class members may be heard regarding the settlement, and at which counsel may introduce evidence and present argument concerning the fairness, adequacy, and reasonableness of the settlement.

This procedure safeguards class members' procedural due process rights and enables the Court to fulfill its role as the guardian of class interests. *See Newberg on Class Actions* §§ 11.22, et seq. (4th ed. 2002) ("*Newberg*") [describing class action settlement procedure].

By this Motion, the parties request that the Court take the first step in the settlement approval process and preliminarily approve the proposed Settlement.

### B.      Standards For Preliminary Settlement Approval

Rule 23(e) requires court approval of any settlement of claims brought on a class basis. "[T]here is an overriding public interest in settling and quieting litigation . . . particularly . . . in class action suits[.]" *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also Churchill Village, LLC v. General Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); and *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

The purpose of the Court's preliminary evaluation of the proposed settlement is to determine whether it is within "the range of reasonableness," and thus whether notice to the Class of the terms and conditions of the settlement, and the scheduling of a formal fairness hearing, are worthwhile. Preliminary approval should be granted where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval*." In re NASDAQ Market Makers Antitrust Litig*., 176 F.R.D. 99, 102 (S.D.N.Y. 1997). Application of these factors here supports an order granting the motion for preliminary approval.

The approval of a proposed settlement of a class action is a matter of discretion for the trial court. *Churchill Village, L.L.C.*, *supra*, 361 F.3d at 575.  In exercising that discretion, however, courts recognize that as a matter of sound policy, settlements of disputed claims are encouraged and a settlement approval hearing should "not be turned into a trial or rehearsal for trial on the merits." *Officers for Justice*

*v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982), *cert. denied sub nom. Byrd v. Civil Serv. Comm'n*, 459 U.S. 1217 (1983).  Furthermore, courts must give "proper deference" to the settlement agreement, because "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1988) (internal quotations omitted).

To grant preliminary approval of these proposed Settlements, the Court need only find that they fall within "the range of reasonableness." *Newberg*, § 11.25.  *The Manual for Complex Litigation (Fourth)* (2004) ("*Manual*") characterizes the preliminary approval stage as an "initial evaluation" of the fairness of the proposed settlement made by the court on the basis of written submissions and informal presentation from the settling parties. *Manual,* § 21.632.  A proposed Settlement may be finally approved by the trial court if it is determined to be "fundamentally fair, adequate, and reasonable."  *City of Seattle*, *supra*, 955 F.2d at 1276. While consideration of the requirements for final approval is unnecessary at this stage, all of the relevant factors weigh in favor of the Settlement proposed here. As shown below, the proposed Settlements are fair, reasonable and adequate. Therefore, the Court should allow notice of them to be disseminated to the Class.

**C.    The Proposed Settlements Are Within The Range Of Reasonableness**

Plaintiffs' proposed Settlements meet the standards for preliminary approval.  First, the settlements are entitled to "an initial presumption of fairness" because they are the result of arm's-length negotiations among experienced counsel.  *Newberg*, § 11.41.  Second, the consideration agreed to -- approximately $13.1 Million -- is substantial, particularly in light of the fact that the Settling Defendants only have limited resources, and there are legal disputes as to liability of the individual defendants and whether the assets held by the Settling Defendants are subject to constructive trust or were fraudulently transferred.  Third, the settlement includes other provisions requiring the Suzukis to warrant the accuracy of their financial disclosures, and an agreement that the Settling Defendants will cooperate with Plaintiffs in the on-going Action.  *See In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1386 (D. Md. 1983) [a defendant's agreement to cooperate with plaintiffs "is an appropriate factor for a court to

consider in approving a settlement"].  The proposed Settlements are, therefore, fair, reasonable, and adequate.

### D.    It is Reasonable for the Japanese Settlement Proceeds to be Distributed Only to Bengodan Clients

The proposed Settlement is part of a global settlement of both this class action litigation and the three pending actions in Tokyo District Court against some but not all of the Settling Defendants. Because this proposed Settlement is contingent on a resolution in the Japanese litigation, the Settlement Agreement includes references to the resolution of the Japanese lawsuits.  This Settlement provides that the defendants in the Japanese litigation will transfer assets valued at approximately $2.4 Million in exchange for resolution of the Japanese lawsuits.  As set forth in the Settlement Agreement, the settlement proceeds of the Japanese lawsuits will not be subject to distribution in this Action, and will only be distributed to Class Members who have retained the Bengodan in Japan ("Bengodan Clients"). (There are 8,709 Class Members, and there are 4,935 Bengodan Clients.)   Each Bengodan Client will receive a pro-rata share of the total recovery by the Bengodan.

