1   James E. Gibbons (State Bar No. 130631)
    **MANNING & KASS**
2   **ELLROD, RAMIREZ, TRESTER LLP**
    801 S. Figueroa St, 15th Floor
3   Los Angeles, California 90017-3012
    Telephone: (213) 624-6900
4   Facsimile: (213) 624-6999

5   Robert W. Cohen (pro hac vice)
    Cal. State Bar No. 150310
6   Mariko Taenaka (pro hac vice)
    Cal. State Bar No. 273895
7   **LAW OFFICES OF ROBERT W. COHEN, .P.C.**
    1875 Century Park East, Suite 1770
8   Los Angeles, CA 90067

9   James Olson-State Bar No. 116
    **OLSON, CANNON, GORMLEY & DESRUISSEAUX**
10  9950 W. Cheyenne Ave.
    Las Vegas, NV 89129
11  Attorneys for Plaintiffs

12

13                  **UNITED STATES DISTRICT COURT**

14                       **DISTRICT OF NEVADA**

15  SHIGE TAKIGUCHI, FUMI NONAKA,          Case No. 2:13-cv-01183-HDM-NJK
    MITSUAKI TAKITA, TATSURO SAKAI,
16  SHIZUKO ISHIMORI, YUKO NAKAMURA,       **PLAINTIFFS' NOTICE OF MOTION
    HIDEHITO MIURA, YOSHIKO TAZAKI,        AND MOTION FOR ATTORNEYS'
17  MASAAKI MORIYA, HATSUNE HATANO,        FEES AND EXPENSES IN
    and HIDENAO TAKAMA, Individually and On CONNECTION WITH THE
18  Behalf of All Others Similarity Situated, SETTLEMENT WITH THE SUZUKI
                                            DEFENDANTS**
19                    Plaintiffs,

20          v.

21  MRI INTERNATIONAL, INC., EDWIN J.
    FUJINAGA, JUNZO SUZUKI, PAUL
22  MUSASHI SUZUKI, LVT, INC., dba
    STERLING ESCROW, and DOES 1-500,
23
                      Defendants.
24

25

26

27

28

4831-7479-6640.1                                   Case No. 2:13-cv-01183-HDM-NJK
**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES IN RE SETTLEMENT WITH SUZUKI DEFENDANTS**

**PLEASE TAKE NOTICE** that at 9:00 a.m. on May 22, 2018, before the Honorable Howard D. McKibben, United States District Court for the District of Nevada located in Courtroom 4 at 400 S. Virginia Street, Reno, Nevada, Plaintiffs will and hereby do respectfully move this Court for an order awarding Class Counsel's attorneys' fees of up to $3,275,000, reimbursement of Class Counsel's expenses of $246,007.13, and reimbursement of the Notice Administrator's expenses of $74,893.42 to Plaintiffs.

This motion is based on this Notice of Motion, the supporting Memorandum of Points and Authorities; the Declaration of James E. Gibbons; the Declaration of Robert W. Cohen; the Declaration of Jun Igarashi; the Proposed Order, and all pleadings, records and papers on file herein.

Dated:  April 3, 2018

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP

By: _____/s/ James E. Gibbons_____
JAMES E. GIBBONS

LAW OFFICES OF ROBERT W. COHEN
A Professional Corporation

By: _____/s/ Robert W. Cohen_____
ROBERT W. COHEN
MARIKO TAENAKA

## TABLE OF CONTENTS

I.      INTRODUCTION………………………………………..………..…1

II.     CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES OF 25% OF
        THE SETTLEMENT FUND SHOULD BE APPROVED………………………………2

        A. Class Counsel Is Entitled to an Award of Attorneys' Fees from the Settlement Fund…..……2

        B. A Reasonable Percentage of the Fund Recovered Is the Appropriate
           Method for Awarding Attorneys' Fees in Common Fund Cases………..……………..….3

        C. A Fee of 25% of the Settlement Fund Is Reasonable……………………………………4

        D. Analysis Under the Percentage Method and the Vizacino Factors
           Justified a Fee Award of 25% in this Case……………………………………………5

           1.   The Result Achieved……………………………………5

           2.   The Risks of Litigation…………………………………5

           3.   The Skill Required and the Quality of Work……………………………………7

           4.   The Contingent Nature of the Fee and the Financial
                Burden Carried by Class Counsel………………………………………...7

           5.   A 25% Fee Award is the Ninth Circuit's Benchmark and Is
                Comparable to Attorneys' Fees Awarded in Similar Cases…………………………9

           6.   Reaction of the Settlement Class……………………………………10

           7.   Lodestar Check………………………………………...11

III.    CLASS COUNSEL'S EXPENSES ARE REASONABLE AND WERE
        NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED…….…………12

IV.     THE NOTICE ADMINSTRATOR'S EXPENSES ARE REASONABLE
        AND ENTITLED TO REIMBURSEMENT OF EXPENSES…………………………13

V.      CONCLUSION……………………………….…………….…14

i

# TABLE OF AUTHORITIES

*Cases*                                                                    *Page(s)*

*In re Alliance Gaming Corp. Sec. Litig.,*
    No. CV-S-04-0821-BES, slip op. at 1 (D. Nev. June 28, 2007)………....…………………………..9

*Anixter v. Home-Stake Prod. Co.,*
    77 F.3d 1215 (10th Cir. 1996)…………………………………………..…………………………9

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.,*
    No. 02 Civ. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)………....…………………7

