1   James E. Gibbons (State Bar No. 130631)
    **MANNING & KASS**
2   **ELLROD, RAMIREZ, TRESTER LLP**
    801 S. Figueroa St, 15th Floor
3   Los Angeles, California 90017-3012
    Telephone: (213) 624-6900
4   Facsimile: (213) 624-6999

5   Robert W. Cohen (pro hac vice)
    Cal. State Bar No. 150310
6   Mariko Taenaka (pro hac vice)
    Cal. State Bar No. 273895
7   **LAW OFFICES OF ROBERT W. COHEN, .P.C.**
    1875 Century Park East, Suite 1770
8   Los Angeles, CA 90067

9   James Olson-State Bar No. 116
    **OLSON, CANNON, GORMLEY & DESRUISSEAUX**
10  9950 W. Cheyenne Ave.
    Las Vegas, NV 89129
11  Attorneys for Plaintiffs

12

13                **UNITED STATES DISTRICT COURT**

14                   **DISTRICT OF NEVADA**

15  SHIGE TAKIGUCHI, FUMI NONAKA,          Case No. 2:13-cv-01183-HDM-NJK
    MITSUAKI TAKITA, TATSURO SAKAI,
16  SHIZUKO ISHIMORI, YUKO NAKAMURA,       **NOTICE OF MOTION AND**
    HIDEHITO MIURA, YOSHIKO TAZAKI,        **PLAINTIFFS' MOTION FOR**
17  MASAAKI MORIYA, HATSUNE HATANO,        **ATTORNEYS' FEES AND EXPENSES**
    and HIDENAO TAKAMA, Individually and On **IN CONNECTION WITH SETTLEMENT**
18  Behalf of All Others Similarity Situated, **WITH ICAG, INC.; DECLARATION OF**
                                            **JAMES E. GIBBONS**
19                        Plaintiffs,

20        v.

21  MRI INTERNATIONAL, INC., EDWIN J.
    FUJINAGA, JUNZO SUZUKI, PAUL
22  MUSASHI SUZUKI, LVT, INC., dba
    STERLING ESCROW, and DOES 1-500,
23
                          Defendants.
24

25

26

27

28

**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES RE SETTLEMENT WITH ICAG**

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
Attorneys at Law

1    **PLEASE TAKE NOTICE** that at 9:00 a.m. on May 22, 2018, before the Honorable

2    Howard D. McKibben, United States District Court for the District of Nevada located in

3    Courtroom 4 at 400 S. Virginia Street, Reno, Nevada, Plaintiffs will and hereby do respectfully

4    move this Court for an order awarding Class Counsel's attorneys' fees of up to $367,633.33 to

5    Plaintiffs.

6    This motion is based on this Notice of Motion, the supporting Memorandum of Points and

7    Authorities; the Declaration of James E. Gibbons; the Declaration of Jun Igarashi; the Proposed

8    Order, and all pleadings, records and papers on file herein.

9    Dated:  April 3, 2018                                  MANNING & KASS
                                                            ELLROD, RAMIREZ, TRESTER LLP
10

11                                                          By:   /s/ James E. Gibbons
                                                                  JAMES E. GIBBONS
12

13                                                          LAW OFFICES OF ROBERT W. COHEN
                                                            A Professional Corporation
14

15

16                                                          By:   /s/ Robert W. Cohen
                                                                  ROBERT W. COHEN
17                                                                MARIKO TAENAKA

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.      INTRODUCTION…………………………………………………..………...…..3

        A.  The Litigation……………………………………………………………3

        B.  The Settlement…………………………………………………………...5

        C.  Background of Settlement…………………………………………………6

II.     CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES OF 25% OF
        THE SETTLEMENT FUND SHOULD BE APPROVED…………………………………7

        A.  Class Counsel Is Entitled to an Award of Attorneys' Fees from the Settlement Fund……...7

        B.  A Reasonable Percentage of the Fund Recovered Is the Appropriate
            Method for Awarding Attorneys' Fees in Common Fund Cases………..……………...8

        C.  A Fee of 25% of the Settlement Fund Is Reasonable…………………………………9

        D.  Analysis Under the Percentage Method and the Vizacino Factors
            Justified a Fee Award of 25% in this Case……………………………………………9

            1.   The Result Achieved………………………………………………9

            2.   The Risks of Litigation……………………………………………10

            3.   The Skill Required and the Quality of Work………………………………11

            4.   The Contingent Nature of the Fee and the Financial
                 Burden Carried by Class Counsel…………………………………...11

            5.   A 25% Fee Award is the Ninth Circuit's Benchmark and Is
                 Comparable to Attorneys' Fees Awarded in Similar Cases…………………………13

            6.   Reaction of the Settlement Class……………………………………14

III.    CONCLUSION…………………………………...…………………..………..14

**TABLE OF AUTHORITIES**

***Cases***                                                                                                          ***Page(s)***

*In re Alliance Gaming Corp. Sec. Litig.,*
        No. CV-S-04-0821-BES, slip op. at 1 (D. Nev. June 28, 2007)………...……………………..13

