JAMES E. GIBBONS (*pro hac vice*)
Cal. State Bar No. 130631
**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**
801 South Figueroa Street, 15th Floor
Los Angeles, CA 90017
Tel. (213) 624-6900
jeg@manningllp.com

ROBERT W. COHEN (*pro hac vice*)
Cal. State Bar No. 150310
MARIKO TAENAKA (*pro hac vice*)
Cal. State Bar No. 273895
**LAW OFFICES OF ROBERT W. COHEN, A.P.C.**
1901 Avenue of the Stars, Suite 1900
Los Angeles, CA 90067
Tel. (310) 282-7586
rwc@robertwcohenlaw.com
mt@robertwcohenlaw.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

SHIGE TAKIGUCHI, FUMI NONAKA, MITSUAKI TAKITA, TATSURO SAKAI, SHIZUKO ISHIMORI, YUKO NAKAMURA, MASAAKI MORIYA, HATSUNE HATANO, and HIDENAO TAKAMA, Individually and On Behalf of All Others Similarity Situated,

Plaintiff,

v.

MRI INTERNATIONAL, INC., EDWIN J. FUJINAGA, JUNZO SUZUKI, PAUL MUSASHI SUZUKI, LVT, INC., dba STERLING ESCROW, and DOES 1-500,

Defendants.

Case No.: 2:13-cv-01183-HDM-VCF
[*Hon. Howard D. McKibben*]

**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT WITH ICAG, INC.**

PLEASE TAKE NOTICE that at May 22, 2018, before the Honorable Howard D. McKibben, United States District Court for the District of Nevada located in Courtroom 4 at 400 S. Virginia Street, Reno, Nevada, Plaintiffs will and hereby do respectfully move for an order finally approving the settlement with ICAG, Inc. Specifically, Plaintiffs seek an order:

1. finding that the settlement reached with ICAG is fair, reasonable, and adequate within the meaning of Rule 23(e) of the Federal Rules of Civil Procedure and directing its consummation pursuant to its terms;
2. finding that the notice provided to the Class was due, adequate and sufficient notice, and meets the requirements of due process and applicable law;
3. directing that this action be dismissed with prejudice as against ICAG;
4. approving the release of claims as specified in the settlement as binding and effective;
5. reserving exclusive and continuing jurisdiction over the settlement; and
6. directing that final judgment of dismissal be entered as between Plaintiffs and ICAG.

This motion is brought pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and is based upon the accompanying memorandum of points and authorities, and the supporting declaration of Jun Igarashi, the records, pleadings and papers filed in this action, and upon such argument as may be presented to the Court at the hearing on this motion.

Dated: May 1, 2018

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP

By: /s/ James E. Gibbons
JAMES E. GIBBONS

LAW OFFICES OF ROBERT W. COHEN
A Professional Corporation

By: /s/ Robert W. Cohen
ROBERT W. COHEN
MARIKO TAENAKA

## TABLE OF CONTENTS

I. INTRODUCTION……………………………………………………………...………..…..3

II. SUMMARY OF THE CASE AND PROCEDURAL BACKGROUND………………………3

III. TERMS OF THE SETTLEMENT…………………………………………………………...5

A. Settlement Payments and Additional Consideration………………………………......…...5

B. Release of All Claims Against the Settling Defendant and Reservation of Rights as to Remaining Defendants……………………..……………..…..6

IV. LEGAL ARGUMENT……………….……………….…………………………….…………6

A. Class Action Settlement Procedure……………………………………………………………6

B. The Court-Approved Notice Program Meets Applicable Standards and Has Been Fully Implemented……………………………………………………8

C. Final Approval of Settlement is Appropriate…………………………………………………8

D. The Settlement is the Product of Arms-Length Negotiations………………………………9

E. The Proposed Settlement is Fair, Adequate, and Reasonable……………………………..10

F. The Recommendation of Experienced Counsel Favors Approval…………………………11

G. The Class Response Favors Approval………………………………………………………..11

V. CONCLUSION……………………………………………………………………………….12

**TABLE OF AUTHORITIES**

***Cases*** ***Page(s)***

*Boyd v. Bechtel Corp.*,
485 F.Supp. 610 (N.D. Cal. 1979)……………………………………………………..11