It is fair and reasonable for the $2.4 Million to be distributed only among the Class Members who are Bengodan Clients.  First, there are 50 individuals ("Bengodan Plaintiffs") who were either excluded or opted-out of this present action solely for the purpose of pursuing the lawsuits in Japan, and those actions are asserted solely on behalf of all of the other Bengodan Clients and do not include MRI investors who have not retained the Bengodan.[2]  Consequently, the 50 Bengodan Plaintiffs cannot submit a final claim form and obtain a distribution from this class action, and will only be compensated through the Japanese settlement.  Second, the risk and costs of continuing with litigation in Japan was substantially less (all of the witnesses have testified and all evidence and briefs have already been submitted) than this class action, and Plaintiffs believe that the likelihood that the Bengodan Plaintiffs would prevail is extremely high.  Nonetheless, the Bengodan Plaintiffs have agreed to participate in the settlement, allowing Settling Defendants to keep some of their Japanese assets in order to reach this

---

[2] Because there is no class action system in the Japanese judicial system, lawsuits are brought by individual plaintiffs on behalf of the 4,985 Bengodan Clients, and any money collected from enforcing the Japanese judgments would have only been distributed among Bengodan Clients and not the entire Class.

1

proposed global resolution.  Moreover, the Bengodan has invested substantial time and resources in

2

litigating the Japanese actions, but will not be compensated through this Action and can only be

3

compensated through the Japanese settlement.  Lastly, the Bengodan Clients would essentially be

4

penalized if the $2.4 Million is also shared amongst Class Members who did not retain the Bengodan,

5

because those Class Members would reap the benefits of the work by the Bengodan, without retaining the

6

Bengodan.

7

### E.  The Proposed Settlement Class Satisfies Rule 23

8

Before granting preliminary approval of a settlement, the Court must determine that the proposed

9

settlement presents a proper class for the settlement purposed.  *See Manual* § 21.632; *Amchen Prods. Inc.*

10

*v. Windsor,* 521 U.S. 591, 620 (1997).  As explained, the settlement class has already been certified as to

11

Junzo Suzuki and Paul Suzuki, but no class has yet been certified as to (1) Keiko Suzuki, (2) SEI PSP, (3)

12

Catherine Suzuki , trustee of the Junzo Suzuki Irrevocable Trust UAD 07/12/2013, (4) Catherine Suzuki ,

13

trustee of the Keiko Suzuki Irrevocable Trust UAD 07/12/2013, (5) Catherine Suzuki, trustee of the

14

Junzo Suzuki and Keiko Suzuki Irrevocable Life Insurance U/A DTD 5/1/2008, (6) Suzuki Enterprises,

15

Inc., (7) Puuikena Investments LLP, (8) Catherine Suzuki, trustee of the Catherine Suzuki Irrevocable

16

Trust dated May 10, 2013 and (9) Paul Musashi Suzuki, trustee of the Paul Musashi Suzuki Irrevocable

17

Trust dated May 10, 2013 ("Uncertified Settling Defendants").

18

Rule 23 governs the issue of class certification, and the same criteria for certification of a class for

19

litigation purposes apply equally to certification for settlement purposes.  *Amchem Prods., supra,* 521

20

U.S. at 620.  There is a "strong presumption in favor of voluntary settlement agreements" that is

21

"especially strong in class actions and other complex cases because they promote the amicable resolution

22

of disputes and lighten the increasing load of litigation faced by the federal courts."  *Sullivan v. DB*

23

*Investments, Inc., et al.*, 667 F.3d 273, 311 (3d Cir. 2011).

24

### 1.  Rule 23(a)

25

Certification is appropriate where the proposed class meets the Rule 23(a) requirements of

26

numerosity, commonality, typicality, and adequacy of representation.

27

#### (i)  Numerosity

28

To show numerosity, the class must be so numerous that joinder of all members individually is

"impracticable." FRCP 23(a)(1).  This Court has already determined that the proposed class, estimated at 8,800 people, is sufficiently numerous to satisfy the numerosity requirement.  (Dkt. 404.)