*ATLAS v. Accredited Home Lenders Holding Co.,*
    No. 07-CV-00488-H (CAB), 2009 WL 3698393 (S.D. Cal. Nov. 4, 2009)……………..…....…6

*Bateman Eichler, Hill Richards, Inc. v. Berner,*
    472 U.S. 299 (1985)……………………………………………………………..………8

*In re Beckman Coulter, Inc. Sec. Litig.,*
    No. 8:10-cv-1327-JST (RNBx), slip op. at 3 (C.D. Cal. Mar. 1, 2012)……………………....…..9

*Blum v. Stenson,*
    465 U.S. 886 (1984) ……………………………………………………………………3

*Boeing Co. v. Van Gemert,*
    444 U.S. 472 (1980)……………………………………………………………..………3

*Chemical Bank v. City of Seattle (In re Washington Pub. Power Supply Sys. Sec. Litig.) (WPPSS),*
    19 F.3d 1291 (9th Cir. 1994)………………………………………………..……3, 4, 11

*Class Plaintiffs v. Jaffe & Schlesinger P.A.,*
    19 F.3d 1306 (9th Cir. 1994) ………………………………………………………………3

*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.,*
    109 F.3d 602 (9th Cir. 1997)…………………………………………………....……11

*Evans v. Linden Research, Inc.,*
    No. C-11-01078 (DMR), 2014 WL 1724891 (N.D. Cal. Apr. 29, 2014)…………….…………4

*Franco v. Ruiz Food Prods., Inc.,*
    No. 1:10-cv-02354-SKO, 2012 WL 5941801 (E.D. Cal. Nov. 27, 2012)……………………12-13

*Harris v. Marhoefer,*
    24 F.3d 16 (9th Cir. 1994)……………………………………………………………..…12

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983)………………………………………………………..………5

*In re Heritage Bond Litig.*,
   No. 02-ML-1475 DT (RCX), 2005 WL 1594389 (C.D. Cal. June 10, 2005)……………...…. 7, 10

*IBEW Local 697 Pension Fund v. Int'l Game Tech., Inc.*,
   No. 3:09-cv-00419-MMD, 2012 U.S.Dist. LEXIS 151498 (D.Nev. Oct. 19, 2012)…………4, 8, 9

*In re Ikon Office Sols. Inc. Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000)…………………………………………………..………...…7

*In re Immune Response Sec. Litig.*,
   497 F. Supp. 2d 1166 (S.D. Cal. 2007)………………………………………………12, 13

*In re Omnivision*,
   559 F.Supp.2d 1036 (N.D. Cal. 2007)………………………………………………..…..6,7-8

*In re Oracle Corp. Sec. Litig.*,
   No. C 01-00988 SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009)……………………….…..8

*Powers v. Eichen*,
   229 F.3d 1249 (9th Cir. 2000)…………………………………………………...…4, 9

*Principe v. Ukropina (In re Pac. Enters. Sec. Litig).,*
   47 F.3d 373 (9th Cir. 1995)…………………………………………………...…2, 4, 5-6

*Redwen v. Sino Clean Energy, Inc.*,
   No. CV 11-3936 PA (SSx), 2013 U.S. Dist. LEXIS 100275 (C.D. Cal. July 9, 2013)………...…6

*Rieckborn v. Velti PLC*,
   No. 13-CV-03889-WHO, 2015 WL 468329 (N.D. Cal. Feb. 3, 2015)………………....………9

*Robbins v. Koger Props., Inc.*,
   116 F.3d 1441 (11th Cir. 1997)……………………………………...………….…8

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003)………………………………………………...…………..2

*Steiner v. Am. Broad. Co.*,
   248 F. App'x. 780 (9th Cir. 2007)…………………………………………………………11

*In re Sunterra Corp. Sec. Litig.*,
   No. 2:06-cv-00844- BES (D. Nev. Feb. 10, 2009)……………………………………....…9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)……………………………………………………...…8

iii

*Vincent v. Hughes Air West, Inc.*,
    557 F.2d 759 (9th Cir. 1977)………………………………………………………………………….3

*Vincent v. Reser*,
    No. C 11-03572-CRB, 2013 U.S.Dist. LEXIS 22341 (N.D. Cal. Feb. 19, 2013)…………...…3, 12

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002)……………………………………………….…..…3, 5, 7, 11, 12

*Ward v. Succession of Freeman*,
    854 F.2d 780 (5th Cir. 1998)………………………………..……..……...…………..8

*In re Xcel Energy, Inc. Securities, Derivative & ERISA Litigation*,
    364 F.Supp.2d 980 (D. Minn. 2005)………………………………………..……...……9

## ***Statutes and Other Authority***                                                    ***Page(s)***

Fed. R. Civ. P. 23(h)……………………………………………………………………….2

15 U.S.C. § 78u-4(a)(6)………………………………………………………………..……4

Posner, *Economic Analysis of Law* § 21.9 (3d ed. 1986)…………………...……………………11

Silver, *Due Process and the Lodestar Method: You Can't Get There From Here*,
    74 Tul.L.Rev. 1809 (2000)………………………………………………………………4