*Anixter v. Home-Stake Prod. Co.,*
        77 F.3d 1215 (10th Cir. 1996)……………………………………………………………………13

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.,*
        No. 02 Civ. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)………..………………….11

*ATLAS v. Accredited Home Lenders Holding Co.,*
        No. 07-CV-00488-H (CAB), 2009 WL 3698393 (S.D. Cal. Nov. 4, 2009)……………....……10

*Bateman Eichler, Hill Richards, Inc. v. Berner,*
        472 U.S. 299 (1985)………………………………………………………………………………12

*In re Beckman Coulter, Inc. Sec. Litig.,*
        No. 8:10-cv-1327-JST (RNBx), slip op. at 3 (C.D. Cal. Mar. 1, 2012)……………………...…..13

*Blum v. Stenson,*
        465 U.S. 886 (1984) ………………………………………………………………………………8

*Boeing Co. v. Van Gemert,*
        444 U.S. 472 (1980)……………………………………………………………………..…………8

*Chemical Bank v. City of Seattle (In re Washington Pub. Power Supply Sys. Sec. Litig.) (WPPSS,*
        19 F.3d 1291 (9th Cir. 1994)…………………………………………………….…………………8, 9

*Class Plaintiffs v. Jaffe & Schlesinger P.A.,*
        19 F.3d 1306 (9th Cir. 1994) …………………………………………………………………………8

*Evans v. Linden Research, Inc.,*
        No. C-11-01078 (DMR), 2014 WL 1724891 (N.D. Cal. Apr. 29, 2014)…………….…………..9

*Hensley v. Eckerhart,*
        461 U.S. 424 (1983)……………………………………………………………………….………9

*In re Heritage Bond Litig.,*
        No. 02-ML-1475 DT (RCX), 2005 WL 1594389 (C.D. Cal. June 10, 2005)……………….....11, 14

*IBEW Local 697 Pension Fund v. Int'l Game Tech., Inc.,*
        No. 3:09-cv-00419-MMD, 2012 U.S.Dist. LEXIS 151498 (D.Nev. Oct. 19, 2012)………9, 12, 13

*In re Ikon Office Sols. Inc. Sec. Litig.*,
194 F.R.D. 166 (E.D. Pa. 2000)……………………………………………….…………11

*In re Omnivision*,
559 F.Supp.2d 1036 (N.D. Cal. 2007)……………………………………………….....10, 12

*In re Oracle Corp. Sec. Litig.*,
No. C 01-00988 SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009)……………………………12

*Powers v. Eichen*,
229 F.3d 1249 (9th Cir. 2000)…………………………………………………………….9, 13

*Principe v. Ukropina (In re Pac. Enters. Sec. Litig).*,
47 F.3d 373 (9th Cir. 1995)…………………………………………………...…6, 9, 10

*Redwen v. Sino Clean Energy, Inc*., No. CV 11-3936 PA (SSx),
2013 U.S. Dist. LEXIS 100275 (C.D. Cal. July 9, 2013)………………………………....10-11

*Rieckborn v. Velti PLC*,
No. 13-CV-03889-WHO, 2015 WL 468329 (N.D. Cal. Feb. 3, 2015)………………….………13

*Robbins v. Koger Props., Inc.,*
116 F.3d 1441 (11th Cir. 1997)…………………………………………....……………13

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003)………………………………………………...………….7

*In re Sunterra Corp. Sec. Litig.*,
No. 2:06-cv-00844- BES (D. Nev. Feb. 10, 2009)…………………………………….……13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)………………………………………………………………………12

*Vincent v. Hughes Air West, Inc.*,
557 F.2d 759 (9th Cir. 1977)…………………………………………………..…8

*Vincent v. Reser*,
No. C 11-03572-CRB, 2013 U.S.Dist. LEXIS 22341 (N.D. Cal. Feb. 19, 2013)………………....8

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002)……………………………………………8, 9, 10, 11, 12

*Ward v. Succession of Freeman*,
854 F.2d 780 (5th Cir. 1998)…………………………………..…………………12

*In re Xcel Energy, Inc. Securities, Derivative & ERISA Litigation*,
364 F.Supp.2d 980 (D. Minn. 2005)…………………………………………..…………13

***Statutes and Other Authority***                                                                                                   ***Page(s)***

Fed. R. Civ. P. 23(h)……………………………………………………………………...…7

Fed. R. Civ. P. 37(c)…………………………………………………………………………11

15 U.S.C. § 78u-4(a)(6)………………………………………………………………………8

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2      Class Counsel Manning & Kass, Ellrod, Ramirez, Trester, LLP, and The Law Offices of

3  Robert W. Cohen, A.P.C., respectfully submit this Memorandum of Points and Authorities in

4  support of their application for an award of attorneys' fees and expenses in connection with the