*Browne v. Am. Honda Motor Co.*,
No. 09-06750, 2010 U.S. Dist. LEXIS 145475 (C.D. Cal. July 29, 2010)……………………….11

*Byrd v. Civil Serv. Comm'n*,
459 U.S. 1217 (1983)……………………………………………………………………9

*Churchill Village, LLC v. General Elec.*,
361 F.3d 566 (9th Cir. 2004)……………………………………………………………8

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992). ……………………………………………………….8, 9

*Hanlon v. Chrysler Corp*.,
150 F.3d 1011 (9th Cir. 1988)…………………………………………………………..9

*M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc*.,
671 F.Supp. 819 (D. Mass. 1987)……………………………………………………….9

*Marshall v. Holiday Magic, Inc.*,
550 F.2d 1173 (9th Cir. 1977)………………………………………………………..11

*In re Mid-Atlantic Toyota Antitrust Litig*.,
564 F. Supp. 1379 (D. Md. 1983)……………………………………………...……10

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004)……………………………………………………11

*Officer for Justice v. Civil Serv. Comm'n*,
688 F.2d 615 (9th Cir. 1982)……………………………………………………….8, 9

*In re Pacific Enters. Sec. Litig*.,
47 F.3d 373 (9th Cir. 1995)…………………………………………………...……8

*Van Bronkhorst v. Safeco Corp.*,
529 F.2d 943 (9th Cir. 1976)……………………………………………………………8

***Statutes and Other Authority*** ***Page(s)***

Fed. R. Civ. P. 23(h)……………………………………………………………….……*passim*

*Newberg on Class Actions* §§ 11.22, et seq. (4th ed. 2002)……………………………..……..7, 10

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

By this motion, Plaintiffs Shige Takiguchi, et al. ("Plaintiffs") and the Class seek final approval of their proposed class action settlement with ICAG, Inc. ("ICAG"). The settlement has secured substantial benefits for the Class, i.e., cash payments totalling $265,000; an assignment of an account receivable in the amount of $150,000 owed by Premier Entertainment Services International, Inc. to ICAG; and an assignment by Cheryl Shintaku of the 15% interest in HMC Service Center, LLC that she inherited from Richard Shintaku. *See* Declaration of Robert W. Cohen, Esq., in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement with ICAG, Inc. (Dkt. 767) ("Cohen Decl."), Ex. A (ICAG Settlement Agreement).

The Court granted preliminary approval of the settlement on January 3, 2018. (Dkt. 788, 796.) In doing so, the Court found that the settlement was fair, reasonable and adequate, found that the proposed notice procedure complies with the requirements of FRCP 23 and due process, appointed the MRI Higaibengodan as the Notice Administrator, ordered a process for dissemination of the Notice of Settlement, and ordered a Final Approval Hearing. *Id.*

## II. SUMMARY OF THE CASE AND PROCEDURAL BACKGROUND

Plaintiffs filed this case on July 5, 2013 (the "Action") against MRI International, Inc., its principal operators -- Edwin Fujinaga, Junzo Suzuki, and Paul Suzuki -- and Sterling Escrow, the escrow company purportedly holding the investors' money in trust. The Defendants all filed motions to dismiss, and Plaintiffs amended their pleadings on several occasions. Plaintiffs filed their operative Fifth Amended Complaint on September 29, 2016. (Dkt. 481.)