### (ii)   Commonality

To meet the commonality requirement, common questions of law or fact must exist.  Rule 23(a)(2).  Commonality is established where there is a "common contention" of such a nature that it is capable of class-wide resolution in "one stroke."  *Wal-Mart Stores, Inc. v. Dukes* (2011) U.S. 131 S.Ct. 2541, 2551.  As the Court has already ruled, here, each class member suffered the same injury and the same evidence will be used to prove the existence of a Ponzi scheme, the falsity of the representations, each defendant's role and knowledge in the scheme, and whether the funds held by each defendant are the proceeds of MRI's Ponzi scheme, entitling the class to the assets under the principles of constructive trust, unjust enrichment and fraudulent transfer.  The Plaintiffs allege that, like Junzo and Paul Suzuki, Keiko Suzuki was also a control person and that MRI's entire common course of conduct was attributable to Keiko Suzuki.  Since the Court has already ruled that the commonality requirement has been satisfied as to Junzo Suzuki and Paul Suzuki, it stands to reason that the class should be similarly certified as to Keiko Suzuki.  Similarly, the Court has already determined that there is a common question or law and fact as whether the class is entitled to the assets under the theories of fraudulent transfer, constructive trust and unjust enrichment, meaning that Plaintiffs have also satisfied the commonality requirements as to the remaining Settling Defendants.

### (iii)   Typicality

Typicality is found where other class members have the same or similar injury as the lead plaintiff; where the action is based on conduct which is not unique to the named plaintiff; and where other class members have been injured by the same course of conduct as the named plaintiff.  *Wolin v. Jaguar Land Rover North Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010)*, Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  Plaintiffs and the class members all suffered from the same injury, namely, the loss of their investments as a result of defendants' operation of a Ponzi scheme.  The Court has already found that Plaintiffs have met the typicality requirement.

### (iv)   Adequacy

Again, the Court has already determined that Yuko Nakamura is an adequate class representative

because her claims are typical, her interests are not antagonistic to the class, and she has suffered a substantial loss.  Further, the Court has also already determined that Class Counsel has vigorously prosecuted this action and can adequately represent the proposed class.

**2.      Rule 23(b)(3)**

**(i)      Predominance**

Certification of a class action also requires a showing that "questions of law and fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

This Court has already held that Plaintiffs have shown that common issues predominate as to all twelve causes of action, including the causes of action for § 10(b) and Rule 10B-5 claims as to Junzo and Paul Suzuki.  The Court found that because Plaintiffs allege that the Defendants repeatedly made the same core misrepresentations throughout the class period, there was no meaningful difference between statements made by Junzo and Paul Suzuki to individual investors to justify requiring individual proof. Since the allegations set forth against Keiko Suzuki parallel those made against Junzo and Paul Suzuki, there is no reason that individual issues should not predominate as to Keiko Suzuki.

The Court also held that Plaintiffs have satisfied predominance as to unjust enrichment, constructive trust and fraudulent transfer, which are the three causes of actions asserted against the Uncertified Settling Defendants.  For the unjust enrichment cause of action, the Court has already ruled that whether the defendants' receipt and retention of money is an issue that may be answered on a class-wide basis.  (Dkt. 404 at p. 23.)  With respect to the constructive trust cause of action, the Court found that "no individual questions exist to preclude class certification."  (Dkt. 404 at p. 26.)  For the fraudulent transfer cause of action, the Court found that "the defendants do not claim that individual issues predominate," and found that the claim is proper for class treatment.  (Dkt. 404 at p. 27.)

**(ii)      Superiority**

Lastly, in order for a class to be certified, the Court must find that the class action must be superior to other available methods for fairly and efficiently adjudicating the controversy.  Fed. R. Civ. P. 23(b)(3).  The Court has already held that a class action is superior to individual litigation, because

requiring individual plaintiffs to travel from Japan to Nevada to prosecute their case would be significantly burdensome, the majority of the assets held by the various Defendants are located in Nevada and the United States, and requiring individuals to each file their own case would be extremely burdensome to the Court.  (Dkt. 404 at p. 29.)  For the same reasons, a class action is a superior method with respect to the Uncertified Settling Defendants.

The parties submit, therefore, that class certification as to the Uncertified Settling Defendants is now appropriate.

## V.    PROPOSED PLAN OF NOTICE

Rule 23(e)(1) states that, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise."  Notice of a proposed settlement must inform class members of the following: (1) the nature of the pending litigation; (2) the general terms of the proposed settlement; (3) that complete information is available from the court files; and (4) that any class member may appear and be heard at the fairness hearing.  See *Newberg*, § 8.32.  The notice must also indicate an opportunity to opt-out, that the judgment will bind all class counsel who do not opt-out, and that any member who does not opt-out may appear through counsel.  Fed. R. Civ. P. 23(c)(2)(B).