**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES IN RE SETTLEMENT WITH SUZUKI DEFENDANTS**

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.     INTRODUCTION**

Class Counsel Manning & Kass, Ellrod, Ramirez, Trester, LLP, and The Law Offices of Robert W. Cohen, A.P.C., respectfully submit this Memorandum of Points and Authorities in support of their application for an award of attorneys' fees and expenses in connection with the Class's settlement with the following parties: i) Junzo Suzuki; ii) Paul Musahi Suzuki; iii) Keiko Suzuki; iv) Suzuki Enterprises, Inc. Profit Sharing Plan; v) Catherine Suzuki, Trustee of The Junzo Suzuki Irrevocable Trust; vi) Catherine Suzuki, Trustee of The Keiko Suzuki Irrevocable Trust; vii) Catherine Suzuki, Trustee of The Junzo Suzuki and Keiko Suzuki Irrevocable Trust; viii) Suzuki Enterprises, Inc.; ix) Puuikena Investments LLP; x) Catherine Suzuki Irrevocable Trust Dated May 10, 2013; and xi) Paul Musashi Suzuki Irrevocable Trust Dated May 10, 2013 ("collectively the Suzuki Defendants").[1]

To settle the litigation against them, the Suzuki Defendants have agreed to pay approximately $13,100,000 to Plaintiffs, consisting of a combination of cash, real estate, and life insurance policies. The amount of the settlement is approximate, because part of this amount will be determined by the sale of seven real properties and two interests in timeshares, of which Plaintiffs will receive 62% of the net proceeds. As additional consideration, the Suzuki Defendants have warranted that they have disclosed the entirety of their assets and have promised to cooperate with Plaintiffs' further prosecution of the Action. Moreover, the parties have agreed to settle three pending lawsuits in Japan, in connection with the Suzuki Defendants providing approximately $2.4 Million in assets located in Japan to the plaintiffs in those Japanese lawsuits. That settlement is separate from the settlement in this class action.

Overall, the recovery is an eminently favorable result for the Class when evaluated in light of all the relevant circumstances – most notably, the complicated nature of the action, the risks of pursuing the action through trial, and the real concerns over collectability of any judgment from

---

[1] For the sake of brevity, a more detailed description of the lawsuit's allegations, the procedural history of the Action, the risks faced by the Settlement Class in pursuing the litigation, and the negotiations that led to the settlement with the Suzuki defendants are set out in the attached Declaration of James E. Gibbons.

**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES IN RE SETTLEMENT WITH SUZUKI DEFENDANTS**

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
Attorneys at Law

1    the Suzuki Defendants. The settlement was achieved only after four years of grinding litigation,

2    including vigorous pre-filing investigative efforts, extensive law and motion work involving a

3    succession of defense motions to dismiss, extensive law and motion work involving asset freezes,

4    an appeal to the Ninth Circuit, motions to transfer to Japan, multiple disputes over discovery

5    issues and the scope of the discovery stay under the Private Securities Litigation Reform Act,

6    defendants' unsuccessful motion to disqualify counsel, close review of tens of thousands of pages

7    of documents (most of which were in Japanese), and taking and defending numerous depositions,

8    including those of multiple Plaintiffs in the United States and Junzo and Paul Suzuki in Japan.

9         Given the straitened financial means of most Class members, Class Counsel agreed to

10   pursue the litigation on a contingency basis. As compensation, Class Counsel respectfully request

11   that they be awarded an attorneys' fee of 25% of the Settlement, as well as reasonable expenses in

12   the amount of $246,007.13 incurred in pursuit of the litigation, to be reimbursed out of the

13   settlement fund. The 25% fee request is the Ninth Circuit's "benchmark" for contingent fees. *See*,

14   *e.g.*, *Principe v. Ukropina (In re Pac. Enters. Sec. Litig).,* 47 F.3d 373, 379 (9th Cir. 1995)

15   ["Twenty-five percent is the 'benchmark' that district courts should award in common fund

16   cases"].

17   **II.    CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES OF 25% OF THE**

18   **SETTLEMENT FUND SHOULD BE APPROVED**

19        Federal Rule of Civil Procedure 23(h) provides that, "[i]n a certified class action, the court

20   may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the

21   parties' agreement." Fed. R. Civ. P. 23(h). "Attorneys' fees provisions included in proposed class

22   action agreements are, like every other aspect of such agreements, subject to the determination of

23   whether the settlement is 'fundamentally fair, adequate and reasonable'." *Staton v. Boeing Co*.,

24   327 F.3d 938, 964 (9th Cir. 2003) (citation omitted).

25        **A.    Class Counsel Is Entitled to an Award of Attorneys' Fees from the Settlement**

26        **Fund**

27        It is well settled that attorneys who represent a class and achieve a benefit for class

28   members are entitled to a reasonable fee as compensation for their services. The Supreme Court

**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES IN RE SETTLEMENT WITH SUZUKI DEFENDANTS**

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
*Attorneys at Law*

1    has recognized that "a lawyer who recovers a common fund for the benefit of persons other than

2    himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing*

3    *Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Vincent v. Reser* (N.D. Cal. Feb. 19, 2013,

4    No. C 11-03572 CRB) 2013 U.S.Dist. LEXIS 22341, at *13 [quoting *Boeing*, 444 U.S. at 478].

5    The Ninth Circuit has expressly reasoned that "a private plaintiff, or his attorney, whose efforts

6    create, discover, increase or preserve a fund to which others also have a claim is entitled to recover

7    from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air West,*

8    *Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). The purpose of this rule, known as the "common fund

9    doctrine," is to prevent unjust enrichment so that "those who benefit from the creation of the fund

10   should share the wealth with the lawyers whose skill and effort helped create it." *Chemical Bank v.*

11   *City of Seattle (In re Washington Pub. Power Supply Sys. Sec. Litig.)* (*WPPSS*), 19 F.3d 1291,

12   1300  (9th Cir. 1994), *aff'd* in part, *Class Plaintiffs v. Jaffe & Schlesinger P.A.,* 19 F.3d 1306 (9th