5  Class's settlement with ICAG, Inc.

6  **I.     INTRODUCTION AND BACKGROUND REGARDING SETTLEMENT**

7        **A.     The Litigation.**

8        Plaintiffs filed this case on July 5, 2013 (the "Action") against MRI International, Inc.

9  ("MRI"), its three principal operators, and the escrow company entrusted with Plaintiffs'

10 investments, alleging defendants orchestrated a Ponzi scheme that defrauded 8,700 investors, all

11 Japanese residents, of $1.3 billion. A parallel action was also initiated by the U.S. Securities and

12 Exchange Commission against MRI and Edwin Fujinaga for securities violations, Securities and

13 Exchange Commission v. Edwin Fujinaga, et al., USDC Nevada Case No. 2:13-cv-1658-JCM-

14 CWH ("the SEC Action"). The SEC obtained a judgment in the amount of $564,359,364.08

15 against MRI and Fujinaga on January 27, 2015, and a court-appointed receiver has since taken

16 custody of all assets owned by MRI and Fujinaga. Declaration of James E. Gibbons, ¶ 2.

17       On June 2, 2015, Plaintiffs filed a motion to certify the Class. (Dkt. 255.) On March 21,

18 2016, the Court certified the Class and appointed Law Offices of Robert W. Cohen, APC and

19 Manning & Kass, Ellrod, Ramirez, Trester, LLP as Class Counsel. (Dkt. 404.) Gibbons Decl., ¶ 3.

20       On May 5, 2016, the parties stipulated to modify the Class Certification Order to make the

21 class definition consistent with the operative complaint. (Dkt. 425.) On May 6, 2016, the Court

22 granted the stipulation and the class definition was modified. (Dkt. 426.) Pursuant to the Class

23 Certification Order, the Class is now defined as:

24            The MRI Investor Class consisting of: all persons who were MRI

25            investors and who were injured because of the defendants' alleged

26            illegal Ponzi scheme and actions from July 5, 2008 through July 5,

27            2013. Excluded from the class are the defendants, their employees,

28            their family members and their affiliates, and the following 26

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
Attorneys at Law

1  individuals who are plaintiffs in the pending litigation against the
2  defendants in Japan: (1) Tomoyasu Kojima; (2) Keiko Amaya; (3)
3  Masakazu Sekihara; (4) Chiri Satou; (5) Meiko Murakami; (6)
4  Masayoshi Tsutsumi; (7) Yumiko Ishiguro; (8) Reiko Suzuki; (9)
5  Hiroji Sumita; (10) Eiko Uchiyama; (11) Hideyo Uchiyama; (12)
6  Youzou Shiki; (13) Naoki Nagasawa; (14) Noboru Yokoyama; (15)
7  Masami Segawa; (16) Fumiko Takagi; (17) Kumiko Kaita; (18)
8  Fumi Kobayashi; (19) Ikuko Miyazaki; (20) Hina Nagase; (21) Akio
9  Iwama; (22) Kouji Kishida; (23) Eri Kishida; (24) Nomai Nii; (25)
10  Youko Miyahara; and (26) Tsukiko Kurano.

11  *Id.*

12  Plaintiffs engaged in extensive discovery and motion practice throughout the litigation.
13  From July 5, 2013 to the present, Plaintiffs served multiple sets of discovery on Defendants and
14  served over 20 third-party subpoenas, resulting in the production of nearly one million pages of
15  documents, all of which were reviewed. Plaintiffs also subpoenaed documents from the U.S.
16  Securities and Exchange Commission. There were also over twenty depositions taken, including
17  the depositions of Junzo and Paul Suzuki, which were taken at the U.S. Embassy in Tokyo, and
18  the deposition of the Suzukis' long-time family lawyers, which took place in Hawaii. From the
19  production of thousands of pages by the Suzukis and the Suzukis' family lawyer in Hawaii,
20  Plaintiffs learned of other parties who were either directly involved in MRI's Ponzi scheme or
21  received commissions that could be traced back to MRI's Ponzi scheme. Gibbons Decl., ¶ 4.
22  Through discovery, Plaintiffs learned that ICAG was an entity owned and operated by
23  Richard Shintaku, who died in 2010 but was one of the chief operators of MRI, working closely
24  with Defendants Edwin Fujinaga, Junzo Suzuki and Paul Suzuki. Plaintiffs contend that Mr.
25  Shintaku directed MRI to pay tens of millions of dollars of commissions on his behalf to ICAG.
26  Therefore, on August 24, 2016, Plaintiffs sought leave to amend the Complaint to assert fraudulent
27  transfer, constructive trust and unjust enrichment against ten new defendants, including ICAG.
28  (Dkt. 461.) On September 28, 2016, the Court granted the motion and Plaintiffs filed their Fifth

1   Amended Complaint. (Dkt. 480-481.) On December 29, 2016, ICAG was served with process, and

2   appeared in the action on January 18, 2017. (Dkt. 595.) Gibbons Decl., ¶ 5.

3          Following its appearance in the action, Plaintiffs served several sets of written discovery,

4   and subpoenaed thousands of pages of documents from ICAG's accountant Lyle Mortensen, as

5   well as thousands of pages of bank statements for ICAG and its affiliates from Bank of America.