On June 2, 2015, Plaintiffs filed a motion to certify the class. (Dkt. 255.) On March 21, 2016, the Court certified the Class. (Dkt. 404.) The court also appointed Law Offices of Robert W. Cohen, APC and Manning & Kass, Ellrod, Ramirez, Trester, LLP as Class Counsel. On May 5, 2016, the parties stipulated to modify the Class Certification Order to make the class definition consistent with the operative complaint. (Dkt. 425.) On May 6, 2016, the Court granted the stipulation and the class definition was modified. (Dkt. 426.) Pursuant to the Class Certification Order, the Class is now defined as:

> The MRI Investor Class consisting of: all persons who were MRI investors and who were injured because of the defendants' alleged illegal Ponzi scheme and actions from July 5, 2008 through July 5, 2013. Excluded from the class are the defendants, their employees, their family members and their affiliates, and the following 26 individuals who are plaintiffs in the pending litigation against the defendants in Japan: (1) Tomoyasu Kojima; (2) Keiko Amaya; (3) Masakazu Sekihara; (4) Chiri Satou; (5) Meiko Murakami; (6) Masayoshi Tsutsumi; (7) Yumiko Ishiguro; (8) Reiko Suzuki; (9) Hiroji Sumita; (10) Eiko Uchiyama; (11) Hideyo Uchiyama; (12) Youzou Shiki; (13) Naoki Nagasawa; (14) Noboru Yokoyama; (15) Masami Segawa; (16) Fumiko Takagi; (17) Kumiko Kaita; (18) Fumi Kobayashi; (19) Ikuko Miyazaki; (20) Hina Nagase; (21) Akio Iwama; (22) Kouji Kishida; (23) Eri Kishida; (24) Nomai Nii; (25) Youko Miyahara; and (26) Tsukiko Kurano.

After the Court granted approval of the Stipulation Regarding Class Notice on May 9, 2016 (Dkt. 429), Notice of Class Certification was mailed on June 17, 2016. 8,759 notices were sent to Class Members. Of those 8,759 notices, 664 were returned undeliverable. An address search was performed and 290 new addresses were identified. Accordingly, 290 Class Notices were re-mailed to the new addresses. There were a total of 372 Class Members for whom no new address can be found. The Notice of Class Certification was also published in the Sankei Shinbun, a financial newspaper with nationwide circulation in Japan. There were 33 exclusion requests.

Plaintiffs engaged in extensive discovery and motion practice throughout the litigation. From July 5, 2013 to the present, Plaintiffs served multiple sets of discovery on Defendants and served over 20 third-party subpoenas, resulting in the production of nearly one million pages of documents, all of which were reviewed. Plaintiffs also subpoenaed documents from the U.S. Securities and Exchange Commission. There were also over twenty depositions taken, including the depositions of Junzo and Paul Suzuki, which were taken at the U.S. Embassy in Tokyo, and the deposition of the Suzukis' long-time family lawyers, which took place in Hawaii. From the production of thousands of pages by the Suzukis and the Suzukis' family lawyer in Hawaii, plaintiffs learned of other parties who were either directly

involved in MRI's Ponzi scheme or received commissions that could be traced back to MRI's Ponzi scheme. Through discovery, Plaintiffs learned of ICAG, an entity owned and operated by Richard Shintaku, who died in 2010 but was one of the chief operators of MRI, working closely with Defendants Edwin Fujinaga, Junzo Suzuki and Paul Suzuki. Plaintiffs asserted that Mr. Shintaku directed MRI to pay tens of millions of dollars of commissions on his behalf to ICAG.

Accordingly, on August 24, 2016, Plaintiffs sought leave to amend the Complaint to assert fraudulent transfer, constructive trust and unjust enrichment against ICAG and nine other defendants related to the Suzukis. (Dkt. 461.) On September 28, 2016, the Court granted the motion and Plaintiffs filed their Fifth Amended Complaint. (Dkt. 480-481.) On December 29, 2016 ICAG was served with process and appeared in the action on January 18, 2017. (Dkt. 595.)

Following its appearance in the action, Plaintiffs served several sets of written discovery to ICAG, and subpoenaed thousands of pages of documents from ICAG's accountant Lyle Mortensen, as well as thousands of pages of bank statements held in the name of ICAG and entities affiliated with ICAG. Plaintiffs also took the deposition of Cheryl Shintaku, current president and sole shareholder of ICAG, Tiffany Kalahiki, current treasurer of ICAG, Julia Shintaku, current secretary of ICAG, and Lyle Mortensen.