The form of notice is "adequate if it may be understood by the average class member."  *Newberg*, § 11.53.  Notice to the class must be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  *Amchem Prods.*, *supra*, 521 U.S. at 617.  Plaintiffs sent notice of the class certification to the class members in June 2016, and only 372 were returned undeliverable for which no new addresses can be found.  In addition, plaintiffs will also publish the notice of class certification with the Sankei Shinbun, a financial newspaper with nationwide circulation.

Plaintiffs propose that the attorney group representing the MRI victims in Japan ("MRI Bengodan") be approved as the Notice Administrator to provide the Class with the Notice of Settlement.  Plaintiffs further propose that the following notice program be adopted and approved by the Court: (1) direct that the cover letter and Notice be mailed to each class member; (2) the posting of the Notice on the website of the MRI Bengodan; and (3) posting the short form notice with the National Consumer

Affairs Center of Japan's website (www.kokusen.go.jp).  The National Consumer Affairs Center of Japan is a government agency that is regularly accessed by Japanese citizens as a source of information for consumer issues, and has a larger readership than nationwide newspaper publications.  The Notice and Settlement Agreement will all be available on the MRI Bengodan's website in both English and in Japanese.

The Proposed Notice of Settlement provides the definition of the Class, describes the nature of the action, explains the procedures for making comments and objection.  Class Members will have fifty-two days (52) days from the mailing of the Notice to object to the Settlement.  The Class Notice describes the terms of the Settlements with the Settling Defendants, informs Class members about the payment of Plaintiffs' attorneys' fees and costs, and advises Class members that the funds will be distributed at a future time to be determined.  The Class Notice provides specifics regarding the date, time, and place of the final approval hearing, and informs class members that they may enter an appearance through counsel.  The Class Notice also informs Class members how to exercise their rights and make informed decisions regarding the proposed Settlements.  Courts have approved Class Notice even when they have provided only general information about a settlement. *See*, *e.g.*, *Mendoza v. United States*, 623 F.2d 1338, 1351 (9th Cir. 1980) ("very general description of the proposed settlement" satisfies standards).

## VI.   DEFERMENT OF PLAN OF ALLOCATION

Class Counsel believe that it is in the best interest of the Settlement Class to defer the distribution of the Net Settlement Fund until the resolution of the entire Action.  Class Counsel anticipate that additional funds may be added to the Settlement Fund in the future from recoveries from other defendants which will require distribution.  Class Counsel represent that, because all Settlement Class Members are residents of Japan, piecemeal distribution of the proceeds of multiple settlements and/or a judgment in this Action would require numerous, costly international wire transfers.  The Parties therefore agree that the Settlement Funds will remain held by the Claims Administrator until final resolution of the entire Action.

Plaintiffs respectfully request that they be allowed to defer presentment of a plan of allocation until final resolution of the case or upon motion by plaintiffs at a later time.  The plan of allocation that will be presented to the Court for approval will be "fair, reasonable and adequate" and will reimburse the

class members according to their injuries. *See In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001); *see also, In re Oracle Sec. Litig.*, 1994 U.S. Dist. LEXIS 21593, at *3 (N.D. Cal. June 18, 1994) ("A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable.")

## VII.   CLASS MEMBERS WILL NOT BE PROVIDED WITH ANOTHER OPPORTUNITY TO OPT OUT

This proposed settlement is contingent upon the Court's order precluding further opt out provisions. While Class Members will have an opportunity to object to this proposed settlement, there will not be a second opportunity for Class Members to opt-out of this settlement because Class Members have previously been afforded the opportunity to opt-out of the class. Where a class has already been certified, Rule 23(b)(3) does not require that class members be provided with a second opportunity to opt out at the settlement stage, and Rule 23(e)(4) gives the court discretion to approve a settlement without a second opportunity to opt out. *See Officers for Justice v. Civil Serv. Comm'n*, *supra,* 688 F.2d at 623.

On June 17, 2016, the Court-approved Notice of Class Certification was mailed to Class Members. The Class Notice specifically stated that if a Class Member did not opt-out, then "you will be legally bound by all of the Orders the Court issues and judgments the Court makes in this class action." *See Section 12, Dkt. 410-1*. The opt-opt deadline was September 15, 2016, and there were 34 opt-out requests.

Because the Court provided Class Members with individual notices, notifying them of their ability to opt-out, Class Members have been provided with an adequate opportunity to opt out. Thus, the Court is not required to provide a second opportunity to opt-out at this settlement stage. Additionally, this Court preliminarily approved Plaintiffs' settlement with LVT, Inc., dba Sterling Escrow, and notice of the settlement was mailed to Class Members on July 24, 2017. The deadline to submit objections or to request exclusion was September 14, 2017, but the Notice Administrator has not received a single request to opt-out of the Sterling Escrow settlement, nor have they received any objections.