13   Cir. 1994).

14          **B.      A Reasonable Percentage of the Fund Recovered Is the Appropriate Method**

15                   **for Awarding Attorneys' Fees in Common Fund Cases**

16          In *Blum v. Stenson*, 465 U.S. 886 (1984), the Supreme Court recognized that under the

17   common fund doctrine a reasonable fee may be based "on a percentage of the fund bestowed on

18   the class[.]" *Id.* at 900, n. 16. In the Ninth Circuit, a district court has discretion to award fees in

19   common fund cases based on either the so-called lodestar/multiplier method or the percentage of-

20   the-fund method. *WPPSS*, 19 F.3d at 1296. However, the percentage-of-recovery method has

21   become the prevailing method in the Ninth Circuit. *See Vizcaino v. Microsoft Corp.*, 290 F.3d

22   1043 (9th Cir. 2002). Other circuits have similarly endorsed the percentage-of-recovery method.

23          The rationale for compensating counsel in common fund cases on a percentage basis is

24   sound. Principally, it more closely aligns the lawyers' interest in being paid a fair fee with the

25   interest of the class in achieving the maximum possible recovery in the shortest amount of time. In

26   fact, one of the nation's leading scholars in the field of class actions and attorneys' fees, Professor

27   Charles Silver of the University of Texas School of Law, has concluded that the percentage

28   method of awarding fees is the only method of fee awards that is consistent with class members'

**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES IN RE SETTLEMENT WITH SUZUKI DEFENDANTS**

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
*Attorneys at Law*

due process rights. Professor Silver notes:

> The consensus that the contingent percentage approach creates a closer harmony of interests between class counsel and absent plaintiffs than the lodestar method is strikingly broad. . . . In view of this, it is as clear as it possibly can be that judges should not apply the lodestar method in common fund class actions. The Due Process Clause requires them to minimize conflicts between absent claimants and their representatives. The contingent percentage approach accomplishes this.

Charles Silver, Class Actions In The Gulf South Symposium, *Due Process and the Lodestar Method: You Can't Get There From Here*, 74 Tul.L.Rev. 1809, 1819-20 (2000) [footnotes omitted]. This is particularly appropriate in cases under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), where Congress recognized the propriety of the percentage method of fee awards. See 15 U.S.C. § 78u-4(a)(6) ["Total attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class"].

### C.   A Fee of 25% of the Settlement Fund Is Reasonable

Recognizing the utility of the percentage-of-recovery method, the Ninth Circuit has stated that "[t]wenty-five percent is the 'benchmark' that district courts should award in common fund cases." *Pac. Enters.*, 47 F.3d at 379; *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) [reaffirming 25% benchmark]; *see also IBEW Local 697 Pension Fund v. Int'l Game Tech., Inc.*, No. 3:09-cv-00419-MMD-WGC, 2012 U.S.Dist. LEXIS 151498, at *12 (D.Nev. Oct. 19, 2012) ["Twenty-five percent should be the 'bench mark' percentage, but the district court may adjust upward or downward for the circumstances in each case"] [citation omitted] ; *Evans v. Linden Research, Inc.,* No. C-11-01078 (DMR), 2014 WL 1724891, at *6 (N.D. Cal. Apr. 29, 2014) ["25% of the recovery obtained is the benchmark in the Ninth Circuit"].

The guiding principle in the Ninth Circuit is that a fee award be "reasonable under the circumstances." *WPPSS*, 19 F.3d at 1296. Here, in view of the result obtained, the contingent fee

**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES IN RE SETTLEMENT WITH SUZUKI DEFENDANTS**

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
Attorneys at Law

1  risk, and other relevant factors, an award of 25% of the recovery obtained for the Class is

2  appropriate.

3       **D.     Analysis under the Percentage Method and the *Vizcaino* Factors Justifies a**

4              **Fee Award of 25% in this Case**

5       Class Counsel's request for a fee award of 25% of the settlement fund from the Suzuki

6  Defendants is eminently reasonable. The fee request readily satisfies the five factors that are often

7  used by the Ninth Circuit to evaluate the reasonableness of a requested fee: 1) result achieved; 2)

8  risk of litigation; 3) skill required and quality of the work; 4) awards made in similar cases; and 5)

9  contingent nature of the fee and the financial burden carried by counsel. *Vizcaino*, 290 F.3d at

10  1048-50. The Ninth Circuit has explained that these factors should not be used as a rigid checklist

11  or weighed individually, but rather should be evaluated in light of the totality of the circumstances.

12  *Id.* As set forth below, all of the *Vizcaino* factors militate in favor of approving the requested fee.

13                    **1.     The Result Achieved**

14       Courts have consistently recognized that the result achieved is an important factor to be

15  considered in making a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) [noting the

16  "most critical factor is the degree of success obtained"]; *Vizcaino*, 290 F.3d at 1048

17  ["(e)xceptional results are a relevant circumstance" in awarding attorneys' fees]. Class Counsel

18  submit that the approximately $13.1 million settlement for Plaintiffs' claims against the Suzuki

19  Defendants is an excellent result for the Class, both quantitatively and when considering the risk

20  of a lesser (or zero) recovery if the case were to proceed through trial.

21       The settlement represents 62 percent of the assets of the Suzuki Defendants, both in the

22  U.S. and Japan, including approximately $2.4 Million in assets located in Japan that will be

23  allocated to the plaintiffs in the Japanese lawsuits. Given the hotly contested nature of the case, the

24  expense of going forward, and the concerns over collectability of any judgment, the settlement is

25  an excellent result for the Class.