6   Plaintiffs also took the deposition of Cheryl Shintaku, current president and sole shareholder of

7   ICAG; Tiffany Kalahiki, current treasurer of ICAG; Julia Shintaku, current secretary of ICAG;

8   and Mr. Mortensen. Gibbons Decl., ¶ 6.

9          On June 9, 2017 ICAG filed a motion to preclude evidence and grant judgment pursuant to

10  Rule 37(c) (Dkt. 703), which the Court denied on July 24, 2017 (Dkt. 709). On October 20, 2017

11  Plaintiffs and ICAG stipulated to certification of the Class as to ICAG (Dkt. 741), which was

12  granted the same day. (Dkt. 742.) Gibbons Decl., ¶ 7.

13         **B.      The Settlement.**

14         To settle the litigation against it, ICAG has agreed to pay the following consideration:

15  •      Cash totaling $265,000;

16  •      An assignment of accounts receivable in the amount of $150,000 owed by an entity

17         known as Premier Entertainment Services International, Inc. to ICAG; and

18  •      An assignment by Cheryl Shintaku, the wife of Richard Shintaku, the deceased

19         principal of ICAG, Inc., of a 15% interest in HMC Service Center, LLC, which she

20         inherited from Mr. Shintaku. HMC Service Center, LLC is an MRI-affiliated

21         company that owned the Harmon Medical Center in Las Vegas, Nevada, and which

22         was sold by the receiver in the SEC Action for $7,036,888.91. The 15% interest is

23         therefore estimated to be valued at $1,055,533.

24  Gibbons Decl., ¶ 14.

25         Overall, the recovery is eminently favorable for the Class in light of all relevant

26  circumstances – most notably, the complicated nature of the action, the risks of pursuing the action

27  through trial, the concerns over ICAG's liability, and the uncertain collectability of any judgment

28  from ICAG and Shintaku family members.

1        Class Counsel agreed to pursue the litigation on a contingency basis in light of the modest

2   financial means of most Class members, who in many cases had lost their life's savings as a result

3   of the fraud alleged in this action. Gibbons Decl., ¶ 8. As compensation, Class Counsel

4   respectfully request that they be awarded an attorneys' fee of 25% of the Settlement, to be

5   reimbursed out of the settlement fund. The 25% fee request is the Ninth Circuit's "benchmark" for

6   contingent fees. *See, e.g.*, *Principe v. Ukropina (In re Pac. Enters. Sec. Litig.),* 47 F.3d 373, 379

7   (9th Cir. 1995) ["Twenty-five percent is the 'benchmark' that district courts should award in

8   common fund cases"].

9        **C.    Background of Settlement.**

10       Prior to entering into settlement negotiations, Plaintiffs and ICAG conducted extensive

11   discovery. Although the documents produced during discovery evidenced that Mr. Shintaku and

12   ICAG received approximately $48 million in commissions from MRI, investigation and discovery

13   revealed that little of the money remains. Mr. Shintaku appears to have invested millions in

14   various businesses, such as entertainment companies, media companies, and technology

15   companies, most of which went bankrupt or became defunct. According to the sworn testimony of

16   ICAG's accountant Mr. Mortensen, who also provided tax services for Mr. Shintaku's personal

17   and business interests, none of Mr. Shintaku's investments were profitable. Mr. Mortensen further

18   testified that ICAG lost millions of dollars each year as a result of its unsuccessful investments.

19   Gibbons Decl., ¶ 9.

20       ICAG's only remaining assets include four bank accounts totaling $339,710.54, and an

21   account receivable in the amount of $150,000 owed by Premier Entertainment Services

22   International, Inc., a product placement company in California that Mr. Shintaku was involved in

23   prior to his death. ICAG also has debts of $80,000 owed to its prior and current counsel.  Gibbons

24   Decl., ¶ 10.

25       Mr. Shintaku is survived by his wife, his sole heir, and his daughters Julia Shintaku and

26   Tiffany Kalahiki. All three were also deposed, and they all deny having any knowledge of Mr.

27   Shintaku's business dealings with MRI or ICAG, and were not even aware what type of business

28   Mr. Shintaku was engaged in. Cheryl Shintaku is the sole shareholder and president of ICAG but,

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
*Attorneys at Law*

1    since Mr. Shintaku's death, ICAG has not conducted any business. Cheryl Shintaku and her

2    daughters are not personally named in the lawsuit, and even if liability could be extended to them

3    personally, investigation into their assets indicates that they do not have assets sufficient to pay

4    any significant judgment. Cheryl Shintaku was always a housewife, Julia Shintaku is an

5    esthetician, and Tiffany Kalahiki is an elementary school teacher. Gibbons Decl., ¶ 11.

6         Apart from its relatively meager assets, ICAG asserted numerous defenses against

7    Plaintiffs. ICAG claimed that there was insufficient proof that it was involved in a Ponzi scheme,

8    that its assets could not be traced to MRI-related funds and that, in any event, Plaintiffs' claims

9    were barred by the statute of limitations. *Id.*, ¶ 12.