On June 9, 2017 ICAG filed a motion to preclude evidence and grant judgment pursuant to Rule 37(c) (Dkt. 703), which was denied by the Court on July 24, 2017. (Dkt. 709.) On October 20, 2017 Plaintiffs and ICAG stipulated to certification of the Class as to ICAG (Dkt. 741), which was granted the same day. (Dkt. 742.)

## III. TERMS OF THE SETTLEMENT

The Settlement resolves all claims Plaintiffs and the Class have against ICAG. The details are set forth in the Settlement Agreement attached as Exhibit A to the Cohen Decl. (Dkt. 766.) The key terms are described below.

### A. Settlement Payments and Additional Consideration

Pursuant to the Settlement Agreement, ICAG will provide the following consideration:

- Cash payments totalling $265,000;
- An assignment of accounts receivable in the amount of $150,000 owed by Premier

Entertainment Services International, Inc. to ICAG; and

- An assignment by Cheryl Shintaku of the 15% interest in HMC Service Center, LLC that she inherited from Richard Shintaku.

Premier's Chief Financial Officer, Lyle Mortensen (the same individual who is ICAG's accountant) acknowledges the debt in Premier's financial records. However, during Mr. Mortensen's deposition, he represented that Premier is not in a financial position to repay the entirety of that debt. It is therefore unclear how much of this receivable Plaintiffs will be able to collect. Plaintiffs will undertake collection efforts and seek court approval in the event they believe it is necessary to accept an amount lesser than the entire account receivable.

With respect to the 15% interest in HMC Service Center, LLC, the membership interest was initially owned by Richard Shintaku, which his widow Cheryl Shintaku inherited upon his death. Although not an asset owned by ICAG, Mrs. Shintaku agreed to assign her 15% interest in HMC Service Center, LLC in order to facilitate the settlement. The only asset owned by the LLC was real property located at 2170 Harmon Avenue, Las Vegas, NV 89119, but this asset has already been seized and sold by the receiver in the U.S. Securities and Exchange Commission's parallel enforcement action, *SEC v. Fujinaga, et al.*, USDC of Nevada Case No. 2:13-cv-1658 ("SEC Action"). (SEC Action Dkt. 326.) The property was sold for $7,036,888.91, and the receiver set aside 15% of the net proceeds from the sale. The receiver, however, has taken the position that Mr. Shintaku never provided consideration for his 15% interest and therefore never had a legitimate membership interest and disputes the legitimacy of Mrs. Shintaku's assignment and Plaintiffs' claim of the 15% interest.

**B. Release of All Claims Against the Settling Defendant and Reservation of Rights as to the Remaining Defendants**

In exchange for the Settling Defendants' monetary and cooperation consideration, upon entry of a final judgment approving the proposed settlement, Plaintiffs will release ICAG of all claims related to the alleged conduct giving rise to this litigation. The Settlement preserves Plaintiffs' right to litigate against the Non-Settling Defendants for the entire amount of Plaintiffs' damages.

## IV. LEGAL ARGUMENT

### A. Class Action Settlement Procedure

A class action may not be dismissed, compromised, or settled without the approval of the Court. Judicial proceedings under Federal Rule of Civil Procedure 23 have led to a defined procedure and specific criteria for approval of class action settlements. The Rule 23(e) settlement approval procedure describes three distinct steps:

1. Preliminary approval of the proposed settlement;
2. Disseminating notice of the settlement to all affected class members; and
3. A formal fairness hearing, also called the final approval hearing, at which class members may be heard regarding the settlement, and at which counsel may introduce evidence and present argument concerning the fairness, adequacy, and reasonableness of the settlement. This procedure safeguards class members' procedural due process rights and enables the Court to fulfill its role as the guardian of class interests. *See Newberg on Class Actions* §§ 11.22, et seq. (4th ed. 2002) ("*Newberg*") [describing class action settlement procedure].