## VIII.   APPOINTMENT OF CLAIMS ADMINISTRATOR

Plaintiffs propose the appointment of Heffler Claims Group as the Claims Administrator. As the Claims Administrator, it will receive the Settlement Funds, and pay Class Counsel for attorneys' fees and

costs pursuant to the Court's order.  As explained below, the Claims Administrator shall be responsible for holding and managing the Net Settlement Funds until the funds are distributed upon the final resolution of the case.  At the resolution of the case or, at any time earlier with Court approval, the Claims Administrator shall also be responsible for processing the claims of Class Members and distributing funds to Class Members pursuant to the Plan of Allocation approved by the Court.

Heffler Claims Group has more than 45 years of experience in administering class action settlements in securities, consumer, and anti-trust litigation, and has been appointed as the claims administrator in several high-profile class action settlements.  Heffler Claims Group also has experience with processing and administering claims involving international claimants.

## IX.  ATTORNEYS' FEES AND COSTS

Before the filing of the motion for final approval, Class Counsel intends to move the Court for an order authorizing payment of attorneys' fees of up to $3,275,000 (25% of the funds paid by Settling Defendants) and reimbursement of costs of up to $200,000.  Class Counsel will also seek reimbursement of costs associated incurred by the Notice Administrator and Claims Administrator in connection with the Settlement in an amount not to exceed $50,000.  Defendants have agreed that they will not to oppose an award of attorneys' fees and costs to Class Counsel.

## X.  THE COURT SHOULD SET A FINAL APPROVAL HEARING SCHEDULE

The last step in the settlement approval process is the final approval hearing, at which the Court may hear all evidence and argument necessary to evaluate the proposed settlement.  At that hearing, proponents of the Settlements may explain and describe their terms and conditions and offer argument in support of approval and members of the Class, or their counsel, may be heard in support of or in opposition to the Settlements.  Plaintiffs propose the following schedule for final approval of the Settlements:

//

//

//

//

//

17

| Event | Date |
|-------|------|
| Notice of Class Action Settlement to Be Mailed and Posted on Internet | Within 60 days of Preliminary Approval Order |
| Motion for Attorneys' Fees and Costs Filed by Class Counsel | To be completed 31 days from Notice Date |
| Objection Deadline | 52 days from Notice Date |
| Notice Administrator Affidavit of Compliance with Notice Requirements | To be filed 30 days prior to the Final Approval Hearing |
| Motions for Final Approval | To be filed 21 days prior to Final Approval Hearing |
| Replies in Support of Motions for Final Approval, Attorneys' Fees and Costs Filed by Class Counsel | To be filed 7 days prior to Final Approval Hearing |
| Final Approval Hearing | _____, 2017 |

## XII.   CONCLUSION

Based on the foregoing, plaintiffs respectfully request that the Court: (1) certify a Settlement Class; (2) preliminarily approve the Settlements; (3) approve the proposed long form and short form notice to the Class; (4) appoint MRI Bengodan as the Notice Administrator; (6) appoint Heffler Claims Group as the Claims Administrator; (7) set a schedule for disseminating notice to Class Members, as well as deadlines to comment on or object to the Settlement; and (8) schedule a hearing pursuant to Rule 23(e) of the Federal Rules of Civil Procedure to determine whether the proposed Settlements are fair, reasonable, and adequate and should be finally approved.

Respectfully submitted.

//

//

18

Dated: December 11, 2017

MANNING & KASS

ELLROD, RAMIREZ, TRESTER LLP

By:    /s/ James Gibbons
       JAMES E. GIBBONS
       Attorneys for Plaintiffs

LAW OFFICES OF ROBERT W. COHEN, APC

By:    /s/ Robert W. Cohen
       ROBERT W. COHEN
       MARIKO TAENAKA
       Attorneys for Plaintiffs

NOTICE OF MOTION AND MOTION FOR PRELIMINARY SETTLEMENT APPROVAL

### **CERTIFICATE OF SERVICE**

I hereby certify that on December 11, 2017, a copy of the foregoing document was filed electronically via the Court's CM/ECF system. Pursuant to Local Rule 5.5(h), notice of filing will be served on all parties by operation of the Court's CM/ECF system, and parties may access this filing through the Court's CM/ECF system.

_____/s/ Mariko Taenaka_____.
Mariko Taenaka

NOTICE OF MOTION AND MOTION FOR PRELIMINARY SETTLEMENT APPROVAL