26                    **2.     The Risks of Litigation**

27       The risk of further litigation is also an important factor in determining a fair fee award.

28  *Vizcaino*, 290 F.3d at 1048 ["(r)isk is a relevant circumstance" in awarding attorneys' fees]; *Pac.*

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
*Attorneys at Law*

**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES IN RE SETTLEMENT WITH SUZUKI DEFENDANTS**

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

1   *Enters.*, 47 F.3d at 379 [attorneys' fees were justified "because of the complexity of the issues and

2   the risks"]; *see also ATLAS v. Accredited Home Lenders Holding Co.*, No. 07-CV-00488-H

3   (CAB), 2009 WL 3698393, at *3 (S.D. Cal. Nov. 4, 2009) [approving settlement where "litigating

4   the complex securities fraud class action to completion would have resulted in substantial delay

5   and expense"]. As set forth in the Declaration of James E. Gibbons, there were substantial risks

6   and uncertainties in the Action that required the skill and focus of Class Counsel to bring this

7   matter to a favorable resolution.

8        Although Plaintiffs' Complaint ultimately survived Defendants' multiple motions to

9   dismiss, Plaintiffs nonetheless faced substantial risks in proving that the Suzuki Defendants were

10   liable in the MRI Ponzi scheme and, moreover, that any damages awarded against them would be

11   collectible. Gibbons Decl., ¶ 8. As to liability, the Suzukis maintained that they themselves were

12   innocent dupes of the Ponzi scheme and were as unaware of the scheme as were the investors.[2] *Id.*

13   In addition, the Suzukis raised a number of procedural defenses, including the statute of

14   limitations governing various securities fraud and the fraudulent conveyance claims. *Id.* Similarly,

15   the Suzuki trust defendants maintained that Plaintiffs could not trace the trusts' assets to funds

16   received from the MRI business, and that Plaintiffs' claims were partly or entirely barred by the

17   statute of limitations. *Id.*,¶ 9. Further, since Japan does not recognize the class action procedure,

18   collecting on any judgment against assets located in Japan was potentially problematic. *Id.*

19        Accordingly, Plaintiffs faced the possibility of recovering nothing against the Suzuki

20   Defendants, or winning a recovery but spending years in efforts to collect the judgment. *See, e.g.*,

21   *In re Omnivision*, 559 F.Supp.2d (N.D. Cal. 2007) 1036, 1047 [noting that the uncertainty in

22   proving and recovering damages supported counsel's requested fee].[3]

23   ───────────────

24   [2] Faxes between Edwin Fujinaga, MRI's principal, and the Suzukis arguably provide some basis for the
    assertion, since Mr. Fujinaga told the Suzukis that delays in investor payouts were due to an audit of MRI

25   by Nevada state officials. Gibbons Decl., ¶ 8.

26   [3] While courts have always recognized that securities class actions carry significant risks, post-PSLRA
    rulings make it clear that the risk of no recovery (and hence no fee) has increased exponentially. *See*

27   *Redwen v. Sino Clean Energy, Inc.*, No. CV 11-3936 PA (SSx), 2013 U.S. Dist. LEXIS 100275, at *19-20
    (C.D. Cal. July 9, 2013) ["Courts experienced with securities fraud litigation, routinely recognize that

28   securities class actions present hurdles to proving liability that are difficult for plaintiffs to clear]" [internal

1   In light of the above, Class Counsel achieved a significant result for the Class on its claims

2   against the Suzuki Defendants in the face of very real risks. Under these circumstances, the

3   requested fee is fully appropriate.

4           **3.**        **The Skill Required and the Quality of the Work**

5           Courts have recognized that the "prosecution and management of a complex national class

6   action requires unique legal skills and abilities." *In re Heritage Bond Litig.*, No. 02-ML-1475 DT

7   (RCX), 2005 WL 1594389, at *12 (C.D. Cal. June 10, 2005) [citation omitted]; *see also Vizcaino*,

8   290 F.3d at 1048. Courts also have acknowledged the "notorious complexity" of securities class

9   action litigation. *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. 02 Civ. 5575 (SWK),

10   2006 WL 903236, at *8 (S.D.N.Y. Apr. 6, 2006).

11           Here, Class Counsel initiated its own initial investigation without the benefit of any U.S.

12   government agency and developed facts to support the litigation and flesh out legal theories. Class

13   Counsel also defeated multiple motions to dismiss and/or to transfer the case to Japan. In addition,

14   Class Counsel filed and defended numerous motions related to the stay under the PSLRA and to

15   myriad discovery disputes. The extensive litigation efforts included, among many other things,

16   reviewing and analyzing voluminous information and data concerning MRI, its investment

17   scheme, its written and oral representations to investors, the investments of thousands of investors,

18   and interviewing scores of persons with knowledge of the underlying facts. Much of the

19   documentation was in Japanese, and nearly all of the victims spoke only Japanese. Gibbons Decl.,

20   ¶¶ 4-6. The favorable settlement is attributable to the diligence, determination, hard work, and

21   skill of Class Counsel, who developed, litigated, and successfully negotiated the settlement.

22           **4.**        **The Contingent Nature of the Fee and the Financial Burden Carried**

23                       **by Class Counsel**

24           It has long been recognized that attorneys are entitled to a larger fee when their

25   compensation is contingent in nature. *See Vizcaino*, 290 F.3d at 1048-50; *In re Omnivision*, 559

26

27   _____

28   punctuation omitted]; *In re Ikon Office Sols. Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) [noting that "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA"].