10        For all these reasons, Class Counsel determined that it was in the best interests of all

11   parties to resolve the litigation on the terms referenced above. Gibbons Decl., ¶ 13. Accordingly,

12   Class Counsel seek payment of $66,250, which is 25% of the cash payment of $265,000.

13   Additionally, Class Counsel seek 25% of the amount actually collected from Premier

14   Entertainment Services International, Inc., but no more than $37,500.  Lastly Class Counsel seek

15   25% of the amount actually collected from the 15% interest in HMC Service Center, LLC, but no

16   more than $263,883.33.  In no event will Class Counsel seek attorneys' fees of more than

17   $367,633.33.

18   **II.    CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES OF 25% OF THE**

19           **SETTLEMENT FUND SHOULD BE APPROVED**

20        Federal Rule of Civil Procedure 23(h) provides that, "[i]n a certified class action, the court

21   may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the

22   parties' agreement." Fed. R. Civ. P. 23(h). "Attorneys' fees provisions included in proposed class

23   action agreements are, like every other aspect of such agreements, subject to the determination

24   whether the settlement is 'fundamentally fair, adequate and reasonable'." *Staton v. Boeing Co*.,

25   327 F.3d 938, 964 (9th Cir. 2003) (citation omitted).

26        **A.    Class Counsel Is Entitled to an Award of Attorneys' Fees from the Settlement**

27               **Fund**

28        It is well settled that attorneys who represent a class and achieve a benefit for class

**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES RE SETTLEMENT WITH ICAG**

1  members are entitled to a reasonable fee as compensation for their services. The Supreme Court

2  has recognized that "a lawyer who recovers a common fund for the benefit of persons other than

3  himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing*

4  *Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Vincent v. Reser*, No. C 11-03572-CRB,

5  2013 U.S.Dist. LEXIS 22341, at *13 [quoting *Boeing*, 444 U.S. at 478] (N.D. Cal. Feb. 19, 2013).

6  The Ninth Circuit has expressly reasoned that "a private plaintiff, or his attorney, whose efforts

7  create, discover, increase or preserve a fund to which others also have a claim is entitled to recover

8  from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air West,*

9  *Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). The purpose of this rule, known as the "common fund

10 doctrine," is to prevent unjust enrichment so that "those who benefit from the creation of the fund

11 should share the wealth with the lawyers whose skill and effort helped create it." *Chemical Bank v.*

12 *City of Seattle (In re Washington Pub. Power Supply Sys. Sec. Litig.)* (*WPPSS*), 19 F.3d 1291,

13 1300 (9th Cir. 1994), *aff'd* in part, *Class Plaintiffs v. Jaffe & Schlesinger P.A.,* 19 F.3d 1306 (9th

14 Cir. 1994).

15     **B.     A Reasonable Percentage of the Fund Recovered Is the Appropriate Method**

16             **for Awarding Attorneys' Fees in Common Fund Cases**

17     In *Blum v. Stenson*, 465 U.S. 886 (1984), the Supreme Court recognized that under the

18 common fund doctrine a reasonable fee may be based "on a percentage of the fund bestowed on

19 the class[.]" *Id.* at 900, n. 16. In the Ninth Circuit, a district court has discretion to award fees in

20 common fund cases based on either the so-called lodestar/multiplier method or the percentage of-

21 the-fund method. *WPPSS*, 19 F.3d at 1296. However, the percentage-of-recovery method has

22 become the prevailing method in the Ninth Circuit. *See Vizcaino v. Microsoft Corp.*, 290 F.3d

23 1043 (9th Cir. 2002). Other circuits have similarly endorsed the percentage-of-recovery method.

24     The rationale for compensating counsel in common fund cases on a percentage basis is

25 sound. This is particularly appropriate in cases under the Private Securities Litigation Reform Act

26 of 1995 ("PSLRA"), where Congress recognized the propriety of the percentage method of fee

27 awards. *See* 15 U.S.C. § 78u-4(a)(6) ["Total attorneys' fees and expenses awarded by the court to

28 counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
Attorneys at Law

**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES RE SETTLEMENT WITH ICAG**

1    damages and prejudgment interest actually paid to the class"].

2        **C.    A Fee of 25% of the Settlement Fund Is Reasonable**

3        Recognizing the utility of the percentage-of-recovery method, the Ninth Circuit has stated

4    that "[t]wenty-five percent is the 'benchmark' that district courts should award in common fund

5    cases." *Pac. Enters.*, 47 F.3d at 379; *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000)

6    [reaffirming 25% benchmark]; *see also IBEW Local 697 Pension Fund v. Int'l Game Tech., Inc.*,

7    No. 3:09-cv-00419-MMD-WGC, 2012 U.S.Dist. LEXIS 151498, at *12 (D.Nev. Oct. 19, 2012)

8    ["Twenty-five percent should be the 'bench mark' percentage, but the district court may adjust

9    upward or downward for the circumstances in each case"] [citation omitted] ; *Evans v. Linden*

10   *Research, Inc.,* No. C-11-01078 (DMR), 2014 WL 1724891, at *6 (N.D. Cal. Apr. 29, 2014)

11   ["25% of the recovery obtained is the benchmark in the Ninth Circuit"].