The first step was completed when the Court preliminarily approved the Settlement. The second step was also completed, as more fully set forth below. And by this motion, Plaintiffs request that the Court take the third and final step of holding a fairness hearing and granting final approval of the proposed Settlement.

### B. The Court-Approved Notice Program Meets Applicable Standards and Has Been Fully Implemented

Federal Rules of Civil Procedure 23(c)(2)(B) sets forth the standards that must be met when sending notice of a proposed class action settlement. It requires that the notice be clear, concise and in plainly understood language, and must set forth "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)."

The notice plan approved by this Court constitutes valid, due, and sufficient notice to class

members and constitutes the best notice under the circumstances. The notice clearly explains in both English and Japanese the nature of the action, who qualifies as a class member, how to request to be excluded from the Settlement or object to the Settlement, and how to obtain copies of documents or to contact Class Counsel and the Notice Administrator.

The notice also explains that the Settlement was filed with the Court and is available online in English and Japanese at www.mri-higaibengodan.jp/notice. In addition, the website allows Class members to view and download copies of the Court's order granting class certification, the class certification notice, the long-form notice of the Settlement, the short-form notice of the Settlement, and the Notice Administrator's cover letter.

The Court approved the notice plan when it preliminarily approved the Settlement. (Dkts. 788, 796). The Court ordered that notice of the Settlement be mailed and posted on the internet by March 4, 2018. Pursuant to the court order, the Notice Administrator caused the notices to be mailed and posted at www.mri-higaibengodan.jp/notice. Additionally, the Notice Administrator caused the short-form notice to be posted on the National Consumer Affairs Center of Japan's website at www.kokusen.go.jp/news/data/n-20130502_1.html.

Class members had a variety of ways to request additional information, including by telephone, e-mail, facsimile or regular mail to Class Counsel or the Notice Administrator.

**C. Final Approval of the Settlement is Appropriate**

Final approval of a class action settlement is appropriate under Federal Rules of Civil Procedure 23(e) if the settlement "is fundamentally fair, adequate and reasonable." *Officer for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). In determining whether the settlement is "fair, adequate and reasonable," the Court should consider ""the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Id.*

Moreover, "there is an overriding public interest in settling and quieting litigation . . . particularly . . . in class action suits[.]" *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also*

*Churchill Village, LLC v. General Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *In re Pacific Enters. Sec. Litig*., 47 F.3d 373, 378 (9th Cir. 1995); and *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). The approval of a proposed settlement of a class action is a matter of discretion for the trial court. *Churchill Village, L.L.C.*, *supra*, 361 F.3d at 575. In exercising that discretion, however, courts recognize that as a matter of sound policy, settlements of disputed claims are encouraged and a settlement approval hearing should "not be turned into a trial or rehearsal for trial on the merits." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982), *cert. denied sub nom; Byrd v. Civil Serv. Comm'n*, 459 U.S. 1217 (1983). Furthermore, courts must give "proper deference" to the settlement agreement, because "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1027 (9th Cir. 1988) (internal quotations omitted.)

**D. The Settlement is the Product of Arms-Length Negotiations**

"Before approving a class action settlement, the district court must reach a reasoned judgment that the proposed agreement is not the product of fraud or overreaching by, or collusion among, the negotiating parties…" *City of Seattle*, 955 F.2d at 1290 (quoting *Ficalora v. Lockheed Cal. Co*, 751 F.2d 995, 997 (9th Cir. 1985)). Courts should find a settlement to be presumptively fair so long as it has been reached following meaningful discovery and arms-length negotiations. *M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc*., 671 F.Supp. 819, 822 (D. Mass. 1987).