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
*Attorneys at Law*

1    F.Supp.2d at 1047 ["The importance of assuring adequate representation for plaintiffs who could

2    not otherwise afford competent attorneys justifies providing those attorneys who do accept matters

3    on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee"]; *see*

4    *also IBEW Local 697 Pension Fund*, 2012 U.S. Dist. LEXIS 151498, at *13 [awarding fee of 25%

5    of the common fund and noting that "(p)laintiffs' counsel shouldered the risk of non-payment by

6    taking the class action suit on a contingency fee basis"].

7         The Supreme Court has emphasized that private securities actions provide "'a most

8    effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to

9    [SEC] action'." *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) [citation

10   omitted]; *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 319 (2007) [noting that the

11   court has long recognized that meritorious private actions to enforce federal antifraud securities

12   laws are an essential supplement to criminal prosecutions and civil enforcement actions].[4]

13        There have been many class actions in which Plaintiffs' counsel took on the risk of

14   pursuing claims on a contingency basis, expended thousands of hours and dollars, yet received no

15   payment at all despite their diligence and expertise. *See, e.g*., *In re Oracle Corp. Sec. Litig*., No. C

16   01-00988 SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010)

17   [granting summary judgment to defendants after eight years of litigation, and after plaintiff's

18   counsel incurred over $6 million in expenses and worked over 100,000 hours, representing a

19   lodestar of approximately $48 million]. Class Counsel are aware of many other hard-fought

20   lawsuits where, because of the discovery of facts unknown when the case was commenced,

21   changes in the law during the pendency of the case, or a decision by a judge or jury following a

22   trial on the merits, excellent professional efforts by plaintiff's counsel produced no fee. *See, e.g*.,

23   *Ward v. Succession of Freeman*, 854 F.2d 780 (5th Cir. 1998) [reversing plaintiffs' jury verdict for

24   securities fraud]; *Robbins v. Koger Props., Inc.,* 116 F.3d 1441 (11th Cir. 1997) [reversing $81

25

---

26   [4] Additionally, vigorous private enforcement of the federal securities laws and state corporation laws can
     only occur if private plaintiffs can obtain some semblance of parity in representation with that available to
27   large corporate defendants. If this important public policy is to be carried out, courts should award fees that
     will adequately compensate private plaintiffs' counsel, taking into account the enormous risks undertaken
28   with a clear view of the economics of a securities class action.

**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES IN RE SETTLEMENT WITH SUZUKI DEFENDANTS**

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
*Attorneys at Law*

million jury verdict and dismissing case with prejudice]; *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) [overturning plaintiffs' verdict obtained after two decades of litigation]. As the court recognized in *In re Xcel Energy, Inc. Securities, Derivative & ERISA Litigation*, 364 F.Supp.2d 980 (D. Minn. 2005), "[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy." *Id.* at 994.

Here, because Class Counsel's fee is contingent, the only sure bet in the litigation was that there would be no fee without a successful result, and that a successful result would only be realized after significant amounts of time, effort, and expense. There was always a significant risk that, at the end of the day, the Class and their counsel would recover nothing.

**5.    A 25% Fee Award is the Ninth Circuit's Benchmark and Is Comparable to Attorneys' Fees Awarded in Similar Cases**

In requesting a 25% fee, Class Counsel seek the benchmark that has been established by the Ninth Circuit. *Eichen*, 229 F.3d at 1256 ["We have also established twenty-five percent of the recovery as a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery approach"]. The requested fee is also reasonable when compared to fee awards in similarly-sized securities class action settlements from district courts within the Ninth Circuit. *See, e.g.*, *IBEW Local 697 Pension Fund v. Int'l Game Tech., Inc.*, 2012 U.S. Dist. LEXIS 151498, at *12 [awarding fees of 25% of $12.5 million settlement]; *In re Sunterra Corp. Sec. Litig.*, No. 2:06-cv-00844- BES-RJJ, slip op. at 1 (D. Nev. Feb. 10, 2009) [awarding fees of 25% of $8 million settlement]; *In re Alliance Gaming Corp. Sec. Litig.,* No. CV-S-04-0821-BES-PAL, slip op. at 1 (D. Nev. June 28, 2007) [awarding fees of 25% of $15.5 million settlement]; *Rieckborn v. Velti PLC*, No. 13-CV-03889-WHO, 2015 WL 468329, at *21-22 (N.D. Cal. Feb. 3, 2015) [awarding fees of 25% of $9.5 million settlement]; *In re Beckman Coulter, Inc. Sec. Litig.,* No. 8:10-cv-1327-JST (RNBx), slip op. at 3 (C.D. Cal. Mar. 1, 2012) [awarding fees of 25% of $5.5 million settlement].

Accordingly, it is respectfully submitted that the attorneys' fee requested here is well within the range of fees awarded by district courts within the Ninth Circuit in comparable

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
Attorneys at Law

1  securities settlements.

2        **6.**      **Reaction of the Settlement Class**

3        Although not articulated specifically in *Vizcaino*, district courts in the Ninth Circuit also

4  consider the reaction of the class when deciding whether to award the requested fee. *See In re*

5  *Heritage Bond Litig.*, 2005 WL 1594389, at *15 ["The presence or absence of objections . . . is

6  also a factor in determining the proper fee award"]. Copies of the Court-approved Notice, which

7  stated that Class Counsel would seek a 25 percent contingency fee, were mailed to all Class

8  members and also posted on the internet in Japan on March 28, 2018. See Gibbons Decl. ¶ 16.