12       The guiding principle in the Ninth Circuit is that a fee award be "reasonable under the

13   circumstances." *WPPSS*, 19 F.3d at 1296. Here, in view of the result obtained, the contingent fee

14   risk, and other relevant factors, an award of 25% of the recovery obtained for the Class is

15   appropriate.

16       **D.    Analysis Under the Percentage Method and the *Vizcaino* Factors Justifies a**

17           **Fee Award of 25% in this Case**

18       Class Counsel's request for a fee award of 25% of the settlement fund from ICAG is

19   reasonable. The fee request readily satisfies the five factors that are often used by the Ninth Circuit

20   to evaluate the reasonableness of a requested fee: 1) result achieved; 2) risk of litigation; 3) skill

21   required and quality of the work; 4) awards made in similar cases; and 5) contingent nature of the

22   fee and the financial burden carried by counsel. *Vizcaino*, 290 F.3d at 1048-50. The Ninth Circuit

23   has explained that these factors should not be used as a rigid checklist or weighed individually, but

24   rather should be evaluated in light of the totality of the circumstances. *Id.* As set forth below, all of

25   the *Vizcaino* factors militate in favor of approving the requested fee.

26           **1.    The Result Achieved**

27       Courts have consistently recognized that the result achieved is an important factor to be

28   considered in making a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) [noting the

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
— Attorneys at Law —

1  "most critical factor is the degree of success obtained"]; *Vizcaino*, 290 F.3d at 1048

2  ["(e)xceptional results are a relevant circumstance" in awarding attorneys' fees]. Class Counsel

3  submit that the settlement for Plaintiffs' claims against ICAG is an excellent result for the Class,

4  both quantitatively and when considering the risk of a lesser (or zero) recovery if the case were to

5  proceed through trial.

6      The settlement provides $265,000 in cash, plus an assignment of accounts receivable in the

7  amount of $150,000 owed to ICAG, as well as an assignment by Cheryl Shintaku of a 15%

8  interest in HMC Service Center, LLC., which she inherited from Richard Shintaku. Given the

9  disputes over liability, the difficulty in tracing ICAG's assets to MRI sources, the limited assets

10  available for collection, and the difficulty and uncertainty in collecting further assets, the

11  settlement is a favorable result for the Class.

12              **2.      The Risks of Litigation**

13      The risk of further litigation is also an important factor in determining a fair fee award.

14  *Vizcaino*, 290 F.3d at 1048 ["(r)isk is a relevant circumstance" in awarding attorneys' fees]; *Pac.*

15  *Enters.*, 47 F.3d at 379 [attorneys' fees were justified "because of the complexity of the issues and

16  the risks"]; *see also ATLAS v. Accredited Home Lenders Holding Co.*, No. 07-CV-00488-H

17  (CAB), 2009 WL 3698393, at *3 (S.D. Cal. Nov. 4, 2009) [approving settlement where "litigating

18  the complex securities fraud class action to completion would have resulted in substantial delay

19  and expense"]. As set forth in the Declaration of James E. Gibbons, there were substantial risks

20  and uncertainties in the Action that required the skill and focus of Class Counsel to bring this

21  matter to a favorable resolution.

22      As noted, ICAG claimed that no evidence existed to prove that it participated in a Ponzi

23  scheme, and also claimed that Plaintiffs' claims were barred by the statute of limitations.

24  Accordingly, Plaintiffs faced the possibility of recovering nothing against ICAG, or winning a

25  recovery but spending years in efforts to collect the judgment. *See, e.g., In re Omnivision*, 559

26  F.Supp.2d 1036, 1047 (N.D. Cal. 2007) [noting that the uncertainty in proving and recovering

27  damages supported counsel's requested fee].

28      Post-PSLRA rulings make it clear that the risk of no recovery (and hence no fee) has

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
Attorneys at Law

**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES RE SETTLEMENT WITH ICAG**

1   increased exponentially in private securities fraud cases. *See Redwen v. Sino Clean Energy, Inc.*,

2   No. CV 11-3936 PA (SSx), 2013 U.S. Dist. LEXIS 100275, at *19-20 (C.D. Cal. July 9, 2013)

3   ["Courts experienced with securities fraud litigation, routinely recognize that securities class

4   actions present hurdles to proving liability that are difficult for plaintiffs to clear]" [internal

5   punctuation omitted]; *In re Ikon Office Sols. Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000)

6   [noting that "securities actions have become more difficult from a plaintiffs' perspective in the

7   wake of the PSLRA"].

8          In light of the above, Class Counsel achieved an excellent result for the Class on its claims

9   against ICAG in the face of real risks. Under these circumstances, the requested fee is fully

10  appropriate.