Here, Plaintiffs engaged in nearly five years of contentious motion practice and discovery, including 18 depositions taken and almost a million pages of documents produced. Prior to entering into settlement negotiations, Plaintiffs and ICAG conducted extensive discovery. Although the documents produced during discovery evidence that Mr. Shintaku and ICAG purportedly received approximately $48 million in commissions from MRI, it was clear that little of that money still remains. Mr. Shintaku appears to have invested millions in numerous business ventures, such as entertainment companies, media companies, and technology companies, the majority of which ultimately went bankrupt or became

defunct. According to ICAG's accountant Mr. Mortensen, who also provided tax services for Mr. Shintaku's personal and business interests, none of Mr. Shintaku's investments was profitable, and he also testified at his deposition that ICAG lost millions of dollars each year as a result of its unsuccessful investments. (Cohen Decl. ¶ 4, Dkt. 767.)

Mr. Shintaku is survived by his wife, his sole heir, and his daughters Julia Shintaku and Tiffany Kalahiki. All three were also deposed, and they all deny having any knowledge of Mr. Shintaku's business dealings with MRI or ICAG, and were not even aware what type of business Mr. Shintaku was engaged in. Cheryl Shintaku is the sole shareholder and president of ICAG, but since Mr. Shintaku's death, ICAG has not conducted any business. Cheryl Shintaku and her daughters are not personally named in the lawsuit, and even if liability could be extended to them personally, there is no reason to believe they have enough assets to pay any significant judgment. (Cheryl Shintaku was always a housewife, Julia Shintaku is an esthetician, and Tiffany Kalahiki is an elementary school teacher.)

The only assets remaining in ICAG's name include four bank accounts totaling $339,710.54 and an account receivable in the amount of $150,000 owed by Premier Entertainment Services International, Inc. ICAG also owes approximately $80,000 in unpaid attorneys' fees to its prior and current counsel.

Lastly, ICAG asserted defenses to Plaintiffs' claims, namely that neither it nor Mr. Shintaku were involved in a Ponzi scheme or had knowledge of such a scheme and that, in any event, Plaintiffs' claims were barred by the statute of limitations. The parties were all fully informed of the legal risks in proceeding forward with the litigation, allowing for the parties to make an informed decision and enter into a fair settlement.

**E. The Proposed Settlement is Fair, Adequate, and Reasonable**

Plaintiffs' proposed settlement meets the standards for final approval. First, the settlement is entitled to "an initial presumption of fairness" because it results from arms-length negotiations among experienced counsel. *Newberg*, § 11.41. Second, the consideration of $265,000 in cash, $150,000 in accounts receivable, and a 15% in HMC Service Center, LLC is substantial, particularly in light of the fact that ICAG does not have unlimited resources, there are legal disputes over the individual defendants' liability and over whether the assets held by ICAG are subject to constructive trust remedies or were fraudulently transferred. Furthermore, the 15% interest in HMC Service Center, LLC is not an asset of

ICAG, but was contributed personally by Cheryl Shintaku to increase the settlement fund. Third, the settlement includes other provisions requiring ICAG to cooperate with Plaintiffs in the on-going action. *See In re Mid-Atlantic Toyota Antitrust Litig*., 564 F. Supp. 1379, 1386 (D. Md. 1983) [a defendant's agreement to cooperate with plaintiffs "is an appropriate factor for a court to consider in approving a settlement"]. The proposed Settlement is, therefore, fair, reasonable, and adequate.

**F. The Recommendation of Experienced Counsel Favors Approval**

The judgment of experienced counsel regarding the settlement should be given a presumption of reasonableness and significant weight. *See Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979). Class Counsel have extensive experience in litigating and settling class action lawsuits, and have conducted an in-depth legal and factual analysis of the issues in this case. Based on their analysis, and considering the risk of proceeding with trial, Class Counsel endorses the Settlement as fair, reasonable and adequate. The court should give great deference to Class Counsel's judgment.