9  Although the objection deadline will not run until April 25, 2018, no objections or opt-outs have

10  been received to date. *Id.*

11        It should be noted that two complaints were addressed to this Court prior to the mailing of

12  the notice of settlement.  One was sent on February 3, 2018, by Kenji Yasunaka, complaining that

13  it was improper for Class Counsel to seek  an award of attorneys' fees from the Securities and

14  Exchange Commission's parallel enforcement action ("SEC Action") against MRI and Fujinaga.

15  Dkt. 806. However, Jun Igarashi, a member of the Japanese lawyer group in Japan representing

16  the victims, subsequently spoke to Mr. Yasunaka on February 27, 2018, and advised Mr.

17  Yasunaka that he was misinformed, because Class Counsel was not seeking attorneys' fees from

18  the SEC Action.  Mr. Yasunaka was satisfied with the explanation and represented that he mailed

19  a letter to this Court on March 7, 2018, retracting his complaint. Gibbons Decl., ¶ 16; Igarashi

20  Decl., ¶ 2.

21        Similarly, another class member, Koichi Inoue, mailed a letter to the Hon. James C.

22  Mahan, who presides over the SEC Action, complaining that he believed it was improper for Class

23  Counsel to seek attorneys' fees in the SEC Action. SEC Action Dkt. 479. Again, on February 20,

24  2018, Mr. Igarashi spoke with Mr. Inoue and pointed out his misunderstanding. On February 21,

25  2018, Mr. Inoue mailed this Court a letter of apology retracting his complaint. Gibbons Decl., ¶

26  16; Igarashi Decl., ¶ 3. Neither of these complaints were formal objections to the actual terms of

27  the settlement with the Suzuki Defendants.

28

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
_____ Attorneys at Law _____

### 7.    Lodestar Cross-Check.

Although an analysis of the lodestar is not required for an award of attorneys' fees in the Ninth Circuit, a cross-check of the fee request with Class Counsel's lodestar demonstrates its reasonableness. *See Vizcaino*, 290 F.3d at 1048-50; *see also In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 109 F.3d 602, 607 (9th Cir. 1997) [comparing the lodestar fee to the percentage fee is an appropriate measure of a percentage fee's reasonableness].

Class Counsel's combined "lodestar" is $3,820,689 through March 30, 2018, meaning that the requested contingency fee represents a lower number than the lodestar amount. The Ninth Circuit has recognized that attorneys in common fund cases are frequently awarded a multiple of their lodestar, rewarding them "for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases." *Vizcaino*, 290 F.3d at 1051 [citation omitted]. For example, the district court in *Vizcaino* approved a fee that reflected a multiple of 3.65 times counsel's lodestar. *Id.* The Ninth Circuit affirmed, holding that the district court correctly considered the range of multiples applied in common fund cases, and noting that a range of lodestar multiples from 1.0 to 4.0 are frequently awarded. *Id.*; [5] *see also Steiner v. Am. Broad. Co.*, 248 F. App'x. 780, 783 (9th Cir. 2007) ["this multiplier [of 6.85] falls well within the range of multipliers that courts have allowed"]. Here, Class Counsels' combined "lodestar" represents over 7,792.99 hours of work at current billing rates. With respect to billing rates, Class Counsel submit that the rates billed, topping out at $500 per hour for partners, are actually below what comparable law firms litigating matters of similar magnitude would charge. Gibbons Decl., ¶¶ 17-18, Exh. A; Declaration of Robert W. Cohen, ¶ 2, Exh. A.

Lastly, Class Counsel will need to perform additional work on an ongoing basis, including: preparing for, and participation in, the final approval hearing; responding to any objections;

---

[5] Furthermore, "[i]t is an established practice in the private legal market to reward attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases. *See* Posner, *Economic Analysis of Law* § 21.9, at 534-35. (3d ed. 1986). Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose." *WPPSS*, 19 F.3d at 1299.

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
_____ ATTORNEYS AT LAW _____

1    supervising the claims administration process being conducted by the Claims Administrator;

2    moving for leave of the Court to distribute the Settlement Fund in accordance with the

3    recommendation of the Claims Administrator; and supervising the distribution of the Net

4    Settlement Fund to Settlement Class Members who have submitted valid proofs of claim.

5    **III.    CLASS COUNSELS' EXPENSES ARE REASONABLE AND WERE**

6    **NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED**

7            Class Counsel have incurred expenses in an aggregate amount of $246,007.13 in

8    prosecuting the action. See Cohen Decl., ¶ 3, Exh. B [itemization of expenses incurred in

9    litigation]. As the *Vincent* court noted, "[a]ttorneys who created a common fund are entitled to the

10   reimbursement of expenses they advanced for the benefit of the class." *Vincent*, *supra*, No. 11-

11   03572 (CRB), 2013 WL 621865, at *5 (N.D. Cal. Feb. 19, 2013). In assessing whether counsel's

12   expenses are compensable in a common fund case, courts look to whether the particular costs are

13   of the type typically billed by attorneys to paying clients in the marketplace. *Harris v. Marhoefer*,

14   24 F.3d 16, 19 (9th Cir. 1994) ["Harris may recover as part of the award of attorney's fees those

15   out-of-pocket expenses that 'would normally be charged to a fee paying client'"].