11         **3.        The Skill Required and the Quality of the Work**

12         Courts have recognized that the "prosecution and management of a complex national class

13  action requires unique legal skills and abilities." *In re Heritage Bond Litig.*, No. 02-ML-1475 DT

14  (RCX), 2005 WL 1594389, at *12 (C.D. Cal. June 10, 2005) [citation omitted]; *see also Vizcaino*,

15  290 F.3d at 1048. Courts also have acknowledged the "notorious complexity" of securities class

16  action litigation. *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. 02 Civ. 5575 (SWK),

17  2006 WL 903236, at *8 (S.D.N.Y. Apr. 6, 2006).

18         Here, Class Counsel initiated its own initial investigation without the benefit of any U.S.

19  government agency and developed facts to support the litigation and flesh out legal theories. After

20  investigation and discovery, Class Counsel successfully moved to add ICAG as a defendant to the

21  action, and then defeated ICAG's Motion for Judgment pursuant to F.R.C.P. Rule 37(c). In

22  addition, Class Counsel deposed numerous witnesses related to ICAG, including three Shintaku

23  family members as well as ICAG's former accountant, and obtained and reviewed numerous

24  financial documents relating to the assets of ICAG and the Shintaku family. Gibbons Decl., ¶¶ 4-6.

25  The favorable settlement is attributable to the diligence, determination, hard work, and skill of

26  Class Counsel, who developed, litigated, and successfully negotiated the settlement.

27         **4.        The Contingent Nature of the Fee and the Financial Burden Carried**

28                 **by Class Counsel**

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
*Attorneys at Law*

It has long been recognized that attorneys are entitled to a larger fee when their compensation is contingent in nature. *See Vizcaino*, 290 F.3d at 1048-50; *In re Omnivision*, 559 F.Supp.2d at 1047 ["The importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee"]; *see also IBEW Local 697 Pension Fund*, 2012 U.S. Dist. LEXIS 151498, at *13 [awarding fee of 25% of the common fund and noting that "(p)laintiffs' counsel shouldered the risk of non-payment by taking the class action suit on a contingency fee basis"].

The Supreme Court has emphasized that private securities actions provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action'." *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) [citation omitted]; *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007) [noting that the court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions].[1]

There have been many class actions in which plaintiffs' counsel took on the risk of pursuing claims on a contingency basis, expended thousands of hours and dollars, yet received no payment at all despite their diligence and expertise. *See*, *e.g.*, *In re Oracle Corp. Sec. Litig.*, No. C 01-00988 SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010) [granting summary judgment to defendants after eight years of litigation, and after plaintiff's counsel incurred over $6 million in expenses and worked over 100,000 hours, representing a lodestar of approximately $48 million]. Class Counsel are aware of many other hard-fought lawsuits where, because of the discovery of facts unknown when the case was commenced, changes in the law during the pendency of the case, or a decision by a judge or jury following a trial on the merits, excellent professional efforts by plaintiff's counsel produced no fee. *See*, *e.g.*,

---

[1] Additionally, vigorous private enforcement of the federal securities laws and state corporation laws can only occur if private plaintiffs can obtain some semblance of parity in representation with that available to large corporate defendants. If this important public policy is to be carried out, courts should award fees that will adequately compensate private plaintiffs' counsel, taking into account the enormous risks undertaken with a clear view of the economics of a securities class action.

**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES RE SETTLEMENT WITH ICAG**

1    *Ward v. Succession of Freeman*, 854 F.2d 780 (5th Cir. 1998) [reversing plaintiffs' jury verdict for

2    securities fraud]; *Robbins v. Koger Props., Inc.,* 116 F.3d 1441 (11th Cir. 1997) [reversing $81

3    million jury verdict and dismissing case with prejudice]; *Anixter v. Home-Stake Prod. Co.*, 77 F.3d

4    1215 (10th Cir. 1996) [overturning plaintiffs' verdict obtained after two decades of litigation]. As

5    the court recognized in *In re Xcel Energy, Inc. Securities, Derivative & ERISA Litigation*, 364

6    F.Supp.2d 980 (D. Minn. 2005), "[p]recedent is replete with situations in which attorneys

7    representing a class have devoted substantial resources in terms of time and advanced costs yet

8    have lost the case despite their advocacy." *Id.* at 994.

9         Here, because Class Counsel's fee is contingent, the only sure bet in the litigation was that

10    there would be no fee without a successful result, and that a successful result would only be

11    realized after significant amounts of Class Counsel's time, effort, and expense. There was always

12    a significant risk that, at the end of the day, the Class and their counsel would recover nothing.