**G. The Class Response Favors Approval**

A court should determine that a settlement is fair, reasonable and adequate where few class members object or request to be excluded. *See Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977); *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("the absence of a large number of objections to a proposed settlement action raises a strong presumption that the terms of a proposed class action settlement is favorable to the class members."). Moreover, even where there is an objection, the court must independently evaluate the merits of the objection before denying final approval of the settlement. *Browne v. Am. Honda Motor Co.*, No. 09-06750, 2010 U.S. Dist. LEXIS 145475, at *51 (C.D. Cal. July 29, 2010).

The objection deadline expired on April 25, 2018, and out of approximately 8,700 class members, only one person objected to the settlement. It should be noted that two complaints were filed with the Court prior to the mailing of the notice of settlement. One was sent on February 3, 2018, by Kenji Yasunaka, complaining that it was improper for Class Counsel to seek an award of attorneys' fees from the SEC Action against MRI and Fujinaga. (Dkt. 806.) However, Jun Igarashi, a member of the Japanese lawyer group in Japan representing the victims, subsequently spoke to Mr. Yasunaka on February 27, 2018, and advised Mr. Yasunaka that he was misinformed, because Class Counsel was not seeking

attorney's fees from the SEC Action. Mr. Yasunaka was satisfied with the explanation and represented that he mailed a letter to this Court on March 7, 2018, retracting his objection. (Declaration of Jun Igarashi ISO Plaintiffs' Motion for Attorneys' Fees ("Igarashi Decl.") ¶ 2, Dkt. 823.)

Similarly, another class member, Koichi Inoue, mailed a letter to the Hon. James C. Mahan, who presides over the SEC Action, complaining that he believed it was improper for Class Counsel to seek attorney's fees in the SEC Action. (SEC Action Dkt. 479.) Again, on February 20, 2018, Mr. Igarashi spoke with Mr. Inoue and pointed out his misunderstanding. On February 21, 2018, Mr. Inoue mailed this Court a letter of apology retracting his complaint. Neither of these complaints were formal objections to the actual terms of the settlement with ICAG. (Igarashi Decl., ¶ 3, Dkt. 823.)

After the actual mailing of the Notice of Settlement, one class member Yoshikazu Konishi mailed an objection dated March 21, 2018. The nature of the objection is that Mr. Konishi is unhappy with the settlement and demands recovery of the entire amount of his damages. After receiving the objection, Mr. Igarashi spoke with Mr. Konishi and explained that based on the risks of continued litigation and the financial cost of going to trial, Class Counsel determined that this settlement was in the best interest of the class. Mr. Konishi was satisfied with the explanation and mailed a retraction of his objection on March 27, 2018. Copies of Mr. Konishi's objection and retraction in Japanese with an English translation are attached as Exhibit D to the Notice Administrator's Affidavit of Compliance filed with the Court on April 23, 2018. (Dkt. 826.) However, on April 17, 2018 Mr. Konishi filed another objection to the present settlement, this time mailing the objection directly to this Court. (Dkt. 827.) Mr. Konishi's two-page objection is similar in nature to his original objection, and states that he is unhappy that he is not getting his entire investment returned. An English translation of Mr. Konishi's April 17, 2018 is attached as Exhibit A to the accompanying Declaration of Jun Igarashi.

No other Class Members have objected to the settlement and there have been no requests for exclusion, which confirms that the Settlement is fair, adequate and reasonable.

## V. CONCLUSION

Based on the foregoing, plaintiffs respectfully request that the Court grant final approval of the Settlement with ICAG, Inc.

Respectfully submitted.

Dated: May 1, 2018

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP

By: /s/ James E. Gibbons
JAMES E. GIBBONS

LAW OFFICES OF ROBERT W. COHEN
A Professional Corporation

By: /s/ Robert W. Cohen
ROBERT W. COHEN
MARIKO TAENAKA

**CERTIFICATE OF SERVICE**

I hereby certify that on May 1, 2018, a copy of the foregoing document was filed electronically via the Court's CM/ECF system. Pursuant to Local Rule 5.5(h), notice of filing will be served on all parties by operation of the Court's CM/ECF system, and parties may access this filing through the Court's CM/ECF system.

/s/ Mariko Taenaka .
Mariko Taenaka