16           Here, the expenses sought by Class Counsel are of the type that are routinely charged

17   to hourly paying clients and, therefore, should be reimbursed out of the common fund. The

18   expenses relate to typical expenses, such as deposition costs, filing fees, copying costs, travel-

19   related expenses related to interviewing witnesses and appearing at depositions and court hearings,

20   mediation fees, and the fees of Plaintiffs' economist expert, Karl Schulze, which total $88,846.25.

21   With respect to expert expenses, some courts consider whether the expert's work was "'crucial or

22   indispensable' to the litigation at hand." *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166,

23   1178 (S.D. Cal. 2007). As discussed in Mr. Gibbons' Declaration, the facts and complexity of this

24   case required Class Counsel to utilize a forensic economist expert to testify as to the existence and

25   nature of the alleged Ponzi scheme, as well as to trace various defendants' assets to their source in

26   money derived from the Ponzi scheme. Gibbons Decl., ¶ 7.

27           Courts also routinely approve reimbursements for the expenses associated with mediation.

28   *See*, *e.g.*, *Franco v. Ruiz Food Prods., Inc.*, No. 1:10-cv-02354-SKO, 2012 WL 5941801, at *22

1   (E.D. Cal. Nov. 27, 2012) [noting that mediation fees are among the "types of fees" that are

2   "routinely reimbursed"]; *In re Immune Response*, 497 F. Supp. 2d at 1178 (approving mediation

3   costs because they were "reasonable and necessary" and the "case involved protracted litigation,

4   which would not have come to an end prior to trial without the assistance of a mediator"). As

5   detailed in Mr. Gibbons' Declaration, the work done by Judge Rosenfeld of JAMS, which totaled

6   $5,147.75, was crucial to the ultimate settlement. See Gibbons Decl., ¶ 12. Courts also routinely

7   find that travel expenses incurred due to the litigation are reimbursable. *See In re Immune*

8   *Response*, 497 F. Supp. at 1177 [reimbursement for travel expenses is within the broad discretion

9   of the Court]. Class Counsel was required to travel to Las Vegas, Nevada, for depositions and

10  hearings, as well as to Japan to conduct depositions.

11      In sum, Plaintiff's Counsel's expenses, in an aggregate amount of $246,007.13, were

12  reasonably and necessarily incurred in the prosecution of the class action and should be approved.

13  **IV.    THE NOTICE ADMINSTRATOR'S EXPENSES ARE REASONABLE**

14          **AND ENTITLED TO REIMBURSEMENT OF EXPENSES**

15      In addition, certain administrative expenses have been incurred by the Class's Notice

16  Administrator, the MRI Higaibengodan, a Japanese attorney group representing the interests of

17  certain MRI victims in Japan. The MRI Higaibengodan was appointed by the Court as the Notice

18  Administrator to give notice to Class Members for (i) class certification, which was mailed out

19  June 17, 2016 (Dkt. 404); (ii) settlement with LVT, Inc., dba Sterling Escrow, which was mailed

20  out on July 24, 2017 (Dkt. 704); and (iii) settlement with the Suzuki Defendants (Dkt. 789) and

21  ICAG, Inc. (Dkt. 788), which was mailed out on March 2, 2018.  These expenses, as set out in the

22  attached declaration of Jun Igarashi, total $74,893.42.  This amount also includes publication

23  expenses paid to Sankei Newspaper in Japan for printing the notice of class certification.  A

24  schedule summarizing the expenses is attached as Exhibit A to Mr. Igarashi's Declaration.  The

25  Notice Administrator was never reimbursed for any of these expenses, and no motion for

26  reimbursement of the Notice Administrator's expenses was made in connection with the

27  settlement with LVT, Inc., due to the relatively low settlement amount of $800,000.  Thus the

28  Notice Administrator is seeking reimbursement for all of the administration expenses incurred

**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES IN RE SETTLEMENT WITH SUZUKI DEFENDANTS**

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
Attorneys at Law

1    from inception through March 30, 2018.

2    **IV.    CONCLUSION**

3           For the foregoing reasons, Class Counsel respectfully request that the Court award

4    attorneys' fees of 25% of the settlement or $3,275,000, reimbursement of costs of $246,007.13 to

5    Class Counsel, and reimbursement of notice costs to the Notice Administrator for $74,893.42.

6           Respectfully submitted.

7    Dated:  April 3, 2018                                    MANNING & KASS
                                                              ELLROD, RAMIREZ, TRESTER LLP
8

9                                                    By:    ___/s/ James E. Gibbons_____
                                                              JAMES E. GIBBONS
10

11                                                   LAW OFFICES OF ROBERT W. COHEN
                                                     A Professional Corporation
12

13                                                   By:    ___/s/ Robert W. Cohen_____
14                                                            ROBERT W. COHEN
                                                              MARIKO TAENAKA
15

16

17

18

19

20

21

22

23

24

25

26

27

28

4831-7479-6640.1                           14                Case No. 2:13-cv-01183-HDM-NJK
**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES IN RE SETTLEMENT WITH SUZUKI DEFENDANTS**

1

## CERTIFICATE OF SERVICE

2        Pursuant to Fed.R.Civ.P. 5(b), I hereby certify that on April 4, 2018, I served a true and

3  correct copy of the foregoing **NOTICE OF MOTION AND MOTION FOR ATTORNEY'S**

4  **FEES AND EXPENSES IN CONNECTION WITH THE SETTLEMENT WITH THE**

5  **SUZUKI DEFENDANTS** via mandatory electronic service via Pacer.  Parties may access this

6  filing through the Court's CM/ECF.

7

8                  /s/ Mariko Taenaka

9                    Mariko Taenaka

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
—— Attorneys at Law ——