13         **5.    A 25% Fee Award is the Ninth Circuit's Benchmark and Is Comparable to**

14         **Attorneys' Fees Awarded in Similar Cases**

15         In requesting a 25% fee, Class Counsel seek the benchmark that has been established by

16    the Ninth Circuit. *Eichen*, 229 F.3d at 1256 ["We have also established twenty-five percent of the

17    recovery as a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery

18    approach"]. The requested fee is also reasonable when compared to fee awards in similarly-sized

19    securities class action settlements from district courts within the Ninth Circuit. *See, e.g.*, *IBEW*

20    *Local 697 Pension Fund,* 2012 U.S. Dist. LEXIS 151498, at *12 [awarding fees of 25% of $12.5

21    million settlement]; *In re Sunterra Corp. Sec. Litig.*, No. 2:06-cv-00844- BES-RJJ, slip op. at 1

22    (D. Nev. Feb. 10, 2009) [awarding fees of 25% of $8 million settlement]; *In re Alliance Gaming*

23    *Corp. Sec. Litig.,* No. CV-S-04-0821-BES-PAL, slip op. at 1 (D. Nev. June 28, 2007) [awarding

24    fees of 25% of $15.5 million settlement]; *Rieckborn v. Velti PLC*, No. 13-CV-03889-WHO, 2015

25    WL 468329, at *21-22 (N.D. Cal. Feb. 3, 2015) [awarding fees of 25% of $9.5 million

26    settlement]; *In re Beckman Coulter, Inc. Sec. Litig.,* No. 8:10-cv-1327-JST (RNBx), slip op. at 3

27    (C.D. Cal. Mar. 1, 2012) [awarding fees of 25% of $5.5 million settlement].

28         Accordingly, it is respectfully submitted that the attorneys' fee requested here is well

**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES RE SETTLEMENT WITH ICAG**

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
*Attorneys at Law*

1 within the range of fees awarded by district courts within the Ninth Circuit in comparable

2 securities settlements.

3       **6.       Reaction of the Settlement Class**

4       Although not articulated specifically in *Vizcaino*, district courts in the Ninth Circuit also

5 consider the reaction of the class when deciding whether to award the requested fee. *See In re*

6 *Heritage Bond Litig.*, 2005 WL 1594389, at *15 ["The presence or absence of objections . . . is

7 also a factor in determining the proper fee award"]. Copies of the Court-approved Notice, which

8 stated that Class Counsel would seek a 25 percent contingency fee, were mailed to all Class

9 members and also posted on the internet in Japan on March 28, 2018. See Gibbons Decl. ¶ 16.

10 Although the objection deadline will not run until April 25, 2018, no objections or opt-outs have

11 been received to date. *Id.*

12       It should be noted that two complaints were addressed to this Court prior to the mailing of

13 the notice of settlement.  One was sent on February 3, 2018, by Kenji Yasunaka, complaining that

14 it was improper for Class Counsel to seek an award of attorneys' fees from the SEC Action against

15 MRI and Fujinaga. Dkt. 806. However, Jun Igarashi, a member of the Japanese lawyer group in

16 Japan representing the victims, subsequently spoke to Mr. Yasunaka on February 27, 2018, and

17 advised Mr. Yasunaka that he was misinformed, because Class Counsel was not seeking attorneys'

18 fees from the SEC Action.  Mr. Yasunaka was satisfied with the explanation and represented that

19 he mailed a letter to this Court on March 7, 2018, retracting his complaint. Gibbons Decl., ¶ 16;

20 Igarashi Decl., ¶ 2.

21       Similarly, another class member, Koichi Inoue, mailed a letter to the Hon. James C.

22 Mahan, who presides over the SEC Action, complaining that he believed it was improper for Class

23 Counsel to seek attorneys' fees in the SEC Action. SEC Action Dkt. 479. Again, on February 20,

24 2018, Mr. Igarashi spoke with Mr. Inoue and pointed out his misunderstanding. On February 21,

25 2018, Mr. Inoue mailed this Court a letter of apology retracting his complaint. Gibbons Decl., ¶

26 16; Igarashi Decl., ¶ 3. Neither of these complaints were formal objections to the actual terms of

27 the settlement with ICAG.

28 **III.    CONCLUSION**

1    For the foregoing reasons, Class Counsel respectfully request that the Court award

2  attorneys' fees of 25% of the settlement with ICAG, Inc.

3    Respectfully submitted.

4  Dated:  April 3, 2018                          MANNING & KASS
                                                   ELLROD, RAMIREZ, TRESTER LLP
5

6                                                  By:    /s/ James E. Gibbons
                                                         JAMES E. GIBBONS
7

8                                                  LAW OFFICES OF ROBERT W. COHEN
                                                   A Professional Corporation
9

10                                                 By:    /s/ Robert W. Cohen
                                                         ROBERT W. COHEN
11                                                       MARIKO TAENAKA

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### CERTIFICATE OF SERVICE

Pursuant to Fed.R.Civ.P. 5(b), I hereby certify that on April 4, 2018, I served a true and correct copy of the foregoing **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES AND EXPENSES IN CONNECTION WITH THE SETTLEMENT WITH ICAG, INC.** via mandatory electronic service via Pacer.  Parties may access this filing through the Court's CM/ECF.


_____/s/ Mariko Taenaka_____

Mariko Taenaka

**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES RE SETTLEMENT WITH ICAG**